UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PURPLE MOUNTAIN TRUST, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO & COMPANY, TIMOTHY J. SLOAN and JOHN RICHARD SHREWSBERRY,<br><br>Defendants | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Purple Mountain Trust ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Wells Fargo & Company ("Wells Fargo" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired common shares of Wells

Fargo between January 13, 2017 and July 27, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.      Wells Fargo & Company is a diversified financial services company providing banking, insurance, investments, mortgage, leasing, credit cards, and consumer finance. The Company operates through physical stores, the internet, and other distribution channels worldwide.

3.      Founded in 1852, the Company is headquartered in San Francisco, California, and its stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "WFC."

4.      On September 8, 2016, the U.S. Consumer Financial Protection Bureau ("CFPB") published a Consent Order with a Stipulation to its entry signed by Mary Mack, Executive Vice President of Wells Fargo Bank, detailing fraudulent practices at the Company, which were centered on a corporate culture intent on growing its cross-selling opportunities and unlawfully and without its customers' consent opening millions of unauthorized deposit and credit card accounts, and imposing a fine of more than $185 million.

5.      Delivering prepared testimony before the U.S. Senate on September 19, 2016, Wells Fargo's Chief Executive Officer ("CEO") John Stumpf unequivocally stated, in part:

> ***Wrongful sales practice behavior in our retail banking business goes against everything regarding our core principles, our ethics and our culture.*** It runs counter to our vision of helping our customers succeed financially and it is not representative of Wells Fargo as an institution.
>
> . . .
>
> That is not good for our customers and that is not good for our business. It is against everything we stand for as a company. That said, I accept full responsibility for all unethical sales practices in our retail banking business. ***And I***

***am fully committed to fixing this issue, strengthening our culture and taking the necessary actions to restore our customer's trust.*** And Senators, let me tell you here today, the Wells Fargo board is actively engaged in this issue.

. . .

Under new leadership, ***we've already began taking steps to insure that the sales culture in our retail banking business is wholly aligned with our customer's interests.*** On September 13th, 2016, we announced a major decision, that we will end product sales goals for everyone in our retail banking business. Because we want to make certain that nothing gets in the way of doing what is right by our customers. ***The new leadership team's primary mission will be to provide the best possible service to our customers.***

(Emphases added.)

6.      Yet, despite these assurances, Wells Fargo had not disclosed the full extent of its illicit practices or the extent to which its misconduct had harmed unwitting customers.  Indeed, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Wells Fargo had charged more than 800,000 customers for unneeded auto insurance, the expense of which pushed approximately 274,000 Wells Fargo customers into delinquency and resulted in almost 25,000 vehicle repossessions; (ii) the foregoing conduct, when it came to light, would foreseeably subject Wells Fargo to heightened regulatory scrutiny and/or enforcement actions; and (iii) as a result, Wells Fargo's public statements were materially false and misleading at all relevant times.

7.      On July 27, 2017, post-market, *The New York Times* published an article entitled "Wells Fargo Forced Unwanted Auto Insurance on Borrowers."  Citing an internal report prepared for Wells Fargo's executives, the article reported that "[m]ore than 800,000 people who took out car loans from Wells Fargo were charged for auto insurance they did not need," that

3

"[t]he expense of the unneeded insurance . . . pushed roughly 274,000 Wells Fargo customers into delinquency and resulted in almost 25,000 wrongful vehicle repossessions," and "that the bank owed $73 million to wronged customers."

8. Following publication of this article, Wells Fargo's share price fell $1.41, or 2.58%, to close at $53.30 on July 28, 2017.

9. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

12. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b). Wells Fargo's securities trade on the NYSE, located within this Judicial District.

13. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14.     Plaintiff, as set forth in the accompanying Certification, purchased Wells Fargo securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

15.     Defendant Wells Fargo is incorporated in Delaware, and the Company's principal executive offices are located at 420 Montgomery Street, San Francisco, California 94163.  Wells Fargo's common stock trades on the NYSE under the ticker symbol "WFC."

16.     Defendant Timothy J. Sloan ("Sloan") has served at all relevant times as the Company's CEO, President and Director.

17.     Defendant John Richard Shrewsberry ("Shrewsberry") has served at all relevant times as the Company's Chief Financial Officer and Senior Executive Vice President.

18.     The Defendants referenced above in ¶¶ 16-17 are sometimes referred to- herein as the "Individual Defendants."

19.     The Individual Defendants possessed the power and authority to control the contents of Wells Fargo's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

## Background

20.     Wells Fargo is a diversified financial services company providing banking, insurance, investments, mortgage, leasing, credit cards, and consumer finance. The Company operates through physical stores, the internet, and other distribution channels worldwide.

21.     On September 8, 2016, the CFPB published a Consent Order with a Stipulation to its entry signed by Mary Mack, Executive Vice President of Wells Fargo Bank, detailing fraudulent practices at the Company, which were centered on a corporate culture intent on growing its cross-selling opportunities and unlawfully and without its customers' consent opening millions of unauthorized deposit and credit card accounts, and imposing a fine of more than $185 million.

## Materially False and Misleading Statements Issued During the Class Period

22.     The Class Period begins on January 13, 2017, when Wells Fargo issued a press release and filed a current report on Form 8-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2016 (the "2016 8-K"). For the quarter, Wells Fargo reported net income of $5.3 billion, or $0.96 per share, compared to net income of $5.6 billion, or $1.00 per share, for the same period in the prior year. For 2016, Wells Fargo reported net income of $21.9 billion, or $3.99 per diluted share, compared to net income of $22.9 billion, or $4.12 per diluted share, for 2015.

23.     The 2016 8-K stated, in part:

Chief Executive Officer Tim Sloan said, "***We continued to make progress in the fourth quarter in rebuilding the trust of our customers***, team members and other key stakeholders. ***I am pleased with the progress we have made in customer remediation, the ongoing review of sales practices across the company and fulfilling our regulatory requirements for sales practices matters***. As planned, we launched our new Retail Bank compensation program this month, which is based on building lifelong relationships with our customers. While we have more work to do, ***I am proud of the effort of our entire team to make things right for our***

*customers and team members and to continue building a better Wells Fargo for the future*."

(Emphases added.)

24.     On January 13, 2017, Wells Fargo also held an earnings call to discuss the Company's financial and operating results for the quarter and year ended December 31, 2016. On the call, CEO Sloan made a number of statements affirming the Company's commitment to regulatory compliance and customer service, including:

- "I couldn't be more pleased with the hard work and progress of our team—that our team made to rebuild trust".

- "We established a sales practice consent order program office reporting directly to our Chief Risk Officer which is undertaking actions to meet the requirements of the consent orders that were issued as part of the settlements in September."

- "[W]e've engaged a separate third party consultant to evaluate sales practices more broadly across Wells Fargo. We are leaving no stone unturned so that we can emerge from this a better stronger company."

- "We want to identify anyone who was negatively impacted so we can make things right.

25.     On March 1, 2017, Wells Fargo filed an Annual Report on Form 10-K with the SEC (the "2016 10-K").  The 2016 10-K reiterated the financial and operating results previously reported in the 2016 8-K and contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that "[t]he information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company."

26.     On April 13, 2017, Wells Fargo issued a press release and filed a current report on Form 8-K with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2017 (the "Q1 2017 8-K").  For the quarter, Wells Fargo reported net

income of $5.5 billion, or $1.00 per diluted share, compared to $5.5 billion, or $0.99 per diluted share for the same period in the prior year.

27.     The Q1 2017 8-K stated, in part:

> Chief Executive Officer Tim Sloan said, "***Wells Fargo continued to make meaningful progress in the first quarter in rebuilding trust with customers*** and other important stakeholders, while producing solid financial results. ***We have taken significant actions throughout the company to date and we are committed to building a better bank as we move Wells Fargo forward.*** Earlier this week, the independent directors of Wells Fargo's Board of Directors issued a report on their investigation into the company's retail banking sales practices. The findings are valuable to us and beneficial in helping to identify areas for further improvement. While we have more work to do, ***I am pleased with all we have accomplished thus far. Our 273,000 team members have remained committed to helping our customers succeed financially***, as reflected in improved retail customer service scores, record levels of deposits, more primary consumer checking customers, record client assets in Wealth and Investment Management, and industry-leading mortgage originations."

(Emphases added.)

28.     On May 5, 2017, Wells Fargo filed a quarterly report on Form 10-Q with the SEC (the "Q1 2017 10-Q"). The Q1 2017 10-Q reiterated the financial and operating results previously reported in the Q1 2017 8-K and contained signed certifications pursuant to SOX by the Individual Defendants, stating that "[t]he information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company."

29.     On July 14, 2017, Wells Fargo issued a press release and filed a current report on Form 8-K with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2017 (the "Q2 2017 8-K"). For the quarter, Wells Fargo reported net income of $5.87 billion, or $1.07 per diluted share, compared to net income of $5.6 billion, or $1.01 per diluted share for the same period in the prior year.

30.     The Q2 2017 8-K stated, in part:

Chief Executive Officer Tim Sloan said, "Second quarter 2017 results demonstrated the benefit of our diversified business model as we continued to generate strong financial results, invest for the future, and adhere to our prudent risk discipline. We remain committed to reducing expenses and improving the efficiency of our company, and we are very focused on our recently announced goals. As we work to improve our efficiency, we will also continue to innovate for the future. We recently advanced a number of important customer-focused initiatives, such as the launch of the ZelleSM person-to-person payment platform to our 28 million digital customers. ***As always, our success starts with our customers, and I appreciate the effort of our 271,000 team members in helping our customers succeed financially. We continued to make progress this quarter in our efforts to rebuild trust and build a better Wells Fargo and, while there is still more work ahead of us, we are on the right track and I am confident about our future***."

(Emphasis added.)

31.     The statements referenced in ¶¶ 22-30 above were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Wells Fargo had charged more than 800,000 customers for unneeded auto insurance, the expense of which pushed approximately 274,000 Wells Fargo customers into delinquency and resulted in almost 25,000 vehicle repossessions; (ii) the foregoing conduct, when it came to light, would foreseeably subject Wells Fargo to heightened regulatory scrutiny and/or enforcement actions; and (iii) as a result, Wells Fargo's public statements were materially false and misleading at all relevant times.

## The Truth Begins To Emerge

32.     On July 27, 2017, post-market, *The New York Times* published an article entitled "Wells Fargo Forced Unwanted Auto Insurance on Borrowers."  Citing an internal report prepared for Wells Fargo's executives, the article reported that "[m]ore than 800,000 people who took out car loans from Wells Fargo were charged for auto insurance they did not need," that

"[t]he expense of the unneeded insurance . . . pushed roughly 274,000 Wells Fargo customers into delinquency and resulted in almost 25,000 wrongful vehicle repossessions," and "that the bank owed $73 million to wronged customers."

33.   Following publication of this article, Wells Fargo's share price fell $1.41, or 2.58%, to close at $53.30 on July 28, 2017.

34.   As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

35.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Wells Fargo common shares traded on the NYSE during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

36.   The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Wells Fargo common shares were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Wells Fargo or its transfer agent and may be

notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

39.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of Wells Fargo;

- whether Defendants caused Wells Fargo to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Wells Fargo securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

40.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

41.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Wells Fargo common shares are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common shares; and

- Plaintiff and members of the Class purchased and/or sold Wells Fargo common shares between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

42.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

43.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**COUNT I**

**Violation of Section 10(b) of The Exchange Act and Rule 10b-5**
**<u>Against All Defendants</u>**

44.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.     This Count is asserted against Wells Fargo and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

46.     During the Class Period, Wells Fargo and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

47.     Wells Fargo and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Wells Fargo common shares during the Class Period.

48.     Wells Fargo and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Wells Fargo were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary

13

violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of Wells Fargo, their control over, and/or receipt and/or modification of Wells Fargo allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Wells Fargo, participated in the fraudulent scheme alleged herein.

49.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Wells Fargo personnel to members of the investing public, including Plaintiff and the Class.

50.     As a result of the foregoing, the market price of Wells Fargo common shares was artificially inflated during the Class Period.  In ignorance of the falsity of Wells Fargo's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Wells Fargo common shares during the Class Period in purchasing Wells Fargo common shares at prices that were artificially inflated as a result of Wells Fargo's and the Individual Defendants' false and misleading statements.

51.     Had Plaintiff and the other members of the Class been aware that the market price of Wells Fargo common shares had been artificially and falsely inflated by Wells Fargo's and the Individual Defendants' misleading statements and by the material adverse information which Wells Fargo's and the Individual Defendants did not disclose, they would not have purchased Wells Fargo's common shares at the artificially inflated prices that they did, or at all.

52.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

53.     By reason of the foregoing, Wells Fargo and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Wells Fargo common shares during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act Against The Individual Defendants

54.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.     During the Class Period, the Individual Defendants participated in the operation and management of Wells Fargo, and conducted and participated, directly and indirectly, in the conduct of Wells Fargo's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's inadequate internal safeguards in data security protocols.

56.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Wells Fargo's financial condition and results of operations, and to correct promptly any public statements issued by Wells Fargo which had become materially false or misleading.

57.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Wells Fargo disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and

authority to cause Wells Fargo to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Wells Fargo within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Wells Fargo common shares.

58.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Wells Fargo.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 13, 2018

Respectfully submitted,

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**

*/s/ Peretz Bronstein*
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
peretz@bgandg.com

*Attorneys for Plaintiff*