# ATTACHMENT A

## *Purple Mountain Trust, et al. v. Wells Fargo & Co.*,
## No. 3:18-cv-03948-JD (N.D. Cal.)

## FALSE STATEMENT SUMMARY CHART

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| No. 1 ¶47 | A. Sloan, Wells Fargo B. 11/3/16 C. BancAnalysts Association of Boston Conference | "Sure, good question.  So everybody hear the question?  *That is the activities outside of retail banking focused and reviews focused on sales practices and culture.  The short answer is, yes*.  I announced in Charlotte last week, it was relatively well covered by the media, that we are going to engage separate from the requirements under the consent order.  We are going to engage a separate firm to look at sales practices across the rest of the Company.  *We are going to leave no stone unturned*. *I am not aware of any issues, but I don't want there to be a question about how we interact with customers at Wells Fargo*.  We're going to put that to rest.  That is going to be done in a very comprehensive way and it is going to be done relatively quickly, but it is going to be done right." | • Statement No. 1, including the claim that defendants were "not aware of any issues" regarding "how [Wells Fargo] interact[s] with customers," and that they would be looking at "activities outside of retail banking focused and reviews focused on sales practices and culture" was both false and misleading and fraudulently omitted that the Company had engaged in illegal auto insurance practices for at least a decade, including the forced-placement of automobile insurance policies on at least 800,000 of its own customers – despite those customers not needing or wanting the insurance – and the unlawful withholding of insurance premiums after a customer's automobile loan had been paid off.  *See* for additional facts: ¶¶52, 155-181.[1] • As the fake account and auto insurance | **Facts applicable to all defendants**: • By September 2016, Wells Fargo's internal investigation concluded that it had defrauded at least 800,000 of its own customers out of at least $73 million, and the results of that investigation were presented to Sloan, "senior management," which includes defendants Shrewsberry and Mack, and to the Board of Directors (including defendant Sanger) by September 2016.  ¶¶155-165.  As a result of that internal investigation, the insurance scheme was terminated, the Company's regulators were notified, and an outside consultant was engaged to conduct review of the Company's plan for repaying customers.  *Id.* • When the Bureau of Consumer Financial Protection ("CFPB") and the Office of the Comptroller of the Currency ("OCC") fined Wells Fargo $500 million in April 2018 for the |

---

[1]     All "¶" and "¶¶" references are to the Consolidated Complaint for Violations of the Federal Securities Laws, filed August 31, 2018.  ECF No. 46.  Throughout this Chart, "¶" and "¶¶" references are made to additional facts supporting the point for which they are cited.

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | scandals both involved breaches of customer trust where customers received products they did not want and did not need, and both occurred within Wells Fargo's Community Banking Division, defendants' statements that they were "not aware" of any other scandals were false and misleading. ¶¶21, 27, 36, 52. In fact, when the auto insurance scandal was first disclosed, analysts referred to the fake account scandal as "the original sales practices" (¶158) and the insurance scandal as the "new sales abuses" (¶161). "We were surprised that this wasn't disclosed when the original sales practices were disclosed," wrote one analyst. ¶¶157-158. Others echoed this sentiment. *See, e.g.*, ¶157 ("Here We Go Again" – July 28, 2017 Piper Jaffray analyst report – "Why didn't the company address these issues publicly while they were already dealing with the account scandal rather than address them now?"). As noted in a July 28, 2017 *Reuters* article: "Shareholders, analysts, lawmakers and consumer advocates demanded answers about how the situation manifested, and why Wells Fargo did not disclose the problems sooner." ¶161.<br><br>• The fact that Wells Fargo collected more than $143 million in **commissions** and | auto insurance fraud, the CFPB found that, prior to the Class Period, "[t]hrough quarterly reports from its vendor and its own daily reports, [Wells Fargo] was aware of high rates of Force-Placed Insurance cancellations, and [Wells Fargo] received briefings on the root causes of the cancellations." ¶181. The regulator also concluded that "[t]he high rates of cancellation *were also apparent within [Wells Fargo]'s own system of record* because it processed the refunds when a Force-Placed Insurance policy was canceled, and it reported that refund information back to the vendor." *Id*. The OCC made similar findings. *Id*.<br><br>• Internal Wells Fargo documents cited in the Consumer Action have confirmed that in July 2016 the auto insurance fraud was escalated to defendant Sloan, the Company's Operating Committee (which defendants Shrewsberry and Mack were members), and the Board of Directors (which defendant Sanger was Chairman). *See* ECF No. 63 at 5 n.2.<br><br>• Defendants did not issue a press release disclosing the massive auto insurance scheme until two hours after the July 27, 2017 *New York Times* article was released that disclosed the illegal auto insurance practices. ¶¶155-156.<br><br>• Wells Fargo was in frequent communications with its regulators regarding the CPI program |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | interest from its auto insurance scam further demonstrates that the auto insurance fraud was another form of illegal sales and customer trust violations that defendants had a duty to disclose when claiming they were "not aware of any issues" and did not "*want there to be a question about how we interact with customers at Wells Fargo*." *See* ECF No. 63 at 5 n.2<br><br>• By July 2016 (four months before the Class Period), an internal review had put the Company on notice of the illegal auto insurance practices. ¶¶155-165. Internal Wells Fargo documents cited in the Consumer Action have confirmed that in July 2016 the auto insurance fraud was escalated to defendant Sloan, the Company's Operating Committee, and the Board of Directors, and that a Wells Fargo internal audit determined that the bank's billing statements were "deceptive" as to CPI charges. *See* ECF No. 63 at 5 n.2. In August 2016, "senior executives" at Wells Fargo contemplated terminating the CPI scheme, because it "*could lead to reputational risk and potential legal exposure*." *Id.*<br><br>• By September 2016 (two months *before* the beginning of the Class Period), the | beginning no later than September 2016 and continuing throughout the Class Period. Thus defendants knew about the CPI program or were reckless in not knowing. ¶178.<br><br>• Wells Fargo's internal control failures to identify the illegal auto insurance practices was an ongoing problem at Wells Fargo and continued through the Class Period. Thus defendants were at least reckless in not knowing Wells Fargo's auto insurance fraud when they assured investors there were no other issues. ¶156.<br><br>• After the fake account scandal and the $190 million in fines and restitution were disclosed in September 2016, restoring customer trust became the most important issue for the Company. ¶¶37-39. As numerous analysts recognized, the revelation that Wells Fargo had opened two million unauthorized deposit and credit card accounts was a "black eye for a company that has long touted its corporate values" and "Wells Fargo's reputation as a consumer-friendly bank suffered a significant blow." ¶38. The alarm was sounded – an additional "loss of customer trust would be the biggest potential threat to Wells Fargo's competitive advantage." ¶5. Taking heed of these warnings, defendants went to great lengths to reassure the public that rebuilding trust in the Company was its "immediate and highest |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | results of the Company's internal investigation into its illegal auto insurance practices, including that Wells Fargo had defrauded at least 800,000 of its own customers out of at least $73 million and that the practice resulted in the wrongful repossession of at least 25,000 customers' cars, had been presented to senior management, the Wells Fargo Board of Directors, and the Company's regulators – the OCC, the CFPB and the Federal Reserve.  From that time and continuing through the Class Period, defendants were in frequent discussion with the Company's regulators regarding its illegal auto insurance practices and the need for customer remediation.  ¶¶52, 161, 166 178-180.<br><br>• Following the Company's internal review, no later than September 2016, defendants commissioned consultancy firm Oliver Wyman to conduct a review of the Company's remediation plan.   Oliver Wyman issued a 60-page report for Wells Fargo executives that, consistent with Wells Fargo's internal review, detailed the illegal auto insurance practices and their negative impact on Wells Fargo customers.  The Company's investigation and Oliver Wyman Report identified hundreds of thousands of impacted Wells | priority" and remained a "top priority" throughout the Class Period.  ¶¶42-44, 50, 53-54, 56, 64-65, 81, 83, 112, 124-125, 139.<br><br>• Because defendants asserted "the most important job at this company is rebuilding trust" and they were being "as transparent as possible," there is a permissible inference that that the auto insurance fraud was related to a core operation of the company and known to all defendants. ¶¶102, 121.<br><br>**Additional facts specifically applicable to defendant Sloan:**<br><br>• Sloan admitted in his October 3, 2017 Congressional testimony that he knew about the CPI fraud by late August or early September 2016. ¶180.<br><br>• Throughout the Class Period, Sloan was Wells Fargo's President and Chief Executive Officer, and a member of the Company's Operating Committee. ¶22.<br><br>• Senator Sherrod Brown accused Wells Fargo of intentionally lying to the Senate Banking Committee and the public when it assured them that there were no other issues beyond the sales practices disclosed in September 2016:<br><br>[Senator Brown:] In my opening, Mr. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | Fargo customers, including wrongfully imposed fees, account delinquencies, and approximately 27,000 customers whose cars were wrongfully repossessed as a result of Wells Fargo's illegal auto insurance practices. ¶¶52, 155-156, 180-181.<br><br>• Defendants' misstatements and omissions were materially false and misleading for the additional reason that defendants, both leading up to and during the Class Period, promised investors that their primary objective was restoring customers' trust and that they were being more transparent than ever, including conducting an exhaustive review of the Company's culture and sales practices. That context underscores the misleading impression of the state of affairs defendants' Class Period misstatements and material omissions gave investors. ¶53; *see also, e.g.,* ¶50 (Sloan: "I am fully committed . . . to restore our customers' trust."), ¶56 ("highest priority right now is rebuilding trust in Wells Fargo"), ¶65 ("committed to maintaining increase transparency"), ¶72 ("if we find something that's important, we'll communicate that"), ¶114 ("will continue to be as transparent with you as we can"). | Sloan, I talked about Mr. Stumpf's testimony last year that this activity was limited to the Community Banking Division. The company, pure and simple, lied to this Committee and lied to the public. The company recently disclosed it knew in July 2016 that customers had auto insurance policies added to their auto loans without their consent – about 800,000 customers, roughly the size of the State that Senator Rounds represents.<br><br>Every day since you have become the head of Wells Fargo for the last 11 months, every day you have made a decision to not disclose this information to the public. Your company knew about the auto insurance policy when former CEO Mr. Stumpf testified. . . .<br><br>    \*    \*    \*<br><br>[T]hat it took you, you the company - you personally 8 months, you the company 13 months to disclose such a violation of the public trust just makes me incredulous. ¶¶179-180. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | • "[B]y failing to inform investors" of these material facts, defendants "gave the false impression" that they had disclosed all of their fraudulent practices. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1013-14 (9th Cir. 2018).<br><br>• The fact that Wells Fargo's stock price declined and wiped out $9.5 billion in shareholder value immediately following the disclosures of Wells Fargo's auto insurance scheme further demonstrates that defendants' statements were materially false and misleading.<br><br>Plaintiffs incorporate facts set forth in the "Facts Giving Rise to a Strong Inference of Scienter" column, as those facts demonstrate further the false and misleading nature of defendants' Class Period misstatements and omissions. | |
| **No. 2**<br><br>¶48 | A. Sloan, Wells Fargo<br><br>B. 11/3/16<br><br>C. BancAnalysts Association of Boston Conference | "We will be engaging a separate independent consultant to review sales practices across the Company. This is beyond what we are required to do under the consent orders because we want to do what is right for our customers." | Statement No. 2 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices. *Khoja*, 899 F.3d at 1013-14. | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| No. 3 ¶49 | A. Sloan, Mack, Wells Fargo  B. 11/3/16  C. BancAnalysts Association of Boston Conference | A slide displayed during Sloan and Mack's presentations similarly led investors to believe that defendants' "primary objective is to restore trust in Wells Fargo." To that end, the same slide stated the Company's internal review was all-encompassing, stating that defendants were "[r]eviewing sales practices *across the entire company*, beyond the requirements of the Consent Orders, to ensure that we are always doing what is right for our customers." Defendants promised "[c]ontinued transparency of business trends." | Statement No. 3 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices. *Khoja*, 899 F.3d at 1013-14.  By deciding to discuss their "all-encompassing" Company review and that their "primary objective [was] to restore trust in Wells Fargo," defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.* the fact they had committed the auto insurance fraud. *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 706 (9th Cir. 2016) (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendants Sloan and Mack, and for additional facts specifically applicable to defendant Sloan.  **Additional facts specifically applicable to defendant Mack:**  • During the Class Period, defendant Mack knew or was reckless in not knowing about the auto insurance fraud because she was a member of the Operating Committee and the head of the Community Banking Division where the automobile insurance scandals occurred, and was primarily responsible for monitoring and resolving those issues. ¶¶25, 50-51, 115, 121.  • Mack knew about the auto insurance scandals or was reckless in not knowing because the January 2017 departures of heads of the Dealer Services Unit within the Community Bank who reported to Mack, Dawn Martin Harp and Bill Katafias, were a result of their involvement in the CPI scandal. ¶¶69, 162.  • Mack was intimately involved with and a spokesperson for the Company's "restoring trust" campaign and thus knew about or was reckless in not knowing about the customer trust issues at the bank, including the auto insurance fraud. ¶¶55-56, 91. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| No. 4<br><br>¶50 | A. Sloan, Wells Fargo<br><br>B. 11/3/16<br><br>C. BancAnalysts Association of Boston Conference | "*I am fully committed*, along with the rest of our entire leadership team, and you will hear from one of the best, Mary Mack, in just a few minutes, to fixing these issues and taking the necessary steps *to restore our customers' trust*.<br><br>\*   \*   \*<br><br>I want to conclude my remarks with my near-term priorities. *My primary objective and the objective of our senior leadership team is to restore trust in Wells Fargo*. That includes rebuilding pride in our Company and a vision of meeting our customers' financial needs." | Statement No. 4 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14.<br><br>By claiming that his "primary objective . . . is to restore trust in Wells Fargo," Sloan had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan. |
| No. 5<br><br>¶51 | A. Mack, Wells Fargo<br><br>B. 11/3/16<br><br>C. BancAnalysts Association of Boston Conference | "We eliminated product sales goals, as you all well know, in retail banking as of October 1 to make sure that *nothing gets in the way of doing what is right for our customers*.<br><br>\*   \*   \*<br><br>So *the vast majority of our team members did the right thing and still do the right thing every day on behalf of customers* . . . ." | Statement No. 5 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were "doing the right thing every day on behalf of their customers." *Khoja*, 899 F.3d at 1013-14. | *See* Statement No. 1 for facts applicable to all defendants, including defendant Mack.<br><br>*See* Statement No. 3 for additional facts specifically applicable to defendant Mack. |
| No. 6 | A. Sloan, | The 3Q16 10-Q, which was signed and | Statement No. 6 was false and | *See* Statement No. 1 for facts applicable to all |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| ¶130 | Shrewsberry, Wells Fargo<br><br>B. 11/3/16<br><br>C. Wells Fargo 3Q16 Form 10-Q | certified pursuant to the Sarbanes-Oxley Act of 2002 by defendants Sloan and Shrewsberry, stated that the "[t]he Company's management evaluated the effectiveness, as of September 30, 2016, of the Company's disclosure controls and procedures," that the "Company's chief executive officer and chief financial officer participated in the evaluation," and that "[b]ased on this evaluation, the Company's chief executive officer and chief financial officer concluded that the Company's disclosure controls and procedures were effective as of September 30, 2016."<br><br>Sloan and Shrewsberry stated further:<br><br>"Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report." | misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices. *Khoja*, 899 F.3d at 1013-14.<br><br>**In addition, Statement No. 6 was false and misleading, and omitted material facts because**:<br><br>• Wells Fargo discovered by September 2016 that the Company did not have adequate internal controls to prevent the illegal auto insurance practices, as defendants admitted after the July 27, 2017, *The New York Times* exposé. ¶¶134(e), 155-156.<br><br>• Wells Fargo's regulatory and litigation exposure far exceeded what defendants disclosed during the Class Period. The Company was in frequent communication before and during the Class Period with regulators concerning the illegal auto insurance practices. In light of the illegal nature of the practices, the fact they occurred in the same Community Banking Division as the fake account scandal, their disastrous effect on Wells Fargo customers, and the recent regulatory actions taken against the Company, the | defendants, including defendants Sloan and Shrewsberry, and for facts specifically applicable to defendant Sloan.<br><br>**Additional Facts specifically applicable to defendant Shrewsberry**:<br><br>• Throughout the Class Period, defendant Shrewsberry was Wells Fargo's Chief Financial Officer and a member of the Operating Committee. ¶23.<br><br>• Shrewsberry was intimately involved with and a spokesperson for the Company's "restoring trust" campaign. ¶¶55-56, 91. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | undisclosed auto insurance practices exposed the Company to a massive loss of public trust, additional significant regulatory actions, fines and litigation. ¶¶134(f), 155-156, 161, 166, 168-172, 178-181. | |
| **No. 7**<br><br>¶131 | A. Sloan, Shrewsberry, Wells Fargo<br><br>B. 11/3/16<br><br>C. Wells Fargo 3Q16 Form 10-Q | Wells Fargo's 3Q16 10-Q provided an update on the internal investigation into sales practices within the Community Banking Division:<br><br>**"Sales Practices Matters**<br><br>On September 8, 2016, we announced settlements with the Consumer Financial Protection Bureau (CFPB), the Office of the Comptroller of the Currency (OCC) and the Office of the Los Angeles City Attorney regarding allegations that some of our retail customers received products and services they did not request. The amount of the settlements, which was fully accrued for as of June 30, 2016, totaled $185 million, plus $5 million in customer remediation. . . ." | Statement No. 7 was false and misleading for the same reasons stated for Statement Nos. 1 and 6. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices. *Khoja*, 899 F.3d at 1013-14. | *See* Statement No. 1 for facts applicable to all defendants, including defendants Sloan and Shrewsberry, and for additional facts specifically applicable to defendant Sloan.<br><br>*See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| **No. 8**<br><br>¶132 | A. Sloan, Shrewsberry, Wells Fargo<br><br>B. 11/3/16<br><br>C. Wells Fargo 3Q16 Form 10-Q | Wells Fargo's 3Q16 10-Q listed the following potential risk factor: "[o]perational risk is the risk of loss resulting from inadequate or failed internal controls and processes, people and systems, or resulting from external events." | Statement No. 8 was false and misleading for the same reasons stated for Statement Nos. 1 and 6.  In addition, defendants' warnings "were misleading because they disclosed a risk 'in the abstract' but omitted the fact that it had 'already . . . come to fruition.'" *Cutler v. Kirchner*, 696 F. App'x 809, 813 (9th Cir. 2017) (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendants Sloan and Shrewsberry, and for additional facts specifically applicable to defendant Sloan.<br><br>*See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |
| **No. 9**<br><br>¶132 | A. Sloan, Shrewsberry, Wells Fargo<br><br>B. 11/3/16<br><br>C. Wells Fargo 3Q16 Form 10-Q | Wells Fargo's 3Q16 10-Q listed the following potential risk factor: "reputational damage from negative publicity, protests, fines, penalties and other negative consequences from regulatory violations and legal actions." | Statement No. 9 was false and misleading for the same reasons stated for Statement Nos. 1 and 6.  Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices. *Khoja*, 899 F.3d at 1013-14.  In addition, defendants' warnings "were misleading because they disclosed a risk 'in the abstract' but omitted the fact that it had 'already . . . come to fruition.'" *Cutler*, 696 F. App'x at 813 (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendants Sloan and Shrewsberry, and for additional facts specifically applicable to defendant Sloan.<br><br>*See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |
| **No. 10**<br><br>¶132 | A. Sloan, Shrewsberry, Wells Fargo<br><br>B. 11/3/16<br><br>C. Wells Fargo 3Q16 Form 10-Q | Wells Fargo's 3Q16 10-Q listed the following potential risk factor:<br><br>**Risks Related to Sales Practices**. Various government entities and offices, as well as Congressional committees, have undertaken formal or informal inquiries, investigations or examinations arising out of certain sales practices of the Company that were the subject of | Statement No. 10 was false and misleading for the same reasons stated for Statement Nos. 1 and 6.  Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices. *Khoja*, 899 F.3d at 1013-14.  In addition, defendants' warnings "were misleading because they disclosed a risk 'in | *See* Statement No. 1 for facts applicable to all defendants, including defendants Sloan and Shrewsberry, and for additional facts specifically applicable to defendant Sloan.<br><br>*See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |

1541887_1

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | settlements with the Consumer Financial Protection Bureau, the Office of the Comptroller of the Currency and the Office of the Los Angeles City Attorney announced by the Company on September 8, 2016.  In addition to imposing monetary penalties and other sanctions, regulatory authorities may require admissions of wrongdoing and compliance with other conditions in connection with such matters, which can lead to restrictions on our ability to engage in certain business activities or offer certain products or services, limitations on our ability to access capital markets, limitations on capital distributions, the loss of customers, and/or other direct and indirect adverse consequences.  A number of lawsuits have also been filed by non-governmental parties seeking damages or other remedies related to these sales practices.  The ultimate resolution of any of these pending legal proceedings or government investigations, depending on the sanctions and remedy sought and granted, could materially adversely affect our results of operations and financial condition.  We may also incur additional costs and expenses in order to address and defend these pending legal proceedings and government investigations, and we may have increased compliance and other costs related to these matters.  Furthermore, negative publicity or public opinion resulting from these matters may increase the risk of reputational harm to our business, which can impact our ability to keep and attract customers, our ability to attract and retain qualified | the abstract' but omitted the fact that it had 'already . . . come to fruition.'" *Cutler*, 696 F. App'x at 813 (citation omitted).　　Statement No. 10 also failed to disclose that the OCC and CFPB had launched investigations into Wells Fargo's fraudulent auto insurance practices.  ¶¶155-156, 166, 175, 178-181. | |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | team members, result in the loss of revenue, or have other material adverse effects on our results of operations and financial condition. | | |
| No. 11 ¶133 | A. Sloan, Shrewsberry, Wells Fargo B. 11/3/16 C. Wells Fargo 3Q16 Form 10-Q | The Company's 3Q16 10-Q included a section titled "Legal Actions," which included the following statement regarding investigations concerning "Sales Practices Matters," as well as an update on potential litigation losses. "Federal, state and local government agencies, including the United States Department of Justice and the United States Securities and Exchange Commission, and state attorneys general and prosecutors' offices, as well as Congressional committees, have undertaken formal or informal inquiries, investigations or examinations arising out of certain sales practices of the Company that were the subject of settlements with the Consumer Financial Protection Bureau, the Office of the Comptroller of the Currency and the Office of the Los Angeles City Attorney announced by the Company on September 8, 2016. The Company has responded, and continues to respond, to requests from a number of the foregoing seeking information regarding these sales practices and the circumstances of the settlements and related matters. A number of lawsuits have also been filed by non-governmental parties seeking damages or | Statement No. 11 was false and misleading for the same reasons stated for Statement Nos. 1 and 6. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices. *Khoja*, 899 F.3d at 1013-14. In addition, defendants' warnings "were misleading because they disclosed a risk 'in the abstract' but omitted the fact that it had 'already . . . come to fruition.'" *Cutler*, 696 F. App'x at 813 (citation omitted). Statement No. 11 also failed to disclose that the OCC and CFPB had launched investigations into Wells Fargo's fraudulent auto insurance practices. ¶¶155-156, 166, 175, 178-181. | *See* Statement No. 1 for facts applicable to all defendants, including defendants Sloan and Shrewsberry, and for additional facts specifically applicable to defendant Sloan. *See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | other remedies related to these sales practices.<br><br>. . . The high end of the range of reasonably possible potential litigation losses in excess of the Company's liability for probable and estimable losses was approximately $1.7 billion as of September 30, 2016.  The change in the high end of the range from June 30, 2016 related to a number of matters. . . ." | | |
| **No. 12**<br><br>¶56 | A. Shrewsberry, Wells Fargo<br><br>B. 11/17/16<br><br>C. Wells Fargo October Retail Banking Customer Activity Report Call | Shrewsberry told investors on the Retail Banking Customer Activity Report Call that "our highest priority right now is rebuilding trust in Wells Fargo, which includes being transparent about the trends in retail banking and updating you on those trends as we move forward." | Statement No. 12 was false and misleading for the same reasons stated for Statement No. 1.  Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust.  *Khoja*, 899 F.3d at 1013-14. | *See* Statement No. 1 for facts applicable to all defendants, including defendant Shrewsberry.<br><br>*See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |
| **No. 13**<br><br>¶57 | A. Wells Fargo<br><br>B. 11/18/16<br><br>C. Written Responses to Questions from U.S. Senate Committee on | "[Question:] As was asked at the hearing, *are you confident that this type of fraudulent activity does not exist in other Wells business lines*?   Have you discovered other types of misconduct involving other products aside from credit cards or basic banking (such as misconduct related to applications for mortgages or personal or other loans, or lines of credit, *insurance*, or other investment areas)?  If so, how did the company | Statement No. 13 was false and misleading for the same reasons stated for Statement No. 1.  Specifically, "by failing to inform investors" (and here, Congress) of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices.  *Khoja*, 899 F.3d at 1013-14. | *See* Statement No. 1 for facts applicable to all defendants. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | Banking, Housing, and Urban Affairs | obtain this information?   When was the first reported case, how many cases have been discovered, and what is the nature of these cases? Have you reported those cases to federal financial regulators?<br><br>        Response:  We believe that the activity at issue here was limited to certain team members within the Community Banking Division." | | |
| No. 14<br><br>¶58 | A. Wells Fargo<br><br>B. 11/18/16<br><br>C. Written Responses to Questions from U.S. Senate Committee on Banking, Housing, and Urban Affairs | The Company's written responses further represented that the Company "has policies, procedures, and internal controls that are reasonably designed to comply with its legal obligations to monitor, detect, and report suspicious activities." | Statement No. 14 was false and misleading for the same reasons stated for Statement No. 1.  Specifically, "by failing to inform investors" (and here, Congress) of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices.  *Khoja*, 899 F.3d at 1013-14. | *See* Statement No. 1 for facts applicable to all defendants. |
| No. 15<br><br>¶59 | A. Wells Fargo<br><br>B. 11/18/16<br><br>C. Written Responses to Questions from U.S. Senate Committee on Banking, Housing, | In response to a pointed question about the Company's failure to timely disclose the fake account scandal in Wells Fargo's SEC filings, the Company told investors that "[w]e will continue to review developments related to sales practices matters and make additional disclosures as the facts and circumstances warrant." | Statement No. 15 was false and misleading for the same reasons stated for Statement No. 1.  Specifically, "by failing to inform investors" (and here, Congress) of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust.  *Khoja*, 899 F.3d at 1013-14. | *See* Statement No. 1 for facts applicable to all defendants. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | and Urban Affairs | | By claiming that they would timely disclose developments related to sales practices, defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," including the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | |
| No. 16 ¶62 | A. Sloan, Wells Fargo B. 12/6/16 C. Goldman Sachs U.S. Financial Services Conference | "What I have told our team is, look, I don't want to just look at [our retail] businesses. We are going to bring in other consultants and we are going to look at sales practices in every business of this Company. Even though *I am not aware of any issues*, but I don't want there ever to be a concern about sales practices in Wells Fargo." | Statement No. 16 was false and misleading for the same reasons stated for Statement No. 1. Specifically, Sloan's claim that he was "*not aware of any issues*" and that they would be looking at "every business of this Company" was both false and misleading and fraudulently omitted that the Company had engaged in illegal auto insurance practices for at least a decade, and "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14.<br><br>By claiming that "*I am not aware of any issues*, but I don't want there ever to be a concern about sales practices in Wells Fargo," Sloan had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information" – *i.e.*, the fact | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | Wells Fargo had committed the auto insurance fraud.  *Schueneman*, 840 F.3d at 706 (citation omitted). | |
| **No. 17**  ¶63 | A. Sloan, Wells Fargo  B. 12/6/16  C. Goldman Sachs U.S. Financial Services Conference | "As part of our review of sales practices across the country we will be engaging a separate independent consultant so that we're going to be looking at all of our businesses.  We are actively engaged with our regulators to comply with the consent orders and taking actions to ensure that we are always doing what is right for our customers." | Statement No. 17 was false and misleading for the same reasons stated for Statement No. 1.  Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust.  *Khoja*, 899 F.3d at 1013-14. | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan. |
| **No. 18**  ¶64 | A. Sloan, Wells Fargo  B. 12/6/16  C. Goldman Sachs U.S. Financial Services Conference | In addition, Sloan touted the Company's recently added "strateg[ic] priority . . . rebuilding trust." | Statement No. 18 was false and misleading for the same reasons stated for Statement No. 1.  Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were rebuilding trust.  *Khoja*, 899 F.3d at 1013-14.  By deciding to discuss their "strateg[ic] priority [of] rebuilding trust," defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud.  *Schueneman*, 840 F.3d at 706 (citation | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | omitted). | |
| **No. 19** ¶65 | A. Mack, Wells Fargo  B. 12/16/16  C. Wells Fargo November 2016 Retail Banking Customer Activity Report Call | Defendant Mack assured investors that her "***number one priority remains rebuilding trust***." | Statement No. 19 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were rebuilding trust. *Khoja*, 899 F.3d at 1013-14.  By stating that their "number one priority [is] rebuilding trust," Mack had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendant Mack.  *See* Statement No. 3 for additional facts specifically applicable to defendant Mack. |
| **No. 20** ¶65 | A. Shrewsberry, Wells Fargo  B. 12/16/16  C. Wells Fargo November 2016 Retail Banking Customer Activity Report Call | Shrewsberry emphasized Wells Fargo's claimed "increased transparency" with investors: "As you know, ***we're committed to maintaining increased transparency*** . . . ." | Statement No. 20 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were committed to increased transparency. *Khoja*, 899 F.3d at 1013-14. | *See* Statement No. 1 for facts applicable to all defendants, including defendant Shrewsberry.  *See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| No. 21 ¶70 | A. Sloan, Wells Fargo B. 1/13/17 C. Wells Fargo Press Release | "*We continued to make progress in the fourth quarter in rebuilding the trust of our customers, team members and other key stakeholders*. I am pleased with the progress we have made in customer remediation, the ongoing review of sales practices across the company and fulfilling our regulatory requirements for sales practices matters." | Statement No. 21 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14. By deciding to discuss their "progress" in "rebuilding the trust of [their] customers," defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.* the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan. |
| No. 22 ¶71 | A. Sloan, Wells Fargo B. 1/13/17 C. Wells Fargo 4Q16 and FY16 Earnings Call | Wrapping up his prepared comments, Sloan spoke to the issue of restoring customers' trust, heralding progress the Company had purportedly made: "It's been only four months since we signed the sales practices consent orders but *we've already made progress in restoring customers' and team members' trust, and we've remained committed to being transparent with investors*." | Statement No. 22 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14. By deciding to discuss their "progress" "in restoring customers' and team members' | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | trust," defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | |
| No. 23 ¶72 | A. Sloan, Wells Fargo B. 1/13/17 C. Wells Fargo 4Q16 and FY16 Earnings Call | "And then, separately, because, as I said in my earlier remarks, *we want to leave no stone unturned here, we've said, and we have, brought in a separate consultant to look at sales practice across other businesses within the Company*. And my guess, it will take much of this year to complete that work. And *if we find something that's important, we'll communicate that*. But if nothing happens we may not communicate it. But we'll take it as it comes. But I *think given our desire to be very transparent, we'll probably err on the side of overcommunicating* as opposed to undercommunicating that." | Statement No. 23 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14. By deciding to state that they would "*err on the side of overcommunicating* as opposed to undercommunicating" any issues regarding their investigation, defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan. |
| No. 24 | A. Shrewsberry, Wells Fargo | Shrewsberry opened by telling investors "we are very committed to maintaining | Statement No. 24 was false and misleading for the same reasons stated for | *See* Statement No. 1 for facts applicable to all defendants, including defendant Shrewsberry. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| ¶76 | B.  2/17/17<br><br>C.  Wells Fargo January Retail Banking Customer Activity Report Call | transparency." | Statement No. 1.  Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were committed to increased transparency. *Khoja*, 899 F.3d at 1013-14. | *See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |
| No. 25<br><br>¶76 | A.  Mack, Wells Fargo<br><br>B.  2/17/17<br><br>C.  Wells Fargo January Retail Banking Customer Activity Report Call | Mack stated that the Company was making "progress . . . in rebuilding trust with our customers and our team members and getting things right for the long term." | Statement No. 25 was false and misleading for the same reasons stated for Statement No. 1.  Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14.<br><br>By deciding to discuss their "progress" in "rebuilding trust with our customers," defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendant Mack.<br><br>*See* Statement No. 3 for additional facts specifically applicable to defendant Mack. |
| No. 26<br><br>¶81 | A.  Sloan, Shrewsberry, Wells Fargo | The Company's 2016 10-K represented that "[o]ur current top priority is rebuilding trust through a comprehensive action plan that includes | Statement No. 26 was false and misleading for the same reasons stated for Statement No. 1.  Specifically, "by failing to inform investors" of their auto insurance fraud, | *See* Statement No. 1 for facts applicable to all defendants, including defendants Sloan and Shrewsberry, and for additional facts specifically applicable to defendant Sloan. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | B. 3/1/17 <br><br> C. Wells Fargo 2016 Form 10-K | making things right for our customers." | defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14. <br><br> By deciding to state that their "top priority is rebuilding trust," defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | *See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |
| **No. 27** <br><br> ¶136 | A. Sloan, Shrewsberry, Wells Fargo <br><br> B. 3/1/17 <br><br> C. Wells Fargo 2016 Form 10-K | The 2016 10-K, which was signed and certified pursuant to the Sarbanes-Oxley Act of 2002 by defendants Sloan and Shrewsberry, stated in pertinent part that the "[t]he Company's management evaluated the effectiveness, as of December 31, 2016, of the Company's disclosure controls and procedures," that the "Company's chief executive officer and chief financial officer participated in the evaluation," and that "[b]ased on this evaluation, the Company's chief executive officer and chief financial officer concluded that the Company's disclosure controls and procedures were effective as of December 31, 2016." <br><br> Sloan and Shrewsberry further stated: | Statement No. 27 was false and misleading for the same reasons stated for Statement Nos. 1 and 6. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices. *Khoja*, 899 F.3d at 1013-14. | *See* Statement No. 1 for facts applicable to all defendants, including defendants Sloan and Shrewsberry, and for additional facts specifically applicable to defendant Sloan. <br><br> *See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | "Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report." | | |
| **No. 28**<br><br>¶137 | A. Sloan, Shrewsberry, Wells Fargo<br><br>B. 3/1/17<br><br>C. Wells Fargo 2016 Form 10-K | Wells Fargo's 2016 10-K stated: "appropriate controls are in place to reduce risks to [Wells Fargo] customers, maintain and increase our competitive market position, ***and protect Wells Fargo's long-term*** safety, soundness and ***reputation***." | Statement No. 28 was false and misleading for the same reasons stated for Statement Nos. 1 and 6.  Specifically, Wells Fargo had discovered by September 2016 that the Company did not have adequate internal controls to prevent the illegal auto insurance practices, as defendants admitted after the July 27, 2017, *The New York Times* exposé. ¶¶134(e), 155-156. | *See* Statement No. 1 for facts applicable to all defendants, including defendants Sloan and Shrewsberry, and for additional facts specifically applicable to defendant Sloan.<br><br>*See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |
| **No. 29**<br><br>¶138 | A. Sloan, Shrewsberry, Wells Fargo<br><br>B. 3/1/17<br><br>C. Wells Fargo 2016 Form 10-K | Wells Fargo's 2016 10-K stated that Wells Fargo adequately "maintain[ed] systems and procedures designed to ensure that we comply with applicable laws and regulations." | Statement No. 29 was false and misleading for the same reasons stated for Statement Nos. 1 and 6.  Specifically, Wells Fargo had discovered by September 2016 that the Company did not have adequate internal controls to prevent the illegal auto insurance practices, as defendants admitted after the July 27, 2017, *The New York Times* exposé. ¶¶134(e), 155-156. | *See* Statement No. 1 for facts applicable to all defendants, including defendants Sloan and Shrewsberry, and for additional facts specifically applicable to defendant Sloan.<br><br>*See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |
| **No. 30** | A. Sloan, Shrewsberry, | Wells Fargo's 2016 10-K stated that the Company had "policies and procedures in place | Statement No. 30 was false and misleading for the same reasons stated for | *See* Statement No. 1 for facts applicable to all defendants, including defendants Sloan and |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| ¶138 | Wells Fargo<br><br>B. 3/1/17<br><br>C. Wells Fargo 2016 Form 10-K | intended to detect and prevent conduct by team members and third party service providers that could potentially harm customers or our reputation." | Statement Nos. 1 and 6. Specifically, Wells Fargo had discovered by September 2016 that the Company did not have adequate internal controls to prevent the illegal auto insurance practices, as defendants admitted after the July 27, 2017, *The New York Times* exposé. ¶¶134(e), 155-156. | Shrewsberry, and for additional facts specifically applicable to defendant Sloan.<br><br>*See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |
| No. 31<br><br>¶139 | A. Sloan, Shrewsberry, Wells Fargo<br><br>B. 3/1/17<br><br>C. Wells Fargo 2016 Form 10-K | Wells Fargo's 2016 10-K provided an update on the internal investigation into sales practices within the Community Banking Division:<br><br>**"Sales Practices Matters**<br><br>On September 8, 2016, we announced settlements with the Consumer Financial Protection Bureau (CFPB), the Office of the Comptroller of the Currency (OCC) and the Office of the Los Angeles City Attorney regarding allegations that some of our retail customers received products and services they did not request. Our current top priority is rebuilding trust through a comprehensive action plan that includes making things right for our customers and team members and building a better Company for the future. The job of rebuilding trust in Wells Fargo will be a long-term effort – one requiring our commitment, patience and perseverance. . . ." | Statement No. 31 was false and misleading for the same reasons stated for Statement Nos. 1 and 6. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices. *Khoja*, 899 F.3d at 1013-14.<br><br>Statement No. 31 also failed to disclose that the OCC and CFPB had already launched investigations into Wells Fargo's fraudulent auto insurance practices. ¶¶155-156, 166, 175, 178-181.<br><br>By deciding to state that their "top priority is rebuilding trust," defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendants Sloan and Shrewsberry, and for additional facts specifically applicable to defendant Sloan.<br><br>*See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| **No. 32**<br><br>¶140 | A. Sloan, Shrewsberry, Wells Fargo<br><br>B. 3/1/17<br><br>C. Wells Fargo 2016 Form 10-K | Wells Fargo's 2016 10-K led investors to believe the Company faced only the potential risk to operations from failed internal controls: "Operational risk is the **risk** of loss resulting from inadequate or failed internal controls and processes . . . ." | Statement No. 32 was false and misleading for the same reasons stated for Statement Nos. 1 and 6. Specifically, Wells Fargo had discovered by September 2016 that the Company did not have adequate internal controls to prevent the illegal auto insurance practices, as defendants admitted after the July 27, 2017, *The New York Times* exposé. ¶¶134(e), 155-156. | *See* Statement No. 1 for facts applicable to all defendants, including defendants Sloan and Shrewsberry, and for additional facts specifically applicable to defendant Sloan.<br><br>*See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |
| **No. 33**<br><br>¶141 | A. Sloan, Shrewsberry, Wells Fargo<br><br>B. 3/1/17<br><br>C. Wells Fargo 2016 Form 10-K | Wells Fargo's 2016 10-K listed the following potential risk factor: "reputational damage from negative publicity, protests, fines, penalties and other negative consequences from regulatory violations and legal actions." | Statement No. 33 was false and misleading for the same reasons stated for Statement Nos. 1 and 6. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices. *Khoja*, 899 F.3d at 1013-14. In addition, defendants' warnings "were misleading because they disclosed a risk 'in the abstract' but omitted the fact that it had 'already . . . come to fruition.'" *Cutler*, 696 F. App'x at 813 (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendants Sloan and Shrewsberry, and for additional facts specifically applicable to defendant Sloan.<br><br>*See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |
| **No. 34**<br><br>¶142 | A. Sloan, Shrewsberry, Wells Fargo<br><br>B. 3/1/17<br><br>C. Wells Fargo 2016 Form 10-K | Wells Fargo's 2016 10-K stated under the "Risk Factors" section:<br><br>**Risks Related to Sales Practices**. Various government entities and offices, as well as Congressional committees, have undertaken formal or informal inquiries, investigations or examinations arising out of certain sales practices | Statement No. 34 was false and misleading for the same reasons stated for Statement Nos. 1 and 6. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices. *Khoja*, 899 F.3d at 1013-14. | *See* Statement No. 1 for facts applicable to all defendants, including defendants Sloan and Shrewsberry, and for additional facts specifically applicable to defendant Sloan.<br><br>*See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | of the Company that were the subject of settlements with the Consumer Financial Protection Bureau, the Office of the Comptroller of the Currency and the Office of the Los Angeles City Attorney announced by the Company on September 8, 2016.  In addition to imposing monetary penalties and other sanctions, regulatory authorities may require admissions of wrongdoing and compliance with other conditions in connection with such matters, which can lead to restrictions on our ability to engage in certain business activities or offer certain products or services, limitations on our ability to access capital markets, limitations on capital distributions, the loss of customers, and/or other direct and indirect adverse consequences.  A number of lawsuits have also been filed by non-governmental parties seeking damages or other remedies related to these sales practices.  The ultimate resolution of any of these pending legal proceedings or government investigations, depending on the sanctions and remedy sought and granted, could materially adversely affect our results of operations and financial condition.  We may also incur additional costs and expenses in order to address and defend these pending legal proceedings and government investigations, and we may have increased compliance and other costs related to these matters.  Furthermore, negative publicity or public opinion resulting from these matters may increase the risk of reputational harm to our business, which can impact our ability to keep and attract | In addition, defendants' risks warnings "were misleading because they disclosed a risk 'in the abstract' but omitted the fact that it had 'already . . . come to fruition.'" *Cutler*, 696 F. App'x at 813 (citation omitted).  Statement No. 34 also failed to disclose that the OCC and CFPB had launched investigations into Wells Fargo's fraudulent auto insurance practices. | |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | customers, our ability to attract and retain qualified team members, result in the loss of revenue, or have other material adverse effects on our results of operations and financial condition.  In addition, we have expanded the time period of our review and our data analysis efforts related to sales practices matters remain ongoing, including our review and validation of the identification of potentially unauthorized accounts by a third party consulting firm.   The ultimate results and conclusions of this work as well as the ongoing internal investigation by the independent directors of our Board are still pending and could lead to an increase in the identified number of potentially impacted customers, additional legal or regulatory proceedings, compliance and other costs, reputational damage, the identification of issues in our practices or methodologies that were used to identify, prevent or remediate sales practices related matters, the loss of additional team members, or further changes in policies and procedures that may impact our business.<br><br>    For more information, refer to Note 15 (Legal Actions) to Financial Statements in this report.<br><br>    ***We may incur fines, penalties and other negative consequences from regulatory violations, possibly even inadvertent or unintentional violations, or from any failure to meet regulatory standards or expectations***.  We | | |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | maintain systems and procedures designed to ensure that we comply with applicable laws and regulations.    However, we are subject to heightened compliance and regulatory oversight and expectations, particularly due to the evolving and increasing regulatory landscape we operate in. In addition, some legal/regulatory frameworks provide for the imposition of fines or penalties for noncompliance even though the noncompliance was inadvertent or unintentional and even though there was in place at the time systems and procedures designed to ensure compliance.  For example, we are subject to regulations issued by the Office of Foreign Assets Control (OFAC) that prohibit financial institutions from participating in the transfer of property belonging to the governments of certain foreign countries and designated nationals of those countries.  OFAC may impose penalties or restrictions on certain activities for inadvertent or unintentional violations even if reasonable processes are in place to prevent the violations.  Any violation of these or other applicable laws or regulatory requirements, even if inadvertent or unintentional, or any failure to meet regulatory standards or expectations could result in fees, penalties, restrictions on our ability to engage in certain business activities, reputational harm, loss of customers or other negative consequences.<br><br>***Negative publicity, including as a result of our actual or alleged conduct or public opinion of the financial services industry generally, could*** | | |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | *damage our reputation and business*.  Reputation risk, or the risk to our business, earnings and capital from negative public opinion, is inherent in our business and has increased substantially because of the financial crisis, our size and profile in the financial services industry, and sales practices related matters.  The reputation of the financial services industry in general has been damaged as a result of the financial crisis and other matters affecting the financial services industry, and negative public opinion about the financial services industry generally or Wells Fargo specifically could adversely affect our ability to keep and attract customers.  Negative public opinion could result from our actual or alleged conduct in any number of activities, including sales practices, mortgage lending practices, servicing and foreclosure activities, lending or other business relationships, corporate governance, regulatory compliance, mergers and acquisitions, and disclosure, sharing or inadequate protection of customer information, and from actions taken by government regulators and community or other organizations in response to that conduct. . . .<br><br>\*       \*       \*<br><br>**Risks Relating to Legal Proceedings**.  Wells Fargo and some of its subsidiaries are involved in judicial, regulatory and arbitration proceedings or investigations concerning matters arising from our business activities.  Although we | | |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | believe we have a meritorious defense in all significant litigation pending against us, there can be no assurance as to the ultimate outcome.  We establish reserves for legal claims when payments associated with the claims become probable and the costs can be reasonably estimated.  We may still incur legal costs for a matter even if we have not established a reserve.  In addition, the actual cost of resolving a legal claim may be substantially higher than any amounts reserved for that matter.  The ultimate resolution of a pending legal proceeding or investigation, depending on the remedy sought and granted, could materially adversely affect our results of operations and financial condition.  As noted above, we are subject to heightened regulatory oversight and scrutiny, which may lead to regulatory investigations, proceedings or enforcement actions.  In addition to imposing monetary penalties and other sanctions, regulatory authorities may require admissions of wrongdoing and compliance with other conditions in connection with settling such matters, which can lead to reputational harm, loss of customers, restrictions on the ability to access capital markets, limitations on capital distributions, the inability to engage in certain business activities or offer certain products or services, and/or other direct and indirect adverse effects. | | |
| No. 35 | A.  Sloan, | Wells Fargo's 2016 10-K also included a | Statement   No.   35   was   false   and | *See* Statement  No. 1  for  facts  applicable  to  all |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| ¶143 | Shrewsberry, Wells Fargo<br><br>B. 3/1/17<br><br>C. Wells Fargo 2016 Form 10-K | section titled "Legal Actions." Within that section was the following subsection, among others:<br><br>"**SALES PRACTICES MATTERS** Federal, state and local government agencies, including the United States Department of Justice, the United States Securities and Exchange Commission and the United States Department of Labor, and state attorneys general and prosecutors' offices, as well as Congressional committees, have undertaken formal or informal inquiries, investigations or examinations arising out of certain sales practices of the Company that were the subject of settlements with the Consumer Financial Protection Bureau, the Office of the Comptroller of the Currency and the Office of the Los Angeles City Attorney announced by the Company on September 8, 2016. The Company has responded, and continues to respond, to requests from a number of the foregoing seeking information regarding these sales practices and the circumstances of the settlements and related matters. A number of lawsuits have also been filed by non-governmental parties seeking damages or other remedies related to these sales practices. These include consumer class action cases, a securities fraud class action, shareholder derivative demands, a lawsuit brought under the Employee Retirement Income Security Act, and wrongful termination/demotion and wage and hour class actions." | misleading for the same reasons stated for Statement Nos. 1 and 6. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices. *Khoja*, 899 F.3d at 1013-14. The 2016 10-K's "Legal Actions" section made no mention of the fact defendants discovered in July 2016 that the Company was engaged in the auto insurance fraud.<br><br>In addition, defendants' risks warnings "were misleading because they disclosed a risk 'in the abstract' but omitted the fact that it had 'already . . . come to fruition.'" *Cutler*, 696 F. App'x at 813 (citation omitted).<br><br>Statement No. 35 also failed to disclose that the OCC and CFPB had launched investigations into Wells Fargo's fraudulent auto insurance practices. | defendants, including defendants Sloan and Shrewsberry, and for additional facts specifically applicable to defendant Sloan.<br><br>*See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| **No. 36**<br><br>¶144 | A. Sloan, Shrewsberry, Wells Fargo<br><br>B. 3/1/17<br><br>C. Wells Fargo 2016 Form 10-K | The "Legal Actions" section also provided an update on litigation liability, stating:<br><br>"The high end of the range of reasonably possible potential litigation losses in excess of the Company's liability for potential losses in excess of the Company's liability for probable and estimable losses was approximately $1.8 billion as of December 31, 2016." | Statement No. 36 was false and misleading for the same reasons stated for Statement Nos. 1 and 6. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices. *Khoja*, 899 F.3d at 1013-14. The 2016 10-K's "Legal Actions" section made no mention of the fact defendants discovered in July 2016 that the Company was engaged in the auto insurance fraud, or that the Company would have to pay substantial fines and remediation.<br><br>In addition, defendants' risks warnings "were misleading because they disclosed a risk 'in the abstract' but omitted the fact that it had 'already . . . come to fruition.'" *Cutler*, 696 F. App'x at 813 (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendants Sloan and Shrewsberry, and for additional facts specifically applicable to defendant Sloan.<br><br>*See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |
| **No. 37**<br><br>¶83 | A. Sanger, Sloan, Wells Fargo<br><br>B. 3/15/17<br><br>C. Wells Fargo 2017 Proxy Statement, Letter to Our Stockholders from our Chairman and | "Restoring your trust and the trust of all key stakeholders is our top priority and, while we have more work to do, we firmly believe we are on the right path. We have taken decisive actions, many of which are discussed in this proxy statement, to make things right for our customers and team members, and are fixing problems at their root cause and building a better Wells Fargo for the future." | Statement No. 37 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14.<br><br>By stating that "[r]estoring your trust . . . | *See* Statement No. 1 for facts applicable to all defendants, including defendants Sloan and Sanger, and for additional facts specifically applicable to defendant Sloan.<br><br>**Additional facts specifically applicable to defendant Sanger**:<br><br>• Throughout the Class Period, defendant Sanger was Chairman of Wells Fargo's Board of Directors, and led the four-director |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | our Chief Executive Officer | | . is our top priority," defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | Oversight Committee which conducted the independent investigation of Wells Fargo's "retail banking sales practices and related matters" announced on September 27, 2016. ¶¶24, 82-85.<br><br>• Wells Fargo escalated issues concerning the CPI program to the Board of Directors no later than September 2016. ¶161.<br><br>• Sanger was removed from the Board of Directors immediately following the revelation that the Company had engaged in the auto insurance schemes, just months after Wells Fargo urged shareholders to retain him as a director. ¶177. |
| **No. 38**<br><br>¶84 | A. Sloan, Shrewsberry, Sanger, Wells Fargo<br><br>B. 3/15/17<br><br>C. Wells Fargo 2017 Proxy Statement | The 2017 Proxy Statement told investors that the Company's "top priority" was "rebuilding trust" and, to that end, defendants stated they had "[e]ngaged external consultants to review sales practices across our Company" and that they were "[b]eing more transparent in our disclosures to our investors." | Statement No. 38 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14.<br><br>By stating that "rebuilding trust" was thier "top priority," defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive | *See* Statement No. 1 for facts applicable to all defendants, including defendants Sloan, Shrewsberry, and Sanger, and for additional fact specifically applicable to defendant Sloan.<br><br>*See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry.<br><br>*See* Statement No. 37 for additional facts specifically applicable to defendant Sanger. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | |
| **No. 39** ¶84 | A. Sloan, Shrewsberry, Sanger, Wells Fargo B. 3/15/17 C. Wells Fargo 2017 Proxy Statement | The 2017 Proxy Statement devoted considerable space to updating investors on the Company's internal investigation into its retail banking practices, including by stating that with regard to the Board's internal investigation into sales practices issues, the "Board is Committed to Public Disclosure of Findings from its Investigation." | Statement No. 39 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14.<br><br>By discussing the internal investigation, defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendants Sloan, Shrewsberry, and Sanger, and for additional fact specifically applicable to defendant Sloan.<br><br>*See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry.<br><br>*See* Statement No. 37 for additional facts specifically applicable to defendant Sanger. |
| **No. 40** ¶85 | A. Sloan, Shrewsberry, Sanger, Wells Fargo B. 3/15/17 C. Wells Fargo | The 2017 Proxy Statement also included a section titled "Retail Banking Sales Practices – Our Path Forward," which stated, in part:<br><br>**"Our action plan is focused on rebuilding trust in Wells Fargo.** | Statement No. 40 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, | *See* Statement No. 1 for facts applicable to all defendants, including defendants Sloan, Shrewsberry, and Sanger, and for additional fact specifically applicable to defendant Sloan.<br><br>*See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | 2017 Proxy Statement | *      *      *<br><br>**Our Board's Independent Investigation**.<br><br>Our Board's independent directors launched a comprehensive independent investigation into our Company's retail banking sales practices and related matters. The investigation covers a broad range of topics so that it addresses questions and concerns raised by our stockholders, customers, team members, regulators, and other government officials, including the actions of our Board, senior management, the Community Bank, and key corporate functions.<br><br>*      *      *<br><br>**Our Board and Company Are Taking Decisive Actions**. Since September 2016, our Board and our Company have taken decisive and comprehensive actions to address retail banking sales practices issues, work to restore the trust of our many stakeholders, and build a better Wells Fargo for the future. Wells Fargo has not waited for the completion of our Board's independent investigation, and has already taken actions to enhance our compensation and performance management programs, risk management organization and practices, and the ways we reinforce our culture. | 899 F.3d at 1013-14.<br><br>By discussing the internal investigation, defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | *See* Statement No. 37 for additional facts specifically applicable to defendant Sanger. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | *      *      *<br><br>We have engaged external consultants to review sales practices across our Company.<br><br>*      *      *<br><br>**Being More Transparent**<br><br>Part of our action plan to lead our Company forward is focused on outreach to our customers, team members, investors, regulators, elected officials, and the communities in which we do business.  Our action plan includes being more transparent in our communications.<br><br>• We launched a new webpage at www.wellsfargo.com/commitment to keep our customers and other stakeholders updated on the latest developments.<br><br>• We are providing monthly updates on the impact of the sales practices matter on customer activity in our retail bank.<br><br>• We are enhancing disclosures on our website, including on a broad range of environmental, social, and governance matters in response to feedback from our investors and other stakeholders. | | |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | *     *     * <br><br> We formed a new **Rebuilding Trust Office** in early 2017, which organizes and accelerates our efforts to rebuild trust in Wells Fargo through one integrated program and oversees our Company's compliance with the requirements under our sales practices consent orders with our regulators.  The head of the Rebuilding Trust Office also reports to our Chief Risk Officer." | | |
| **No. 41** <br><br> ¶89 | A. Shrewsberry, Wells Fargo <br><br> B. 3/20/17 <br><br> C. Wells Fargo February 2017 Retail Banking Customer Activity Report Call | Shrewsberry again hailed "greater transparency": "It's been 6 months since we announced the sales practices settlements and we remain committed to greater transparency, including these monthly updates on customer activity in retail banking." | Statement No. 41 was false and misleading for the same reasons stated for Statement No. 1.   Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14. <br><br> By discussing the internal investigation and claiming they had been transparent with any information regarding retail banking, defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation | *See* Statement No. 1 for facts applicable to all defendants, including defendant Shrewsberry. <br><br> *See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | omitted). | |
| No. 42 ¶90 | A. Shrewsberry, Wells Fargo B. 3/20/17 C. Wells Fargo February 2017 Retail Banking Customer Activity Report Call | In response to an analyst's question about the ongoing regulatory investigations into Wells Fargo, Shrewsberry again highlighted the Company's all-encompassing internal review and stated that the Company was not at risk of increased regulatory actions, giving investors the impression that defendants had disclosed any untoward sales practices issues they had discovered: "We've voluntarily commissioned reviews of really the rest of Wells Fargo. Our regulatory interactions reflect that and they're very comprehensive and because of all that we're doing with them, it's hard to imagine them expanding it even further; it's very transparent." | Statement No. 42 was false and misleading for the same reasons stated for Statement Nos. 1 and 6. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14. Statement No. 42 also failed to disclose that the OCC and CFPB had already launched investigations into Wells Fargo's fraudulent auto insurance practices. ¶¶155-156, 166, 175, 178-181. By discussing the internal investigation, defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendant Shrewsberry. *See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |
| No. 43 ¶91 | A. Shrewsberry, Wells Fargo B. 3/20/17 | And when asked for an update on the Company's internal investigation, including whether additional executive departures were coming, Shrewsberry told investors there was nothing new to disclose, directing them to a | Statement No. 43 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that | *See* Statement No. 1 for facts applicable to all defendants, including defendant Shrewsberry. *See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | C. Wells Fargo February 2017 Retail Banking Customer Activity Report Call | website that omitted to disclose anything about the illicit insurance sales practices that defendants had discovered:<br><br>"You should take a peek at this document that's on the Web Site that *describes everything to date*. In that document [the Board] make[s] it clear that as they've come across things in their investigation that they've acted on it at that time. So I don't think there's any pent up activity that hasn't been acted upon yet." | they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14.<br><br>By discussing the internal investigation, defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.* the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | |
| No. 44<br><br>¶94 | A. Sanger, Wells Fargo<br><br>B. 4/10/17<br><br>C. Wells Fargo Press Release | On April 10, 2017, the Company's Board of Directors issued a press release announcing the results of the Board's internal investigation into the Company's Community Banking Division and releasing the Board's report. In the press release, Chairman of the Board Sanger stated that "'[t]his *exhaustive investigation* identified serious issues related to Wells Fargo's decentralized structure and the sales culture of the Community Bank, all of which the Board and management have been working diligently to rectify.'" | Statement No. 44 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14.<br><br>By discussing the internal investigation, defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sanger.<br><br>*See* Statement No. 37 for additional facts specifically applicable to defendant Sanger. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| No. 45<br><br>¶95 | A. Sanger, Wells Fargo<br><br>B. 4/10/17<br><br>C. Independent Directors of the Board of Wells Fargo & Company Sales Practices Investigation Report | The 110-page report claimed that "[t]he investigation has been extensive." The investigators conducted "100 interviews of current and former employees, members of Wells Fargo's Board of Directors and other relevant parties," and "searched across more than 35 million documents, including communications and other materials of more than 300 custodians." They also hired "a forensic consulting and data analytics firm, which had direct and unrestricted access to relevant Wells Fargo account, investigations and human resources systems and databases." | Statement No. 45 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14.<br><br>By discussing the internal investigation, defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sanger.<br><br>*See* Statement No. 37 for additional facts specifically applicable to defendant Sanger. |
| No. 46<br><br>¶96 | A. Sanger, Wells Fargo<br><br>B. 4/10/17<br><br>C. Independent Directors of the Board of Wells Fargo & Company Sales Practices Investigation Report | In connection with the 110-page report, forensic consultants analyzed Wells Fargo Internal Investigation Group's database of allegations internally categorized as "Customer Consent," "Inappropriate Account Opening," "Unnecessary Accounts" and "Other." Wells Fargo defined "Customer Consent" as "'allegations of *the booking or sale of any banking product without the knowledge or official direct consent* of the primary customer and/or point account/product holder.'" The report documented minutia such as a single customer complaint "alleging that a | Statement No. 46 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14.<br><br>By discussing the internal investigation, defendants had a duty to speak | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sanger.<br><br>*See* Statement No. 37 for additional facts specifically applicable to defendant Sanger. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | Prudential simplified term life insurance policy had been purchased for a Wells Fargo Community Bank customer without the customer's consent." | "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | |
| **No. 47** ¶97 | A. Sanger, Wells Fargo B. 4/10/17 C. Wells Fargo Press Release | "[T]he trust customers, employees and investors place in Wells Fargo is paramount – and our work to rebuild and strengthen those relationships continues in earnest. The Board has total confidence in management, and ***while this investigation has concluded, our oversight of the Company and commitment to accountability are stronger than ever***." | Statement No. 47 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14.  By discussing the internal investigation, claiming the "trust customers . . . and investors place in Wells Fargo is paramount," defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sanger.  *See* Statement No. 37 for additional facts specifically applicable to defendant Sanger. |
| **No. 48** ¶98 | A. Sanger, Wells Fargo B. 4/10/17 | Sanger stated that the Board's findings on its internal investigation into sales practices within the Community Banking Division showed that the Board "'took appropriate actions with the | Statement No. 48 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sanger.  *See* Statement No. 37 for additional facts specifically |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | C. Wells Fargo Conference Call | information they had, when they had it.'" | defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14.<br><br>By discussing the internal investigation, and claiming the Board "took appropriate actions," defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | applicable to defendant Sanger. |
| **No. 49**<br><br>¶98 | A. Sloan, Wells Fargo<br><br>B. 4/10/17<br><br>C. Wells Fargo Conference Call | On that same call Sloan reassured investors and the public that, "'*[t]here is not another large shoe to drop*.'" | Statement No. 49 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14.<br><br>Statement No. 49 also failed to disclose that the OCC and CFPB had already launched investigations into Wells Fargo's fraudulent auto insurance practices. ¶¶155-156, 166, 175, 178-181. | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| **No. 50**<br><br>¶99 | A. Sloan, Wells Fargo<br><br>B. 4/10/17<br><br>C. Wells Fargo Press Release | In a separate April 10, 2017, press release discussing the Board's investigation report, Sloan claimed that "the Board's ***comprehensive findings*** provide another important opportunity to learn from our mistakes and take action to improve the way we operate." | Statement No. 50 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14.<br><br>By discussing the internal investigation, and that the results were "comprehensive," defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan. |
| **No. 51**<br><br>¶100 | A. Sloan, Wells Fargo<br><br>B. 4/13/17<br><br>C. Wells Fargo Press Release | "Wells Fargo continued to make meaningful progress in the first quarter in rebuilding trust with customers and other important stakeholders." | Statement No. 51 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14. | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | By stating that the Company had made "meaningful progress" in restoring trust, defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | |
| No. 52<br><br>¶101 | A. Sloan, Wells Fargo<br><br>B. 4/13/17<br><br>C. Wells Fargo 1Q17 Earnings Call | During the conference call that same day, Sloan discussed the Board's report on its internal investigation, released a few days prior, stating: "The issuance of the board's report, which was appropriately thorough, was an important step in rebuilding trust." | Statement No. 52 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14.<br><br>By stating that the Company had made progress in restoring trust, defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan. |
| No. 53 | A. Sloan, Wells Fargo | "And we've invited third parties to look at our practices and our culture across the company. | Statement No. 53 was false and misleading for the same reasons stated for | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| ¶102 | B. 4/13/17 C. Wells Fargo 1Q17 Earnings Call | So I would say that [costs are] elevated right now. And once we are – we comply with the consent orders and we make sure that there are no other issues that we need to deal with, then you can imagine those going down over time.  But right now, the most important job at this company is rebuilding trust.” | Statement No. 1.  Specifically, “by failing to inform investors” of their auto insurance fraud, defendants “gave the false impression” that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14.  By stating that the Company had made progress in restoring trust, defendants had a duty to speak “‘in a manner that wouldn’t mislead investors,’ including disclosing adverse information that cuts against the positive information,” – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | additional facts specifically applicable to defendant Sloan. |
| **No. 54** **¶103** | A. Sloan, Wells Fargo B. 4/13/17 C. Wells Fargo 1Q17 Earnings Call | “[Analyst:]  Okay.  And just Tim, one final question for you.  The board report and the news of the clawbacks, et cetera, et cetera, was all very dramatic.  In your view, does that sort of represent – does this report and the events around it sort of represent the high watermark I guess of headline risk to the company as you get better from here, I guess, is what I’m asking?  [Sloan:]  Nancy, the short answer is, I hope so.” | Statement No. 54 was false and misleading for the same reasons stated for Statement No. 1.  Specifically, “by failing to inform investors” of their auto insurance fraud, defendants “gave the false impression” that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14.  By discussing the investigation and its results, defendants had a duty to speak “‘in a manner that wouldn’t mislead investors,’ including disclosing adverse information that | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted).<br><br>Statement No. 54 also failed to disclose that the OCC and CFPB had already launched investigations into Wells Fargo's fraudulent auto insurance practices. ¶¶155-156, 166, 175, 178-181. | |
| **No. 55**<br><br>¶109 | A. Sloan, Wells Fargo<br><br>B. 4/25/17<br><br>C. Wells Fargo Annual Shareholders Meeting | "*And as I stand before you today, I can assure you that we are facing these problems head on* and that Wells Fargo is emerging a much stronger company.  We're focused on rebuilding the trust of all of our stakeholders.  And while we still have work to do, *we are making strong progress in addressing the root causes of the problems*, making things right and building a better Wells Fargo.  So let me talk to you about a few steps that we're taking on our journey.<br><br>Since we announced our initial legal and regulatory settlements on September 8 of last year, *we've taken decisive actions to fix the problems that led to improper sales practices*, including many of the issues that were identified in the board report.  It is critically important that we fix these issues and move forward to rebuild trust." | Statement No. 55 was false and misleading for the same reasons stated for Statement No. 1.  Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14.<br><br>By stating that the Company had made progress in restoring trust, defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| **No. 56**<br><br>¶112 | A. Sloan, Shrewsberry, Wells Fargo<br><br>B. 5/5/17<br><br>C. Wells Fargo 1Q17 Form 10-Q | Wells Fargo's 1Q17 10-Q provided an update on the internal investigation into sales practices across the Company, particularly within the Community Banking Division:<br><br>"**Sales Practices Matters**<br><br>As we have previously reported, on September 8, 2016, we announced settlements with the Consumer Financial Protection Bureau (CFPB), the Office of the Comptroller of the Currency (OCC) and the Office of the Los Angeles City Attorney regarding allegations that some of our retail customers received products and services they did not request. As a result, rebuilding trust through a comprehensive action plan that includes making things right for our customers, team members, and other stakeholders, and building a better Company for the future remains our current top priority. The job of rebuilding trust in Wells Fargo is a long-term effort – one requiring our commitment, patience and perseverance." | Statement No. 56 was false and misleading for the same reasons stated for Statement Nos. 1 and 6. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices. *Khoja*, 899 F.3d at 1013-14. The 1Q17 10-Q made no mention of the fact defendants discovered in July 2016 that the Company was engaged in the auto insurance fraud.<br><br>Statement No. 56 also failed to disclose that the OCC and CFPB had launched investigations into Wells Fargo's fraudulent auto insurance practices. ¶¶155-156, 166, 175, 178-181. | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan.<br><br>*See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |
| **No. 57**<br><br>¶148 | A. Sloan, Shrewsberry, Wells Fargo<br><br>B. 5/5/17<br><br>C. Wells Fargo 1Q17 Form 10-Q | Wells Fargo's 1Q17 10-Q stated that "[t]he Company's management [had] evaluated the effectiveness, as of March 31, 2017, of the Company's disclosure controls and procedures," that the "Company's chief executive officer and chief financial officer participated in the evaluation," and that "[b]ased on this evaluation, the Company's chief executive officer and chief financial officer concluded that the Company's | Statement No. 57 was false and misleading for the same reasons stated for Statement Nos. 1 and 6. Specifically, Wells Fargo had discovered by September 2016 that the Company did not have adequate internal controls to prevent the illegal auto insurance practices, as defendants admitted after the July 27, 2017, *The New York Times* exposé. ¶¶134(e), 155-156. | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan.<br><br>*See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | disclosure controls and procedures were effective as of March 31, 2017." Sloan and Shrewsberry further stated: "Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report." | "[B]y failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices. *Khoja*, 899 F.3d at 1013-14. | |
| No. 58 ¶149 | A. Sloan, Shrewsberry, Wells Fargo B. 5/5/17 C. Wells Fargo 1Q17 Form 10-Q | Wells Fargo's 1Q17 10-Q couched internal control failures as a potential risk to operations: "Operational risk is the risk of loss resulting from inadequate or failed internal controls and processes, people and systems, or resulting from external events." | Statement No. 58 was false and misleading for the same reasons stated for Statement Nos. 1 and 6. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices. *Khoja*, 899 F.3d at 1013-14. The 1Q17 10-Q made no mention of the fact defendants discovered in July 2016 that the Company was engaged in the auto insurance fraud. In addition, defendants' risks warnings "were misleading because they disclosed a risk 'in the abstract' but omitted the fact that it had 'already . . . come to fruition.'" *Cutler*, 696 F. App'x at 813 (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan. *See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |
| No. 59 | A. Sloan, | Wells Fargo's 1Q17 10-Q listed the | Statement No. 59 was false and | *See* Statement No. 1 for facts applicable to all |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| ¶149 | Shrewsberry, Wells Fargo<br><br>B. 5/5/17<br><br>C. Wells Fargo 1Q17 Form 10-Q | following potential risk factor: "reputational damage from negative publicity, protests, fines, penalties and other negative consequences from regulatory violations and legal actions." | misleading for the same reasons stated for Statement Nos. 1 and 6. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices. *Khoja*, 899 F.3d at 1013-14. The 1Q17 10-Q made no mention of the fact defendants discovered in July 2016 that the Company was engaged in the auto insurance fraud.<br><br>    In addition, defendants' risks warnings "were misleading because they disclosed a risk 'in the abstract' but omitted the fact that it had 'already . . . come to fruition.'" *Cutler*, 696 F. App'x at 813 (citation omitted). | defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan.<br><br>*See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |
| **No. 60**<br><br>¶151 | A. Sloan, Shrewsberry, Wells Fargo<br><br>B. 5/5/17<br><br>C. Wells Fargo 1Q17 Form 10-Q |     Wells Fargo's 1Q17 10-Q also included a section titled "Legal Actions," which again included the following statement regarding investigations concerning "Sales Practices Matters":<br><br>    "**SALES PRACTICES MATTERS** Federal, state and local government agencies, including the United States Department of Justice, the United States Securities and Exchange Commission and the United States Department of Labor, and state attorneys general and prosecutors' offices, as well as Congressional committees, have undertaken formal or informal inquiries, investigations or examinations arising out of |     Statement No. 60 was false and misleading for the same reasons stated for Statement Nos. 1 and 6.<br><br>    Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices. *Khoja*, 899 F.3d at 1013-14. The 1Q17 10-Q made no mention of the fact defendants discovered in July 2016 that the Company was engaged in the auto insurance fraud.<br><br>    In addition, defendants' risks warnings | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan.<br><br>*See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | certain sales practices of the Company that were the subject of settlements with the Consumer Financial Protection Bureau, the Office of the Comptroller of the Currency and the Office of the Los Angeles City Attorney announced by the Company on September 8, 2016.  The Company has responded, and continues to respond, to requests from a number of the foregoing seeking information regarding these sales practices and the circumstances of the settlements and related matters.

        In addition, a number of lawsuits have also been filed by nongovernmental parties seeking damages or other remedies related to these sales practices.  First, various class plaintiffs purporting to represent consumers who allege that they received products or services without their authorization or consent have brought eleven separate putative class action lawsuits against the Company in the United States District Court for the Northern District of California and various other jurisdictions.  In April 2017, the Company entered into a settlement agreement in the first-filed action, *Jabbari v. Wells Fargo Bank, N.A.*, to resolve any claims regarding products or services provided without authorization or consent for the time period May 1, 2002 to April 20, 2017. Pursuant to the settlement, we will pay $142 million or remediation, attorneys' fees, and settlement fund claims administration.   The settlement is subject to approval by the District | "were misleading because they disclosed a risk 'in the abstract' but omitted the fact that it had 'already . . . come to fruition.'"  *Cutler*, 696 F. App'x at 813 (citation omitted).

        Statement No. 60 also failed to disclose that the OCC and CFPB had launched investigations into Wells Fargo's fraudulent auto insurance practices.  ¶¶155-156, 166, 175, 178-181. | |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | Court.    Second, Wells Fargo shareholders are pursuing a consolidated securities fraud class action in the United States District Court for the Northern District of California alleging certain misstatements and omissions in the Company's disclosures related to sales practices matters. Third, Wells Fargo shareholders have brought numerous shareholder derivative lawsuits asserting breach of fiduciary claims, among others, against current and former directors and officers for their alleged failure to detect and prevent sales practices issues, which lawsuits are consolidated into two separate actions in the United States District Court for the Northern District of California and California state court, as well as a third in Delaware state court.    Fourth, a range of employment litigation has been brought against Wells Fargo, including an Employee Retirement Income Security Act class action in the United States District Court for the District of Minnesota brought on behalf of 401(k) plan participants; class actions brought in the United States District Court for the Northern District of California and New York state court on behalf of employees who allege they protested sales practice misconduct and/or were terminated for not meeting sales goals; various wage and hour class actions brought in federal and state court in California, New Jersey, and Pennsylvania on behalf of nonexempt branch based employees alleging sales pressure resulted in uncompensated overtime; and multiple single plaintiff Sarbanes-Oxley Act complaints | | |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | and state law whistleblower actions filed with the Department of Labor or in various state courts alleging adverse employment action for raising sales practice misconduct issues." | | |
| **No. 61** ¶152 | A. Sloan, Shrewsberry, Wells Fargo B. 5/5/17 C. Wells Fargo 1Q17 Form 10-Q | Wells Fargo's 1Q17 10-Q provided an update on potential litigation losses: "The high end of the range of reasonably possible potential litigation losses in excess of the Company's liability for probable and estimable losses was approximately $2.0 billion as of March 31, 2017." | Statement No. 61 was false and misleading for the same reasons stated for Statement Nos. 1 and 6. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices. *Khoja*, 899 F.3d at 1013-14.<br><br>In addition, defendants' warnings "were misleading because they disclosed a risk 'in the abstract' but omitted the fact that it had 'already . . . come to fruition.'" *Cutler*, 696 F. App'x at 813 (citation omitted).<br><br>The 1Q17 Form 10-Q's "Legal Actions" section made no mention of the fact defendants discovered in July 2016 that the Company was engaged in the auto insurance fraud, or that the Company would have pay substantial fines and remediation as a result of the fraud. Three months later, Wells Fargo disclosed its legal costs could reach $3.3 billion. ¶11.<br><br>Statement No. 61 also failed to disclose that the OCC and CFPB had launched | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan.<br><br>*See* Statement No. 6 for additional facts specifically applicable to defendant Shrewsberry. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | investigations into Wells Fargo's fraudulent auto insurance practices.  ¶¶155-156, 166, 175, 178-181. | |
| **No. 62**  ¶114 | A.  Sloan, Wells Fargo  B.  5/11/17  C.  Wells Fargo 2017 Investor Day | Sloan opened his remarks by emphasizing that Wells Fargo was then "emerging from the challenges associated with inappropriate retail sales practices," stating further:  "We have an unwav`ering commitment to fix everything that went wrong, ***continue to look across the company to fix anything else that's broken*** and strengthen how we serve our customers and how we lead our team members. . . .  \*       \*       \*  We've strengthened ethics and risk management.  We've centralized key enterprise control functions such as risk management and human resources.  We've created a new Office of Ethics, Oversight and Integrity.  And then we've invested in additional monitoring and controls, including an enhanced mystery shopping program in our Retail Bank.  \*       \*       \*  I firmly believe that we're on the right path and will ***continue to be as transparent with you as we can as we move forward***. . . ." | Statement No. 62 was false and misleading for the same reasons stated for Statement No. 1.  Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust.  *Khoja*, 899 F.3d at 1013-14.  By affirmatively claiming the Company was emerging from the challenges related to its fake account scandal, and that they would "fix anything else that's broken," defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| **No. 63**<br><br>¶116 | A. Sloan, Wells Fargo<br><br>B. 5/11/17<br><br>C. Wells Fargo 2017 Investor Day | Sloan stated at the Investor Day presentation that "[w]e continue to make progress on rebuilding trust." | Statement No. 63 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14.<br><br>By affirmatively claiming they had made progress on rebuilding trust, defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan. |
| **No. 64**<br><br>¶121 | A. Mack, Wells Fargo<br><br>B. 6/13/17<br><br>C. Morgan Stanley Financials Conference | In response to a question about regulatory matters, Mack again spoke of transparency: "So we clearly have the opportunity to rebuild trust with a number of our stakeholders, with our team members across our customer base and certainly, the regulators. So we are working very hard to ensure that we're as transparent as possible . . . ." | Statement No. 64 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14.<br><br>By affirmatively claiming that they were rebuilding customer trust and being as | *See* Statement No. 1 for facts applicable to all defendants, including defendant Mack.<br><br>*See* Statement No. 3 for additional facts specifically applicable to defendant Mack. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | "transparent as possible," defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted).<br><br>    Statement No. 64 also failed to disclose that the OCC and CFPB had launched investigations into Wells Fargo's fraudulent auto insurance practices. ¶¶155-156, 166, 175, 178-181. | |
| No. 65<br><br>¶124 | A. Sloan, Wells Fargo<br><br>B. 7/14/17<br><br>C. Wells Fargo Press Release | "We ***continued to make progress this quarter in our efforts to rebuild trust*** and build a better Wells Fargo and, while there is still more work ahead of us, ***we are on the right track*** and I am confident about our future." | Statement No. 65 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14.<br><br>    By affirmatively claiming that they were rebuilding customer trust, defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | *Schueneman*, 840 F.3d at 706 (citation omitted). | |
| No. 66 ¶125 | A. Sloan, Wells Fargo B. 7/14/17 C. Wells Fargo 2Q17 Earnings Call | "Importantly, during the second quarter, *we continued to make progress on rebuilding trust, which remains our top priority*." | Statement No. 66 was false and misleading for the same reasons stated for Statement No. 1. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14.<br><br>By affirmatively claiming that they were rebuilding customer trust, defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted). | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan. |
| No. 67 ¶126 | A. Sloan, Wells Fargo B. 7/14/17 C. Wells Fargo 2Q17 Earnings Call | "[Analyst:] Yes, a couple of questions back to the sales practices issue. I think you mentioned that you had preliminary court approval for the $142 million settlement. Could you just summarize for us what other suits, issues, et cetera that have been publicly disclosed that are out there? *Is there anything major that's still outstanding at this point*?" | Statement No. 67 was false and misleading for the same reasons stated for Statement Nos. 1 and 6. Specifically, "by failing to inform investors" of their auto insurance fraud, defendants "gave the false impression" that they had disclosed all of their fraudulent practices, and directly undermined their claim that they were restoring customer trust. *Khoja*, 899 F.3d at 1013-14. | *See* Statement No. 1 for facts applicable to all defendants, including defendant Sloan, and for additional facts specifically applicable to defendant Sloan. |

| Statement No. & Complaint ¶ | A. Liable Speaker(s) B. Date & C. Medium | False & Misleading Statements | Why the Statement Is False & Misleading | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
|  |  | [Sloan:]  Well, the $142 million settlement that was preliminarily approved by the court, we believe, addresses the other class action suits that are sales practices related, I think there are about 10 that are out there.  So we have high expectations that ultimately that preliminary approval will become final approval after we execute on what we're being – we agreed to do, which of course, we're going to do that.  In terms of other activities out there, we have a – we have consent orders and plans that were – for both the OCC and the CFPB that we need to comply with, and we're working very hard to be able to do that.  And as has been discussed, there's been – there's an investigation that's still going on by the Justice Department.  And we'll continue to provide more disclosures and the disclosure of that in the 10-Q and the 10-K.  But *there is nothing really new that's different in the 10-Q as it relates to other legal matters for sales practices* with the exception of the announcement of this preliminary approval from the court on the settlement." | By affirmatively claiming that they were rebuilding customer trust, defendants had a duty to speak "'in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information," – *i.e.*, the fact they had committed the auto insurance fraud. *Schueneman*, 840 F.3d at 706 (citation omitted).<br><br>Statement No. 67 also failed to disclose that the OCC and CFPB had launched investigations into Wells Fargo's fraudulent auto insurance practices. ¶¶155-156, 166, 175, 178-181. |  |