UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PURPLE MOUNTAIN TRUST,<br><br>    Plaintiff,<br><br>  v.<br><br>WELLS FARGO & COMPANY, et al.,<br><br>    Defendants. | Case No. 18-cv-03948-JD<br><br>**ORDER RE CLASS CERTIFICATION** |

This is a putative securities class action against defendants Wells Fargo & Company and its former CEO, Timothy Sloan (together, Wells Fargo). Purple Mountain Trust is out of the case, *see* Dkt. No. 24, and the Construction Laborers Pension Trust for Southern California (Construction Laborers) is now lead plaintiff on behalf of persons who purchased or acquired Wells Fargo common stock between November 3, 2016, and August 3, 2017. The operative complaint, Dkt. No. 46, alleges claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), and Securities and Exchange Commission Rule 10b-5. Dkt. No. 46 ¶¶ 2, 16.

The Court sustained the Section 10(b) and Rule 10b-5 claims based on two alleged misstatements, and dismissed all other claims. Dkt. No. 74. Construction Laborers asks to certify a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. Dkt. No. 102 at 2. Wells Fargo opposes certification on the grounds that common questions do not predominate for reliance and damages. Dkt. No. 105 at 3-4. The parties' familiarity with the record is assumed, and a Rule 23(b)(3) class is certified.

## DISCUSSION

The standards governing class certification are well established, and the Court has written in detail about them. *See, e.g., Meek v. SkyWest, Inc.*, 562 F. Supp. 3d 488, 493 (N.D. Cal. 2021);

*Milan v. Clif Bar & Co.*, 340 F.R.D. 591, 596-97 (N.D. Cal. 2021). The discussion in those cases is incorporated here. In pertinent part, plaintiffs bear the burden of showing by a preponderance of the evidence that the proposed class satisfies all four requirements of Rule 23(a) and at least one of the subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664-65 (9th Cir. 2022) (en banc). The Court's class certification analysis "must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim," but the Court may consider merits questions only to the extent they are "relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013) (internal quotations and citations omitted). Class certification is decidedly not an alternative form of summary judgment or an occasion to hold a mini-trial on the merits. *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015). The decision of whether to certify a class is entrusted to the district court's sound discretion. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

### A.     Numerosity (23(a)(1))

Rule 23(a) requires that a putative class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Construction Laborers states, with evidentiary support, that there were approximately 5 billion shares of Wells Fargo common stock outstanding as of July 2016, and that the total trading volume for Wells Fargo common stock was over 3.8 billion shares during the class period. Dkt. No. 102 at 7. The Court infers that the proposed class of stockholders is sufficiently numerous when a corporation has millions of shares trading on a national exchange. Wells Fargo does not contest numerosity, and the Court finds that the requirement is satisfied.

### B.     Typicality and Adequacy (23(a)(3)-(4))

Rule 23(a) requires the representative parties to demonstrate that their claims are typical of the putative class and that they are capable of fairly and adequately protecting the interests of the class. Fed. R. Civ. P. 23(a)(3)-(4). Construction Laborers says its claims are typical because they are "founded on the same alleged facts and legal theories as the claims of all other Class members

2

-- *i.e.*, the alleged inflation of the price of Wells Fargo's stock caused by Defendants' materially false and misleading statements and material omissions concealing the Company's illegal CPI and GAP auto insurance practices." Dkt. No. 102 at 10.  As for adequacy, Construction Laborers says that its interest "in establishing Defendants' liability and obtaining the maximum possible recovery" is aligned with the interests of the putative class because it was injured by the same alleged misstatements. *Id.* at 11.  It submits evidence of its willingness and ability to represent the class as well as evidence of the proficiency of its proposed class counsel. *Id.* at 11, 20.  Wells Fargo does not contest typicality or adequacy, and the Court finds the requirements are met.

### C.   Commonality (23(a)(2)) and Predominance (23(b)(3))

The commonality requirement of Rule 23(a)(2) is satisfied when there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Because "any competently crafted class complaint literally raises common questions," the Court's task is to look for a common contention "capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Alcantar*, 800 F.3d at 1052 (internal quotations omitted).  The Court must find a "capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted) (emphasis in original).  Commonality does not require total uniformity across a class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "[E]ven a single common question will do." *Wal-Mart*, 564 U.S. at 359 (internal quotations omitted).  The Rule 23(a)(2) commonality standard is "rigorous." *Levya v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).

Construction Laborers seeks certification under Rule 23(b)(3), which sets out the related but nonetheless distinct requirement that common questions of law or fact predominate over individual ones. Dkt. No. 102 at 12; Fed. R. Civ. P. 23(b)(3).  The predominance inquiry focuses on "'whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Olean*, 31 F.4th at 664 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).  Each element of a claim need not be susceptible to classwide proof, *Amgen*, 568 U.S. at 468-69, and the "important

3

1  questions apt to drive the resolution of the litigation are given more weight in the predominance
2  analysis over individualized questions which are of considerably less significance to the claims of
3  the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016).  Rule 23(b)(3)
4  permits certification when "one or more of the central issues in the action are common to the class
5  and can be said to predominate, … even though other important matters will have to be tried
6  separately, such as damages or some affirmative defenses particular to some individual class
7  members." *Tyson*, 577 U.S. at 453 (internal quotations omitted).

"Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)," *Comcast*, 569 U.S. at 34, and the main concern under subsection (b)(3) is "the balance between individual and common issues." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 560 (9th Cir. 2019) (en banc) (internal quotations omitted).  Commonality and predominance can be assessed in tandem, with a careful eye toward ensuring that the specific requirements of each are fully satisfied. *See, e.g.*, *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120-21 (9th Cir. 2017).

Construction Laborers says that commonality exists because all putative class members were injured by the same misstatements over the same time period.  Dkt. No. 102 at 8-9.  The common questions of law and fact are said to be: "1. Whether Defendants violated the Securities Exchange Act of 1934; 2. Whether Defendants omitted and/or misrepresented material facts; 3. Whether Defendants knowingly or recklessly disregarded that their statements and omissions were false and misleading; 4. Whether the price of Wells Fargo's common stock was artificially inflated as a result of Defendants' misrepresentations and/or omissions; and 5. Whether and to what extent disclosure of the truth regarding Defendants' omissions and misrepresentations of material facts caused Class members to suffer economic loss and damages." *Id*.

Wells Fargo does not contest commonality, and the Court finds that the requirement is met. The Court's independent review confirms that "the questions common to all investors will be relatively substantial" because Construction Laborers "alleges a common course of conduct over the entire period directed against all investors, generally relied upon, and violating common statutory provisions." *Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir. 1975) (internal quotations omitted).

4

1    Wells Fargo's only objection to certification is lack of predominance under Rule 23(b)(3).
2    Dkt. No. 105 at 3-4. The Court's predominance analysis "'begins, of course, with the elements of
3    the underlying cause of action.'" *Olean*, 31 F.4th at 665 (quoting *Erica P. John Fund, Inc. v.
4    Halliburton Co.*, 563 U.S. 804, 809 (2011)). To establish liability under Section 10(b) and Rule
5    10b-5, Construction Laborers must show (1) a material misrepresentation or omission by Wells
6    Fargo (falsity); (2) scienter; (3) a connection between the misrepresentation or omission and the
7    purchase or sale of a security; (4) reliance on the misrepresentation or omission; (5) economic loss
8    (damages); and (6) loss causation. *Halliburton*, 563 U.S. at 809-10.

### 1.   Reliance

Construction Laborers says that it is entitled to a presumption of classwide reliance under *Basic, Inc. v. Levinson*, 485 U.S. 224, 245-47 (1988). The *Basic* presumption is essential to a securities class action because individual questions of reliance would predominate otherwise. *Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999). The presumption is based on "the 'fraud-on-the-market' theory," which holds that "the market price of shares traded on well-developed markets reflects all publicly available information, and hence, any, material misrepresentations." *Halliburton,* 563 U.S. at 811 (internal quotations omitted). To trigger the presumption, Construction Laborers must demonstrate that: (1) the alleged misrepresentations were publicly known; (2) Wells Fargo's common stock traded in an efficient market; and (3) the relevant transaction took place between the time the misrepresentations were made and the time the truthful disclosures were made. *Id*.

The first and third elements are not in dispute here. The record demonstrates that the misrepresentations were public, and that Construction Laborers purchased Wells Fargo stock between the dates of the misrepresentations and corrective disclosures. Dkt. No. 102 at 14. Wells Fargo challenges only the second element, and says that Construction Laborers has not proven that Wells Fargo stock traded in an efficient market and consequently is not entitled to the *Basic* presumption. Dkt. No. 105 at 6.

In an efficient market, "stock prices reflect public information." *Binder*, 184 F.3d at 1065. Many courts, including the Ninth Circuit, use the five-factor test in *Cammer v. Bloom*, 711 F.

Supp. 1264 (D.N.J. 1989), to assess market efficiency. *Binder*, 184 F.3d at 1065. The *Cammer* factors are: "first, whether the stock trades at a high weekly volume; second, whether securities analysts follow and report on the stock; third, whether the stock has market makers and arbitrageurs; fourth, whether the company is eligible to file [a short form registration statement with the SEC]; and fifth, whether there are 'empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price.'" *Id.* (quoting *Cammer*, 711 F. Supp. at 1286-87). The *Cammer* factors set a high bar and demand rigorous analysis. *Miller v. Thane Int'l, Inc.*, 615 F.3d 1095, 1103 (9th Cir. 2010).

Wells Fargo does not dispute the first four *Cammer* factors, and Construction Laborers and its expert, Bjorn Steinholt, have presented a good evidentiary basis for concluding that Wells Fargo stock traded in an efficient market during the class period. *See* Dkt. No. 102 at 14-16; Dkt. No. 102-4 ¶¶ 9, 21-58. For factor one, Steinholt determined that Wells Fargo stock traded at an average weekly volume of approximately 2% of total shares outstanding -- a volume that supports a strong presumption of market efficiency. Dkt. No. 102-4 ¶¶ 24-25; *Cammer*, 711 F. Supp. at 1286. For factor two, Steinholt determined that Wells Fargo was covered by more than 30 analyst firms and was the subject of at least 250 analyst reports during the class period. Dkt. No. 102-4 ¶¶ 27-28. This broad level of coverage indicates that "the market would rapidly and fully incorporate information into the stock price because analyst reports would likely be closely reviewed" by investors. *See In re Diamond Foods, Inc. Sec. Litig.,* 295 F.R.D. 240, 248 (N.D. Cal. 2013) (internal quotations omitted); *Cammer*, 711 F. Supp. at 1283 n.30 (15 analyst reports in a one-year period supported market efficiency). Steinholt also found that *Cammer* factors three and four evidenced market efficiency. Wells Fargo stock was subject to designated market makers as it traded on the NYSE, and the company was eligible to file a short form registration statement during the class period. Dkt. No. 102-4 ¶¶ 31-32, 34.

Wells Fargo challenges only Steinholt's analysis of *Cammer* factor five: whether there is a cause-and-effect relationship between company news days and movement in the stock price. Dkt. No. 105 at 6. To satisfy this factor, Steinholt conducted an event study in which he used a regression analysis to determine the statistical relationship between the returns of Wells Fargo

stock and the returns of the S&P 500 and KB Nasdaq Bank indices. Dkt. No. 102-4 ¶ 36. He then assessed Wells Fargo's stock price reactions following selected event days to calculate the return not attributable to market or industry factors. *Id.* ¶ 37. Specifically, he analyzed the stock price reactions following eight of Wells Fargo's quarterly earnings announcements during fiscal 2016 and 2017 and found statistically significant stock price movements on five dates. *Id.* ¶ 40. He also analyzed the stock price reactions following the two alleged corrective disclosures on July 27, 2017, and August 4, 2017, and found statistically significant price declines on both dates. *Id.* ¶¶ 41, 45, 50. Steinholt concluded that *Cammer* factor five was satisfied and supported a conclusion that Wells Fargo stock traded in an efficient market. *Id.* ¶ 51.

Wells Fargo objects to the event study on multiple grounds. To start, it says that the analysis of earnings announcements cannot support an inference that the market reacted efficiently to the misstatements. Dkt. No. 105 at 7. The earnings announcements are uniquely "informationally dense," regularly scheduled, "highly publicized," and "closely scrutinized" by the market, and Steinholt "failed to analyze a single news date comparable to those at issue here -- *i.e.*, dates on which oral statements were made to analysts at a conference or dates on which written responses to questions from Congress were submitted." *Id*. Wells Fargo also suggests that Steinholt's analysis of the corrective disclosure dates proves nothing because he knew those days were highly likely to have statistically significant price movement based on the allegations in the amended complaint. *Id.* at 8.

None of these points is well taken. An analysis of events closely analogous to the misstatements is not necessary to prove market efficiency. *See Amgen*, 568 U.S. at 462 ("If a market is generally efficient in incorporating publicly available information into a security's market price, it is reasonable to presume that a particular public, material misrepresentation will be reflected in the security's price."). Steinholt used a widely accepted methodology to test event days selected based on objective criteria. *See e.g., In re Diamond Foods*, 295 F.R.D. at 249. Wells Fargo does not dispute that Steinholt found statistically significant price reactions at the one percent confidence level following the alleged corrective disclosures. Dkt. No. 102-4 ¶¶ 45, 50. Wells Fargo does not offer any evidence to demonstrate market inefficiency, nor does it identify

7

any days that, had they been tested, would undermine Steinholt's findings. Dkt. No. 105 at 6-8. Overall, Wells Fargo simply snipes at Steinholt's work, without taking the step of proffering any evidence that might show that the market was inefficient in any way.

So too for Wells Fargo's complaint that Steinholt did not test enough event days. Wells Fargo says that he analyzed only three earnings announcements during the class period, and found statistically significant price movement on just one date. *Id.* at 8-9. This argument glosses over the fact that Steinholt found statistically significant price movement at the one percent level on that date. Dkt. No. 106-3 ¶¶ 52-53. The cumulative probability for such a finding is well below Steinholt's five percent benchmark for statistical significance. *Id.* In addition, a similar number of event days is typically accepted as sufficient proof of a cause-and-effect relationship. *See, e.g., Hayes v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 WL 7406418, at \*6 (N.D. Cal. Dec. 22, 2016).

Wells Fargo's closing objection is that Steinholt did not hypothesize about the direction the stock price would move on each event day. Dkt. No. 105 at 10-11. The problem for Wells Fargo is that it did not identify any decision or rule demanding such a hypothesis. It may be that Steinholt's analysis would have taken on a little extra heft if he had theorized about the direction of the price movements, or said more about how the news disclosed on each event day was consistent with the price movement. *Id.* at 11-13. But Wells Fargo did not show that this additional commentary would have changed the outcome of Steinholt's findings in a meaningful way, and certainly did not demonstrate that his work should be thrown out for this reason. On that score, it is worth noting that Wells Fargo does not seek to exclude Steinholt's testimony.

Nor does Wells Fargo dispute Steinholt's other analyses that suggest the market was efficient. Steinholt found that, throughout the class period, Wells Fargo common stock had a large market capitalization of more than $220 billion, a small bid-ask spread of approximately $0.01 per share, and a large public float of more than $200 billion, and consequently satisfied the three additional market efficiency factors outlined in *Krogman v. Sterritt*, 202 F.R.D. 467, 478 (N.D. Tex. 2001). Dkt. No. 102-4 ¶¶ 52-57. And while not dispositive of market efficiency, the fact that Wells Fargo stock is listed on the NYSE, a highly regarded and well-regulated exchange, strongly

8

1  indicates that it trades in an efficient market.

2  Consequently, Construction Laborers has established market efficiency by a preponderance of the evidence. It is entitled to the presumption of classwide reliance afforded by the fraud-on-the-market theory.

### 2. Classwide Damages

Construction Laborers must demonstrate that "damages are capable of measurement on a classwide basis" to satisfy predominance. *Comcast*, 569 U.S. at 34. The Ninth Circuit has determined, pre- and post-*Comcast*, that "a district court is not precluded from certifying a class even if plaintiffs may have to prove individualized damages at trial." *Olean*, 31 F.4th at 668-69; *see also Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016) (collecting cases). Construction Laborers and Steinholt say that "out of pocket" damages can be measured on a classwide basis by using an event study to quantify the per share price decline that occurred upon the disclosure of Wells Fargo's alleged fraud. Dkt. No. 102 at 18; Dkt. No. 102-4 ¶¶ 61-65.

Construction Laborers has shown by a preponderance of the evidence that damages are capable of measurement on a classwide basis consistent with its theory of liability. Wells Fargo objects that the proposed damages methodology is a "nearly verbatim copy" of the methodology Steinholt has described for other securities cases and that Steinholt's report does not adequately explain how an event study will isolate damages related to the theory of liability in this case. Dkt. No. 105 at 14-15. Why Wells Fargo believes these to be fatal flaws is left unsaid. Event studies along the lines prepared by Steinholt are widely accepted, and the fact that he did one in other cases does not detract from that in any way. Wells Fargo's suggestion that Steinholt has not described how his methodology will disaggregate the effects of dismissed claims, confounding information, or changing knowledge or circumstances, is not a bar to certification. *See Halliburton*, 563 U.S. at 807 (securities plaintiffs need not prove loss causation to obtain class certification).

The elements of falsity, materiality, and loss causation are common questions that "need not be adjudicated before a class is certified." *Amgen*, 568 U.S. at 474-75 ("[M]ateriality need not be proved prior to Rule 23(b)(3) class certification.") (citing *Halliburton*, 563 U.S. at 807 (loss

causation need not be proved at the class-certification stage) and *Basic*, 485 U.S. at 242 ("the falsity or misleading nature of the . . . public statements" is a "common questio[n]")). Construction Laborers has consequently established predominance under Rule 23(b)(3).

### D. Superiority (23(b)(3))

The final certification question is whether certification will serve the ends of justice and efficiency. Rule 23(b)(3) requires a finding that proceeding as a class is superior to other means of adjudication, which in this case would mean individual actions by each putative class member. That is the situation here. The putative class likely consists of thousands of investors, and resolving the dispute in a single class action would be far more efficient than litigating thousands of individual cases. Wells Fargo does not dispute superiority, and the Court finds that Rule 23(b)(3) is satisfied.

## CONCLUSION

The Court certifies a class of "[a]ll persons and entities who purchased or otherwise acquired the common stock of Wells Fargo & Co. … during the period from November 2, 2016 through August 3, 2017 inclusive … and were damaged thereby. Excluded from the Class are Defendants, present or former executive officers of Wells Fargo and their immediate family members (as defined in 17 C.F.R. § 229.404, Instructions (1)(a)(iii) and (1)(b)(ii))." Dkt. No. 102 at 1. Construction Laborers Pension Trust for Southern California is appointed class representative, and Robbins Geller Rudman & Dowd LLP is appointed class counsel.

Construction Laborers is directed to submit by September 1, 2022, a proposed plan for dissemination of notice to the class. The parties are directed to meet and confer in advance of submitting the plan so that the proposal can be submitted on a joint basis.

**IT IS SO ORDERED.**

Dated: August 15, 2022

JAMES DONATO
United States District Judge