ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ (147029)
JASON A. FORGE (181542)
SCOTT H. SAHAM (188355)
LUCAS F. OLTS (234843)
ASHLEY M. KELLY (281597)
KEVIN S. SCIARANI (301411)
ERIKA L. OLIVER (306614)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
jforge@rgrdlaw.com
scotts@rgrdlaw.com
lolts@rgrdlaw.com
akelly@rgrdlaw.com
ksciarani@rgrdlaw.com
eoliver@rgrdlaw.com
    – and –
JASON C. DAVIS (253370)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
jdavis@rgrdlaw.com

Attorneys for Lead Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PURPLE MOUNTAIN TRUST, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> WELLS FARGO & COMPANY, et al., <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:18-cv-03948-JD<br><br>CLASS ACTION<br><br>LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>DATE:     March 16, 2023<br>TIME:     10:00 a.m.<br>JUDGE:   Honorable James Donato |

4864-6705-8249.v5

**TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUES TO BE DECIDED ...................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................2

I.     PRELIMINARY STATEMENT ...............................................2

II.    OVERVIEW OF THE LITIGATION ........................................4

       A.     Factual Background ..............................................4

       B.     Procedural History ...............................................4

III.   THE PROPOSED SETTLEMENT ..........................................6

IV.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ............8

       A.     Lead Plaintiff and Lead Counsel Have Adequately Represented the Class ..........10

       B.     The Proposed Settlement Is the Result of Good Faith, Arm's-Length
              Negotiations by Informed, Experienced Counsel Who Were Aware of the
              Risks of the Litigation.................................................11

       C.     The Settlement Provides Adequate Relief for the Class...........................12

       D.     The Costs, Risks, and Delay of Trial and Appeal Support Approval of the
              Settlement ...............................................13

       E.     The Proposed Method for Distributing Relief Is Effective........................15

       F.     Proposed Attorneys' Fees, Litigation Expenses, and Lead Plaintiff's
              Award.....................................................16

       G.     There Are No Other Agreements ......................................17

       H.     The Proposed Plan of Allocation Treats Class Members Equitably and
              Does Not Confer Preferential Treatment .................................17

       I.     The Remaining Ninth Circuit Factors Support Preliminary Approval of the
              Settlement ...............................................18

              1.     The Extent of Discovery Completed and the Stage of the
                     Proceedings at Which the Settlement Was Achieved Strongly
                     Support Preliminary Approval ..................................19

              2.     Risks of Maintaining Class Action Status Through Trial ..................19

              3.     Experience and Views of Counsel ...............................19

V.     THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA,
       AS WELL AS DUE PROCESS REQUIREMENTS.................................20

Lead Plaintiff's Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Class
Action Settlement and Memorandum of Points and Authorities in Support Thereof - 3:18-cv-03948-JD   - i -
4864-6705-8249.v5

1

2
**Page**

3
VI.      THE PROPOSED CLAIMS ADMINISTRATOR ............................................................22

VII.     CONCLUSION.........................................................................................................22

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lead Plaintiff's Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Class
Action Settlement and Memorandum of Points and Authorities in Support Thereof - 3:18-cv-03948-JD        - ii -
4864-6705-8249.v5

1

# TABLE OF AUTHORITIES

2

**Page**

3

4

## CASES

5

*Alberto v. GMRI, Inc.*,
    252 F.R.D. 652 (E.D. Cal. 2008) .........................................................................................18

6

7

*Ang v. Bimbo Bakeries USA, Inc.*,
    2020 WL 2041934 (N.D. Cal. Apr. 28, 2020) ...........................................................................9

8

*Cheng Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)..........................................................................13

9

10

*Ching v. Siemens Indus., Inc.*,
    2013 WL 6200190 (N.D. Cal. Nov. 27, 2013) ........................................................................21

11

12

*Ciuffitelli v. Deloitte & Touche LLP*,
    2019 WL 1441634 (D. Or. Mar. 19, 2019)..............................................................................18

13

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974).................................................................................................................20

14

15

*Fleming v. Impax Laby's, Inc.*,
    2022 WL 2789496 (N.D. Cal. July 15, 2022)...................................................................7, 17

16

17

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ....................................................................................... *passim*

18

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
    *aff'd sub nom. Hefler v. Pekoc*,
    802 F. App'x 285 (9th Cir. 2020) .................................................................................. *passim*

19

20

*In re Capstone Turbine Corp. Sec. Litig.*,
    2020 WL 7889062 (C.D. Cal. Aug. 26, 2020).........................................................................7

21

22

*In re Charles Schwab Corp. Sec. Litig.*,
    2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) ........................................................................19

23

*In re Extreme Networks, Inc. Sec. Litig.*,
    2019 WL 3290770 (N.D. Cal. July 22, 2019)........................................................................10

24

25

*In re Haier Freezer Consumer Litig.*,
    2013 WL 2237890 (N.D. Cal. May 21, 2013).........................................................................9

26

27

28

Lead Plaintiff's Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Class
Action Settlement and Memorandum of Points and Authorities in Support Thereof - 3:18-cv-03948-JD
4864-6705-8249.v5

- iii

Page

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) ..................................................................8

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007)..................................................14

*In re MGM Mirage Sec. Litig.*,
708 F. App'x 894 (9th Cir. 2017) ....................................................12, 21

*In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*,
2017 WL 6040065 (N.D. Cal. Dec. 6, 2017),
*aff'd*, 768 Fed. App'x 651 (9th Cir. 2019) ...........................................16

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................20

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 1991529 (N.D. Cal. June 30, 2007) ......................................11

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................................................9

*In re TracFone Unlimited Serv. Plan Litig.*,
112 F. Supp. 3d 993 (N.D. Cal. 2015)...................................................15

*In re Veritas Software Corp. Sec. Litig.*,
496 F.3d 962 (9th Cir. 2007) ................................................................20

*In re Wireless Facilities, Inc. Sec. Litig.*,
253 F.R.D. 630 (S.D. Cal. 2008) ..........................................................20

*In re Zynga Inc. Sec. Litig.*,
2015 WL 6471171 (N.D. Cal. Oct. 27, 2015).............................13, 14, 17

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ..........................................................10, 20

*Linney v. Cellular Alaska P'ship*,
1997 WL 450064 (N.D. Cal. July 18, 1997),
*aff'd*, 151 F.3d 1234 (9th Cir. 1998)......................................................11

*Low v. Trump Univ., LLC*,
881 F.3d 1111 (9th Cir. 2018) ..............................................................21

Lead Plaintiff's Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Class
Action Settlement and Memorandum of Points and Authorities in Support Thereof - 3:18-cv-03948-JD          - iv -
4864-6705-8249.v5

1

2                                                                                           **Page**

3

*Mauss v. NuVasive, Inc.*,
4    2018 WL 6421623 (S.D. Cal. Dec. 6, 2018)....................................................................13, 18

5    *McKnight v. Uber Techs., Inc.*,
6    2017 WL 3427985 (N.D. Cal. Aug. 7, 2017) ............................................................................8

7    *McPhail v. First Command Fin. Plan., Inc.*,
     2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ..........................................................................17
8
     *Mendoza v. Hyundai Motor Co.*,
9    2017 WL 342059 (N.D. Cal. Jan. 23, 2017) ............................................................................18

10   *Mild v. PPG Indus., Inc.*,
     2019 WL 3345714 (C.D. Cal. July 25, 2019) ..........................................................................11
11
     *Moorer v. StemGenex Med. Grp., Inc.*,
12   2021 WL 4993054 (S.D. Cal. Oct. 26, 2021) ..........................................................................21

13   *Nelson v. Bennett*,
14   662 F. Supp. 1324 (E.D. Cal. 1987).........................................................................................9

15   *Norton v. LVNV Funding, LLC*,
     2021 WL 3129568 (N.D. Cal. July 23, 2021).............................................................2, 5, 12, 13
16
     *Officers for Justice v. Civil Serv. Comm'n, of City & Cnty. of S.F.*,
17   688 F.2d 615 (9th Cir. 1982) ..................................................................................................21

18   *Pataky v. Brigantine, Inc.*,
19   2018 WL 3020159 (S.D. Cal. June 18, 2018)..........................................................................12

20   *Rodriguez v. W. Publ'g Corp.*,
     563 F.3d 948 (9th Cir. 2009) ...............................................................................9, 11, 19, 20
21
     *Staton v. Boeing Co.*,
22   327 F.3d 938 (9th Cir. 2003) ..................................................................................................16

23   *Terry v. Hoovestol, Inc.*,
24   2018 WL 4283420 (N.D. Cal. Sept. 7, 2018) .........................................................................8, 9

25   *Vataj v. Johnson*,
     2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ..........................................................................21
26
     *Vinh Nguyen v. Radient Pharms. Corp.*,
27   2014 WL 1802293 (C.D. Cal. May 6, 2014) ...........................................................................18

28

Lead Plaintiff's Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Class
Action Settlement and Memorandum of Points and Authorities in Support Thereof - 3:18-cv-03948-JD      - v -
4864-6705-8249.v5

1

2                                                                                              **Page**

3

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ...............................................................................16

*Weeks v. Kellogg Co.*,
   2013 WL 6531177 (C.D. Cal. Nov. 23, 2013)...................................................14

*West v. Circle K Stores, Inc.*,
   2006 WL 1652598 (E.D. Cal. June 13, 2006) .....................................................9

*Wong v. Arlo Techs., Inc.*,
   2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ...........................................10, 13

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   §78j(b).....................................................................................................................4
   §78u-4(a)(4) ..................................................................................................2, 7, 17

Federal Rules of Civil Procedure
   Rule 23 .......................................................................................................... *passim*
   Rule 23(b)(3) ........................................................................................................21
   Rule 23(c)(1) ........................................................................................................19
   Rule 23(c)(2)(B) ...................................................................................................20
   Rule 23(e).................................................................................................2, 10, 13
   Rule 23(e)(1) ..........................................................................................................9
   Rule 23(e)(1)(B) .....................................................................................................9
   Rule 23(e)(2).........................................................................................9, 10, 18, 20
   Rule 23(e)(2)(A) ...................................................................................................10
   Rule 23(e)(2)(B) ...................................................................................................11
   Rule 23(e)(2)(C) ...................................................................................................12
   Rule 23(e)(2)(C)(i)................................................................................................13
   Rule 23(e)(2)(C)(ii)...............................................................................................15
   Rule 23(e)(2)(C)(iii)..............................................................................................16
   Rule 23(e)(2)(D) ...................................................................................................17
   Rule 23(e)(3).................................................................................................10, 17

17 C.F.R.
   §240.10b-5 ..............................................................................................................4

Lead Plaintiff's Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Class
Action Settlement and Memorandum of Points and Authorities in Support Thereof - 3:18-cv-03948-JD      - vi -
4864-6705-8249.v5

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on March 16, 2023, or as soon as counsel may be heard, class representative Construction Laborers Pension Trust Fund of Southern California ("Lead Plaintiff" or "Class Representative"), on behalf of itself and all members of the certified Class, will and do hereby move the Court for an Order, pursuant to Rule 23 of the Federal Rules of Civil Procedure: (i) preliminarily approving the proposed settlement (the "Settlement") of this action as set forth in the Stipulation;[1] (ii) approving the form and manner of giving notice of the proposed Settlement to the Class; (iii) scheduling a hearing before the Court to determine whether the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and litigation expenses, including an award to the Class Representative, should be approved; and (iv) providing such other and further relief as this Court deems just and proper.[2]

This motion is unopposed and is based on the Memorandum of Points and Authorities below and Appendix A thereto, the Saham Declaration and exhibits attached thereto, the Declaration of Ross D. Murray Regarding Notice of Pendency Dissemination, Publication of Notice of Pendency, Requests for Exclusion Received to Date, Settlement Notice Plan, and Claims Administration submitted herewith (the "Murray Decl."), the Stipulation and attached exhibits, all prior pleadings in this Litigation, and such additional evidence or argument as may be requested by the Court.

A [Proposed] Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order") with annexed exhibits is also submitted herewith.

## STATEMENT OF ISSUES TO BE DECIDED

1.     Whether the proposed $300,000,000.00 cash recovery and the other terms of the proposed Settlement of this action are within the range of fairness, reasonableness, and adequacy to

---

[1]   All capitalized terms not defined herein shall have the same meanings as set forth in the Stipulation of Settlement dated February 6, 2023 (the "Stipulation"), a true and correct copy of which is attached as Exhibit 1 to the Declaration of Scott H. Saham in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement (the "Saham Decl."), submitted herewith.  Emphasis is added and citations are omitted throughout unless otherwise noted.

[2]   These multiple motions are addressed in one 22-page brief for efficiency and ease of presentation.

warrant the Court's preliminary approval and the dissemination of notice of its terms to Class Members.

2.      Whether the Court should approve the form and substance of the proposed Notice of Proposed Settlement of Class Action ("Settlement Notice"), Proof of Claim Form ("Proof of Claim"), the Summary Notice, and the Postcard Notice, appended as Exhibits A-1 through A-4 to the Preliminary Approval Order, as well as the manner of notifying the Class of the proposed Settlement.

3.      Whether the Court should set a date for a hearing to determine whether the Settlement and the Plan of Allocation should be finally approved, and to consider Lead Counsel's application for an award of attorneys' fees and payment of expenses, including an award to the Class Representative pursuant to 15 U.S.C. §78u-4(a)(4) ("Settlement Hearing").

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      PRELIMINARY STATEMENT

Lead Plaintiff and defendants Wells Fargo & Co. ("Wells Fargo" or the "Company") and Timothy Sloan have reached a proposed Settlement of this securities class action on behalf of all persons and entities who purchased or otherwise acquired the publicly traded common stock of Wells Fargo during the Class Period and were damaged thereby,[3] in exchange for $300,000,000.00 cash.  Lead Plaintiff now moves the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, applicable Ninth Circuit precedent, and the guidelines set forth in the Northern District of California's Procedural Guidance for Class Action Settlements (the "Guidelines"),[4] to preliminarily approve the proposed Settlement.

The proposed Settlement came on the eve of trial, after over four years of hard-fought litigation and at a time when the Settling Parties were fully aware of the strengths and potential

---

[3]      The Class Period is November 3, 2016, to August 3, 2017, inclusive.

[4]      The Guidelines are addressed in Appendix A attached hereto and may be accessed at https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (last visited February 6, 2023).  While a court may "consider them," the Guidelines "do not carry the weight of law."  *Norton v. LVNV Funding, LLC*, 2021 WL 3129568, at *12 (N.D. Cal. July 23, 2021).

1   weaknesses of their respective positions.[5]  As set forth below, the Settlement was reached following

2   years-long negotiations between experienced counsel, with the assistance of the Honorable Layn R.

3   Phillips (Ret.) and Phillips ADR Enterprises, a highly respected mediation firm that has extensive

4   experience in complex securities litigation.  The Settlement, which represents approximately 31%-

5   47% of the estimated aggregate damages in this case, is an excellent result for the Class and falls

6   significantly above the typical range of percentage recoveries.

7            Prior to reaching the Settlement, Lead Plaintiff had, among other things: (i) filed a detailed

8   Consolidated Complaint for Violations of the Federal Securities Laws (ECF 46) (the "Complaint");

9   (ii) litigated Defendants' motion to dismiss; (iii) completed extensive fact discovery involving the

10  exchange of more than 505,000 pages of documents between the Settling Parties, 19 fact depositions,

11  and over 35 subpoenas issued to third-parties which culminated in the receipt and review of over half

12  a million documents (approximately 3.7 million pages); (iv) successfully obtained class certification;

13  (v) disseminated notice of pendency to hundreds of thousands of potential Class Members; (vi)

14  completed expert discovery, involving the exchange of expert reports from 6 experts and 7 expert

15  depositions; (vii) briefed its opposition to Defendants' motion for summary judgment; (viii) briefed

16  oppositions to three *Daubert* motions; and (ix) drafted numerous motions *in limine*; exchanged trial

17  exhibits, drafted jury instructions and a proposed verdict form, and prepared numerous video

18  deposition designations in preparation for the upcoming trial.  Against this background, when

19  evaluating the merits of the Settlement, Lead Plaintiff recognized that, even if it were to prevail at

20  trial, Defendants likely would appeal any favorable judgment, delaying and possibly jeopardizing

21  any recovery.

22           The Settlement is thus exceptional.  On an absolute basis, it will likely rank within the top

23  100 largest settlements obtained to date in a securities fraud class action,[6] and the recovery is many

24  times greater (on a percentage recovery basis) than the median recoveries generally obtained in

25  ───────────────
    [5]     The term "Settling Parties" as used herein refers collectively to Lead Plaintiff and Defendants.
26  "Defendants" refers to Wells Fargo and individual defendant Timothy Sloan.

27  [6]     As measured by ISS Securities Class Action Services.  *See* Saham Decl., Ex. 2 (The Top 100
    U.S. Class Action Settlements of All Time as of December 31, 2022) (ISS Sec. Class Action Servs.
28  2023).

Lead Plaintiff's Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Class
Action Settlement and Memorandum of Points and Authorities in Support Thereof - 3:18-cv-03948-JD      - 3 -
4864-6705-8249.v5

securities class action cases.  Accordingly, Lead Plaintiff respectfully submits that the Settlement is in the best interests of the Class, represents a significant recovery, and merits preliminary approval.

## II.    OVERVIEW OF THE LITIGATION

### A.    Factual Background

The allegations and claims in this action are familiar to the Court, and Lead Plaintiff only briefly describes them at this preliminary approval stage.  In short, Lead Plaintiff alleged that during the period between November 3, 2016 and August 3, 2017, Defendants made materially false or misleading statements in violation of §10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), Rule 10b-5 promulgated thereunder, which caused the price of Wells Fargo stock to trade at artificially inflated prices.  Specifically, Lead Plaintiff alleged that Defendants concealed that Wells Fargo improperly force placed unneeded Collateral Protection Insurance ("CPI") on hundreds of thousands of its customers and failed to refund unearned guaranteed auto protection ("GAP") premiums to tens of thousands of customers, causing more than 20,000 of its customers to have their cars repossessed.  Lead Plaintiff alleged the Company knew of these issues but never disclosed them to investors or the public.  The facts did not come to light until they were published by the *New York Times* in July 2017.  Lead Plaintiff alleged that persons who purchased Wells Fargo stock during the Class Period suffered economic losses when the price of Wells Fargo stock declined as a result of two alleged corrective disclosures that revealed the CPI and GAP issues to investors.  Defendants deny Lead Plaintiff's allegations.

### B.    Procedural History

On February 14, 2018, a class action complaint was filed in the United States District Court for the Southern District of New York asserting violations of the federal securities laws.  ECF 1.  On June 20, 2018, the New York Court appointed Construction Laborers Pension Trust of Southern California as Lead Plaintiff, and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel, and simultaneously transferred the action to this Court.  ECF 24.

Lead Plaintiff filed the Complaint on August 31, 2018.  ECF 46.  The Complaint asserted claims on behalf of all persons who purchased or otherwise acquired Wells Fargo's common stock during the Class Period.  Defendants thereafter moved to dismiss the Complaint.  ECFs 55, 56, 59,

60, 61.  Lead Plaintiff opposed Defendants' motion (ECF 63), and on January 10, 2020, the Court granted in part and denied in part Defendants' motion.  ECF 74.

Defendants answered the Complaint on February 28, 2020 (ECFs 79, 80), and the Settling Parties began formal fact discovery.  Discovery was hard-fought: the Settling Parties held extensive discussions regarding the method and form of Defendants' document productions, including the search terms, custodians, and methods that Defendants would employ in responding to Lead Plaintiff's discovery requests, and briefed myriad discovery disputes for decision by the Court.  *See, e.g.*, ECFs 114, 115, 116, 119, 120, 121, 122, 139, 141, 143, 145, 147, 148, 180, 195, 200. Ultimately, the Settling Parties' extensive fact discovery included the exchange of more than 88,000 documents (encompassing more than 505,000 pages) from over 40 custodians, 19 fact witness depositions, and the exchange of 152 pages of admissions and sworn interrogatory responses.  Lead Plaintiff also issued subpoenas to approximately 35 third-parties, which produced more than 510,000 additional documents (approximately 3.7 million pages).  Lead Plaintiff produced over 1,300 pages of documents and provided responses to document requests and interrogatories.

On August 15, 2022, after briefing and argument from the Settling Parties, the Court certified a class of all persons and entities that purchased or otherwise acquired shares of the publicly traded common stock of Wells Fargo during the period from November 3, 2016, through August 3, 2017, inclusive, and were damaged thereby.[7]  *See* ECF 211 (the "Class Certification Order").  The Court appointed Lead Plaintiff as Class Representative and appointed Robbins Geller as Lead Counsel.  *Id*. On October 28, 2022, the Court issued its Order Approving Amended Proposal for Dissemination of Notice to the Class (the "Class Notice Order") (ECF 219), which required any persons or entities wishing to exclude themselves from the Class do so by January 26, 2023.  After the Court issued the Class Notice Order, the Court-appointed administrator, Gilardi & Co. LLC ("Gilardi"), began disseminating the postcard notice of the pendency of this Class Action to potential Class Members

---

[7]   Guideline §1(b) states that, "if a [litigation] class has been certified," "[t]he motion for preliminary approval should state . . . any differences between the settlement class and the class certified and an explanation as to why the differences are appropriate in the instant case."  Here, the certified class is identical to that contained in the Settlement, a factor that "weighs in favor of preliminary approval."  *Norton*, 2021 WL 3129568, at *12.

on November 18, 2022 by email and mail (where no email was available).  Murray Decl., ¶6.  Sixty-four (64) valid and timely requests to opt-out of the Litigation were returned.  *Id.*, ¶16.

The Settling Parties also conducted extensive expert discovery on issues, including loss causation, damages, insurance practices, Congressional investigations, corporate disclosure requirements and processes.  The Settling Parties produced expert reports from 6 experts, took 7 expert depositions, and produced numerous expert-related documents.

On January 14, 2022, Defendants moved for summary judgment on all of Lead Plaintiff's claims.  ECF 162.  On January 14, 2022, Defendants also moved to exclude or strike portions of the testimony of all of Lead Plaintiff's experts.  *See* ECFs 158-160.  These motions, if granted, could have proven case dispositive.  Lead Plaintiff opposed each of these motions.  ECFs 167-171.  Recently the Settling Parties engaged in extensive meet-and-confer discussions regarding the scope of admissible evidence at trial, and the Settling Parties began briefing motions *in limine*.  The Settling Parties, among other things, also exchanged trial exhibits and began preparing deposition designations, proposed jury instructions, and verdict forms.

During the course of the Litigation, the Settling Parties engaged a neutral third-party mediator, the Honorable Layn R. Phillips (Ret.).  Judge Phillips held direct settlement discussions on multiple occasions, and convened various teleconferences and meetings regarding a potential resolution of the action and ultimately an agreement was reached to settle the Litigation for $300,000,000.00, subject to approval by the Court.

## III.   THE PROPOSED SETTLEMENT

The Settlement requires Wells Fargo to pay, or cause to be paid, $300,000,000.00 (the "Settlement Amount"), which amount, plus all interest and accretions thereto, comprises the Settlement Fund.  Stipulation, ¶2.1.  The Settlement Amount will be deposited into the Escrow Account on the earlier of ten (10) business days after the Court issues an order preliminarily approving the Settlement or March 22, 2023, *id*.

Notice to the Class and the cost of settlement administration will be funded by the Settlement Fund.  Stipulation, ¶2.8.  Lead Plaintiff proposes Gilardi, a nationally-recognized class action settlement administrator, be retained, subject to the Court's approval.  Gilardi previously was

Lead Plaintiff's Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Class Action Settlement and Memorandum of Points and Authorities in Support Thereof - 3:18-cv-03948-JD
4864-6705-8249.v5

- 6 -

1    approved by the Court to disseminate the notice of pendency.  *See* Class Notice Order.   The

2    proposed notice plan, plan of allocation, and plan for claims processing is discussed below in

3    §IV.C.2 and in the Murray Declaration.

4         The Notice provides that Lead Counsel will move for final approval of the Settlement and: (i)

5    an award of attorneys' fees in the amount of no more than 25% of the Settlement Fund; (ii) payment

6    of expenses or charges resulting from the prosecution of the Litigation not in excess of $2 million;

7    and (iii) any interest on such amounts at the same rate and for the same period as earned by the

8    Settlement Fund.  Further, as explained in the Notice, the Lead Plaintiff intends to request an award

9    not to exceed $15,000 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the

10   Class.

11        Once Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved

12   attorneys' fees and expenses and any award to Class Representative pursuant to 15 U.S.C. §78u-

13   4(a)(4) in connection with its representation of the Class have been paid from the Settlement Fund,

14   the remaining amount (the "Net Settlement Fund"), shall be distributed pursuant to the Court-

15   approved Plan of Allocation to Authorized Claimants. Stipulation, ¶5.5.  These distributions shall be

16   repeated until the balance remaining in the Settlement Fund is *de minimis*.  *Id.*, ¶5.9.  Any *de

17   minimis* balance that still remains in the Net Settlement Fund after such reallocation(s) and

18   payment(s) and that is not feasible or economical to reallocate shall be donated to the Investor

19   Protection Trust, a 501(c)(3) non-profit dedicated to investor education and protection (subject to

20   Court approval).[8]  *Id.*  The Plan of Allocation treats all Class Members equitably based on the timing

21   of their Wells Fargo common stock purchases, acquisitions, and sales.

22

---

23   [8]    Founded in 1993, the Investor Protection Trust serves as an independent source of non-
24   commercial investor education.  *See* www.investorprotection.org/ipt-activities/?fa=about.  Pursuant
     to Guideline §8, the Investor Protection Trust is an appropriate *cy pres* designee here.  *See, e.g.,*
25   *Fleming v. Impax Laby's, Inc.*, 2022 WL 2789496, at *2 (N.D. Cal. July 15, 2022) (approving
     Investor Protection Trust due to sufficient nexus with the Class due to its mission of protecting
26   investors and preventing fraud); *In re Capstone Turbine Corp. Sec. Litig.*, 2020 WL 7889074, at *2
     (C.D. Cal. Aug. 26, 2020) (approving distribution plan and ordering that, "[a]t such time as Lead
27   Counsel, in consultation with the Claims Administrator, determines that no additional distributions
     are cost-effective, then the funds will be donated to Investor Protection Trust"); *Hefler v. Wells
28   Fargo & Co.*, 2018 WL 6619983, at *11 (N.D. Cal. Dec. 18, 2018) ("[T]he Court concludes that the
     Investor Protection Trust's mission of educating investors makes it an appropriate *cy pres*

Lead Plaintiff's Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Class
Action Settlement and Memorandum of Points and Authorities in Support Thereof - 3:18-cv-03948-JD        - 7 -
4864-6705-8249.v5

1   In exchange for the benefits provided under the Stipulation, all Class Members – except those

2   who previously submitted valid and timely exclusion requests pursuant to the Notice of Pendency of

3   Class Action – will release "any and all claims, debts, rights, and causes of action or liabilities of

4   every nature and description, including any claims for damages, interest, attorneys' fees, expert or

5   consulting fees, and any other costs, expenses, or liability whatsoever whether known claims or

6   Unknown Claims, whether arising under federal, state, local, statutory, common, or foreign law, or

7   any other law, rule, or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or

8   unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, that

9   both: (i) concern, arise out of, relate to, or are based upon the purchase or acquisition of Wells Fargo

10  common stock during the Class Period; and (ii) were asserted or could have been asserted in this

11  Action by Lead Plaintiff or any other member of the Class against any of the Released Defendant

12  Parties and that arise out of or relate in any way to any of the allegations, transactions, facts, matters

13  or occurrences, representations or omissions involved, set forth, or referred to in the Complaint."[9]

14  Stipulation, ¶¶1.27, 4.3.

15  **IV.     THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED**

16  As a matter of public policy, settlement is a strongly favored method for resolving disputes,

17  "'particularly where complex class action litigation is concerned.'" *In re Hyundai & Kia Fuel Econ.*

18  *Litig.*, 926 F.3d 539, 556 (9th Cir. 2019).  Settlement of complex cases contributes to the efficient

19  utilization of scarce judicial resources and achieves the speedy resolution of justice.  *See, e.g.*,

20  *McKnight v. Uber Techs., Inc.*, 2017 WL 3427985, at *2 (N.D. Cal. Aug. 7, 2017) ("The Ninth

21  Circuit maintains a 'strong judicial policy' that favors the settlement of class actions.").  With

22  respect to "complex securities actions" like this one, "federal courts [have] long recognized the

---

beneficiary.") , *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).  Neither the
Settling Parties nor their counsel have any relationship with the Investor Protection Trust to disclose.

[9]   When a litigation class has been certified, Guideline §1(b) requires explanation regarding "any
differences between the claims to be released and the claims . . . certified for class treatment."  Here,
the release is tailored to the allegations in the Complaint and claims that could have been brought
based on the factual underpinnings of those allegations.  Courts look approvingly on releases that do
not "'go[] beyond the scope of the present litigation,'" are "based on the facts of the complaint," and
are made "with[] regard to the breadth of Plaintiffs' allegations in the complaint."  *Terry v.*
*Hoovestol, Inc.*, 2018 WL 4283420, at *5 (N.D. Cal. Sept. 7, 2018).

Lead Plaintiff's Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Class
Action Settlement and Memorandum of Points and Authorities in Support Thereof - 3:18-cv-03948-JD        - 8 -
4864-6705-8249.v5

1   public policy in favor of . . . settlement." *Nelson v. Bennett*, 662 F. Supp. 1324, 1334 (E.D. Cal.

2   1987) ("'[T]here is an overriding public interest in settling and quieting litigation.   This is

3   particularly true . . .' in these days of burgeoning federal litigation, [where] the promotion of

4   settlement is, as a practical matter, an absolute necessity.").   Moreover, the Ninth Circuit "has long

5   deferred to the private consensual decision of the parties" in such cases.   *Rodriguez v. W. Publ'g*

6   *Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

7          Approval of class action settlements normally proceeds in two stages: (i) preliminary

8   approval, followed by notice to the class; and (ii) final approval.   *See, e.g.*, *West v. Circle K Stores,*

9   *Inc.*, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).   By this motion, Lead Plaintiff requests

10  that the Court take the first step in the approval process by granting preliminary approval of the

11  Settlement.   At the preliminary approval stage, the court must "determine whether the settlement

12  falls 'within the range of possible approval.'"   *Terry*, 2018 WL 4283420, at *1 (quoting *In re*

13  *Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)).   Courts grant preliminary

14  approval when the proposed settlement: "(1) appears to be the product of serious, informed, non-

15  collusive negotiations; (2) does not grant improper preferential treatment to class representatives or

16  other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious

17  deficiencies."   *Ang v. Bimbo Bakeries USA, Inc.*, 2020 WL 2041934, at *4 (N.D. Cal. Apr. 28,

18  2020).   If the court "finds the proposed settlement fair to its members," it will then "schedule[] a

19  fairness hearing where it will make a final determination of the class settlement."   *In re Haier*

20  *Freezer Consumer Litig.*, 2013 WL 2237890, at *3 (N.D. Cal. May 21, 2013).

21         In addition, pursuant to Rule 23(e)(1), the issue at preliminary approval turns on whether the

22  Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class

23  for purposes of judgment on the proposal."   Fed. R. Civ. P. 23(e)(1)(B).   As to the latter requirement,

24  the Court need not determine whether it could certify a class here because it already has certified the

25  Class.   *See* Class Certification Order.   Rule 23(e)(2) provides the following factors:

26         (2) *Approval of the Proposal*.   If the proposal would bind class members, the court
       may approve it only after a hearing and only on finding that it is fair, reasonable, and
27     adequate after considering whether: (A) the class representatives and class counsel
       have adequately represented the class; (B) the proposal was negotiated at arm's
28     length; (C) the relief provided for the class is adequate, taking into account: (i) the

Lead Plaintiff's Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Class
Action Settlement and Memorandum of Points and Authorities in Support Thereof - 3:18-cv-03948-JD        - 9 -
4864-6705-8249.v5

costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  While these Rule 23(e) factors focus on core concerns of procedure and substance of a settlement, they are not intended to fully displace factors previously adopted by courts to evaluate settlements.  *See, e.g.*, *Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *5 (N.D. Cal. Apr. 19, 2021) ("[T]he Court applies the framework set forth in Rule 23 with guidance from the Ninth Circuit's precedent.").  In this respect, the Ninth Circuit has long considered the following factors when evaluating a class settlement, some of which overlap with Rule 23(e)(2):

[T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (discussing the *Hanlon* factors).

   As discussed below, the proposed Settlement readily satisfies each of the factors identified under Rule 23(e)(2), as well as the applicable Ninth Circuit *Hanlon* factors and Northern District Guidelines.  Therefore, Notice of the proposed Settlement should be sent to the Class in advance of the final Settlement Hearing.

### A.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Class

   Lead Plaintiff and Lead Counsel have adequately represented the Class as required by Rule 23(e)(2)(A).  The Settlement is the result of over four years of diligent prosecution of this action on behalf of the Class.  *See Hefler*, 2018 WL 6619983, at *6 (finding Rule 23(e)(2)(A) satisfied for purposes of finally approving settlement and reiterating "Class Counsel had vigorously prosecuted this action through dispositive motion practice, extensive . . . discovery, and formal mediation"); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019) (same).

   Similarly, the Ninth Circuit tasks trial courts with resolving two questions to determine "legal adequacy: (1) do[es] the named plaintiff[] and [its] counsel have any conflicts of interest with other

1    class members and (2) will the named plaintiff[]and [its] counsel prosecute the action vigorously on

2    behalf of the class?" *Hanlon*, 150 F.3d at 1020. The Court previously found Lead Plaintiff and Lead

3    Counsel adequate to represent the Class, *see* Class Certification Order at 2-3, and no evidence to the

4    contrary has since emerged. Moreover, Lead Plaintiff and Lead Counsel have no interests

5    antagonistic to other Class Members; Lead Plaintiff's claims are typical of the Class's claims; and

6    their interest in obtaining the largest possible recovery for Wells Fargo investors is aligned with that

7    of the Class. *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because

8    Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest

9    in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement

10    Class members."). Finally, the substantial monetary recovery obtained after the four years of

11    litigation preceding the Settlement speaks for itself and is an excellent result for Lead Plaintiff and

12    the Class.

13    **B.    The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of**

14    **the Risks of the Litigation**

15    Rule 23(e)(2)(B) asks whether a proposed settlement is procedurally adequate, *i.e.*, whether

16    "the proposal was negotiated at arm's length." There is an initial presumption that a proposed

17    settlement is fair and reasonable when it is "the product of arms-length negotiations." *In re Portal*

18    *Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007). The Ninth Circuit

19    and the district courts within it "put a good deal of stock in the product of an arms-length, non-

20    collusive, negotiated resolution." *Rodriguez*, 563 F.3d at 965; *accord Linney v. Cellular Alaska*

21    *P'ship*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998)

22    ("The involvement of experienced class action counsel and the fact that the settlement agreement

23    was reached in arm's length negotiations, after relevant discovery had taken place create a

24    presumption that the agreement is fair.").

25    Here, the proposed Settlement was achieved only after multiple mediation sessions with

26    Judge Phillips – an experienced mediator with considerable knowledge, experience, and expertise in

27    the field of federal securities law – as well as various teleconferences and correspondences regarding

28    a potential resolution of the Litigation. Class and Defendants' Counsel prepared and presented

1   submissions to Judge Phillips concerning their respective views on the merits of the Litigation, along

2   with supporting evidence obtained through discovery, and the negotiations were at all times

3   adversarial and performed at arm's length.  The protracted negotiations under the supervision of a

4   neutral experienced mediator are evidence that the $300,000,000.00 Settlement was reached at arm's

5   length.  *See Hefler*, 2018 WL 6619983, at *6 ("[T]he Settlement was the product of arm's length

6   negotiations through two full-day mediation sessions and multiple follow-up calls supervised by

7   former U.S. District Judge Layn Phillips."); *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897

8   (9th Cir. 2017) (noting district court approved settlement reached "after extensive negotiations

9   before a nationally recognized mediator, retired U.S. District Judge Layn R. Phillips").

10         Moreover, Lead Counsel had not only completed exhaustive fact and expert discovery at the

11   time it negotiated the Settlement on behalf of the Class, but the Settlement was reached just prior to

12   the commencement of trial.  "A settlement is presumed to be fair if reached in arms-length

13   negotiations after relevant discovery has taken place."  *Pataky v. Brigantine, Inc.*, 2018 WL

14   3020159, at *3 (S.D. Cal. June 18, 2018).  The contours of the trial (such as which witnesses would

15   be permitted to testify or what types of evidence generally would be permitted) also were known at

16   the time of settlement.  In sum, Lead Counsel, experienced securities litigators, were armed with

17   extensive information generated through four years of litigation at the time the Settling Parties (with

18   Judge Phillips' assistance) negotiated the Settlement.

19         **C.     The Settlement Provides Adequate Relief for the Class**

20         Pursuant to Rule 23(e)(2)(C), the Court also must consider whether "the relief provided for

21   the class is adequate, taking into account" four relevant factors that are addressed below.[10]  While

22   each of these factors supports preliminary approval of the Settlement, as an initial matter, the

23   $300,000,000.00 recovery achieved by the Settlement is undeniably an excellent result for the

24

25

---

26   [10]   In addition to the fourth *Hanlon* factor ("the amount offered in settlement"), which is subsumed
     within the Rule 23(e)(2)(C) analysis, courts also evaluate the requirements of Guideline §1(e) with
27   regard to "'[t]he anticipated class recovery under the settlement, the potential class recovery if
     plaintiffs had fully prevailed on each of their claims, and an explanation of the factors bearing on the
28   amount of the compromise.'"  *See, e.g.*, *Norton*, 2021 WL 3129568, at *13 (alteration in original).

Lead Plaintiff's Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Class
Action Settlement and Memorandum of Points and Authorities in Support Thereof - 3:18-cv-03948-JD
4864-6705-8249.v5                                                                              - 12 -

1   Class.[11] *See Wong*, 2021 WL 1531171, at *9 ("'The relief that the settlement is expected to provide to

2   class members is a central concern,' though it is not enumerated among the factors of Rule 23(e).")

3   (quoting 2018 Advisory Committee Notes to Fed. R. Civ. P. 23).

4          Here, the Settlement recovers approximately 31%-47% of the estimated aggregate damages

5   as calculated by Lead Plaintiff's damages expert.  This is a tremendous result.  *See Hefler*, 2018 WL

6   6619983, at *8 (finding 15% recovery weighed in favor of approving settlement as it was "higher

7   than recoveries achieved in other securities fraud class actions of similar size (over $1 billion in

8   estimated damages), which settled for median recoveries of 2.5 percent between 2008 and 2016, and

9   3 percent in 2017"); *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *11 (N.D. Cal. Oct. 27, 2015)

10  (14% recovery "exceeds the typical recovery" in securities fraud class action settlements); *Cheng*

11  *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019) ("A 10% recovery of

12  estimated damages is a favorable outcome in light of the challenging nature of securities class action

13  cases.").  As discussed more fully below, the benefits conferred on Class Members by the Settlement

14  far outweigh the costs, risks, and delay of further litigation, and the attorneys' fees and expenses to

15  be requested are reasonable.  Accordingly, the relief provided by the Settlement is adequate and

16  supports approval.

17          **D.      The Costs, Risks, and Delay of Trial and Appeal Support Approval of
                      the Settlement**

18
19          The factors presented by Rule 23(e)(2)(C)(i) are satisfied because the $300,000,000 recovery

20  provides a significant and immediate benefit to the Class, especially in light of the costs, risks, and

21  delay posed by continued litigation.[12]  "'[S]ecurities actions are highly complex and . . . securities

22  class litigation is notably difficult and notoriously uncertain.'"  *Hefler*, 2018 WL 6619983, at *13;

23  *see also Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *6 (S.D. Cal. Dec. 6, 2018) (recognizing

---

24  [11]   Guideline §1(g) requires discussion of "whether . . . money originally designated for class
25  recovery will revert to any defendant."  No such reversion is present here.

26  [12]   Rule 23(e)(2)(C)(i) essentially incorporates the first three traditional *Hanlon* factors.  *See, e.g.*,
     *Wong*, 2021 WL 1531171, at *8 (citing *Hanlon*, 150 F.3d at 1026); *Norton*, 2021 WL 3129568, at *5
27  ("The first three [*Hanlon*] factors are addressed together and require the court to assess the plaintiff's
     'likelihood of success on the merits and the range of possible recovery' versus the risks of continued
28  litigation and maintaining class action status through the duration of the trial.").

Lead Plaintiff's Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Class
Action Settlement and Memorandum of Points and Authorities in Support Thereof - 3:18-cv-03948-JD           - 13 -
4864-6705-8249.v5

1    that "[s]ecurities class actions are complex actions to litigate" and often involve "complex and

2    highly risky trial and likely post-trial appeals and motion practice").

3          While Lead Plaintiff at all times remained confident in its ability to ultimately prove its

4    claims at trial, it would be required to prove all elements of its claims to prevail, while Defendants

5    needed to succeed on only one defense to potentially defeat the entire Action.  Here, Defendants

6    advanced several arguments disputing both liability and damages; for example, Defendants raised

7    numerous challenges disputing the falsity of their alleged misstatements and vigorously disputed

8    scienter.  *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007)

9    ("[T]he issue[] of scienter . . . [is] complex and difficult to establish at trial.").  Defendants also

10   challenged Lead Plaintiff's theory of loss causation and damages, arguing that at least one of the

11   alleged corrective stock price movements was caused by factors unrelated to Lead Plaintiff's

12   allegations.  *See Zynga*, 2015 WL 6471171, at *9 ("[I]n 'any securities litigation case, it [is] difficult

13   for [plaintiff] to prove loss causation and damages at trial.'" (Second and third alterations in

14   original)).  Moreover, the sheer complexity of the underlying issues here and the fact that Defendants

15   engaged competing expert witnesses to testify in support of Defendants' major defenses, were

16   substantial obstacles to Lead Plaintiff's potential for success at trial.  *See, e.g.*, *Weeks v. Kellogg Co.*,

17   2013 WL 6531177, at *13 (C.D. Cal. Nov. 23, 2013) ("The fact that this issue, which is at the heart

18   of plaintiffs' case, would have been the subject of competing expert testimony suggests that

19   plaintiffs' ability to prove liability was somewhat unclear; this favors a finding that the settlement is

20   fair.").

21         Barring the Settlement, this case would require the expenditure of substantial additional sums

22   of time and money at trial and beyond, with no guarantee that any additional benefit would be

23   provided to the Class.  Even if Lead Plaintiff succeeded and met its burdens with respect to falsity,

24   materiality, scienter, class-wide reliance under the "fraud on the market" presumption, loss

25   causation, the measure of per-share damages (if any), and control person liability, the case would

26   still be far from over.  Defendants would have likely argued that they had the opportunity to

27   challenge an individual Class Member's membership in the Class, and the amount of damages due to

28   each Class Member.  Such a process would have been lengthy, complex, and extremely costly.

Lead Plaintiff's Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Class
Action Settlement and Memorandum of Points and Authorities in Support Thereof - 3:18-cv-03948-JD
4864-6705-8249.v5                                                                                    - 14 -

1    Moreover, Defendants would almost certainly file an appeal after either or both phases of the case –

2    a process that would further extend the litigation for years and risk reversal of any plaintiff's verdict.

3    Conversely, the Settlement confers a substantial and immediate benefit on the Class, and avoids the

4    risks associated with obtaining a wholly speculative (though potentially larger) sum in the future.

5          In sum, Defendants had "plausible defenses that could have ultimately left class members

6    with a reduced or non-existent recovery," which weighs in favor of approving the Settlement. *In re*

7    *TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 999 (N.D. Cal. 2015). Defendants have

8    denied any wrongdoing, and would have presented a multi-pronged defense to Lead Plaintiff's

9    claims at trial and in subsequent appeals. The Settlement thus balances the risks, costs, and delay

10   inherent in complex cases. Given the risks of continued litigation and the time and expense that

11   would be incurred to prosecute the Litigation through trial and beyond, the $300,000,000.00

12   Settlement is a meaningful recovery that is in the Class's best interests.

13        **E.    The Proposed Method for Distributing Relief Is Effective**

14         The method for distributing relief to eligible claimants and for processing Class Members'

15   claims includes standard, well-established, and effective procedures for processing claims and

16   efficiently distributing the Net Settlement Fund, and is therefore an effective method of distribution

17   to the Class under Rule 23(e)(2)(C)(ii). The notice plan includes email and/or direct mail notice to

18   all those who can be identified with reasonable effort supplemented by publication of the Summary

19   Notice in *The Wall Street Journal* and once over a national newswire service. The Notice and

20   Summary    Notice    also    will    be    posted    on    the    case    website

21   (www.WellsFargo2018SecuritiesLitigation.com) established in connection with the Class Notice.[13]

22         The claims process also includes a standard claim form that requests the information

23   necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of

24   Allocation will govern how Class Members' claims will be calculated and, ultimately, how money

25   will be distributed to Authorized Claimants. The Plan of Allocation was prepared with the

26

27   _____

     [13]   In connection with the dissemination of the Notice of Pendency of this action, this case-specific
28   website was created on or about November 18, 2022, where key documents are posted and Class
     Members can go to obtain additional information about the Litigation. *See* Murray Decl., ¶14.

Lead Plaintiff's Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Class
Action Settlement and Memorandum of Points and Authorities in Support Thereof - 3:18-cv-03948-JD    - 15 -
4864-6705-8249.v5

assistance of Lead Plaintiff's damages expert and is based primarily on the expert's event study and analysis estimating the amount of artificial inflation in the price of Wells Fargo common stock during the Class Period.  Finally, Authorized Claimants will have the opportunity to select the form of payment, whether through Zelle, PayPal or by check.

### F.  Proposed Attorneys' Fees, Litigation Expenses, and Lead Plaintiff's Award

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."[14]  Lead Counsel intend to seek an award of attorneys' fees of no more than 25% of the Settlement Fund and expenses in an amount not to exceed $2 million, plus interest on both amounts.  Lead Counsel will provide more detailed information in their forthcoming application for attorneys' fees and expenses that will be filed with the Court prior to the final settlement approval hearing.

A proposed attorneys' fee of up to 25% of the Settlement Fund is reasonable in light of the work required to reach the Settlement and the "benchmark" often referenced by courts in the Ninth Circuit.  *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("'This circuit has established 25% of the common fund as a benchmark award for attorney fees.'").  The proposed attorney fee award here is based on a lodestar of approximately $27.8 million in time expended over the past four years of litigation.  A fee award of 25% of the Settlement Fund would result in a multiplier of approximately 2.7.  This multiplier is reasonable and within the range of lodestar multipliers courts in this Circuit regularly approve.[15]  If preliminary approval is granted, Lead Counsel will present their total lodestar with their fee application prior to the final settlement approval hearing.

---

[14]   Guideline §6 requires discussion of "information about the fees" counsel intends to request, "their lodestar calculation," "the relationship between the amount of the award, the amount of the common fund . . . and the lodestar," and "whether and in what amounts they seek payment of costs and expenses."

[15]   *See, e.g.*, *Hefler*, 2018 WL 6619983, at *14 (awarding fee representing a 3.22 multiplier); *In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *7-*9 (N.D. Cal. Dec. 6, 2017) (awarding fee representing a 3.66 multiplier), *aff'd*, 768 Fed. App'x 651 (9th Cir. 2019); *see generally Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-52 & 1051 n.6 (9th Cir. 2002) (affirming 3.65 multiplier on appeal and finding that multipliers ranged as high as 19.6, with the most common range from 1.0 to 4.0).

Lead Counsel also intend to seek payment of their litigation expenses in an amount not to exceed $2 million.  Lead Counsel will provide appropriate detail in support of any request for an award of litigation expenses with their fee and expense application prior to final approval.  Lead Counsel will request that any award of fees and expenses be paid at the time the Court makes its award.  Stipulation, ¶6.2.

Finally, Lead Counsel also intend to seek an award of up to $15,000 for Lead Plaintiff, pursuant to 15 U.S.C. §78u-4(a)(4), in connection with its representation of the Class.  *Impax*, 2022 WL 2789496, at *10 (approving awards to Lead Plaintiff and Class Representative for time spent working with counsel "reviewing documents, providing input into the case's prosecution, and engaging in meetings, phone conferences, and correspondence with Lead Counsel"); *McPhail v. First Command Fin. Plan., Inc.*, 2009 WL 839841, at *8 (S.D. Cal. Mar. 30, 2009) (noting "requested reimbursement is consistent with payments in similar securities cases").  Lead Counsel believe this amount is fully supported by the work undertaken throughout the Litigation, which will be set forth in greater detail in connection with Lead Plaintiff's fee and expense motion.

Approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  Stipulation, ¶6.3.

### G.   There Are No Other Agreements

There are no agreements requiring identification under Rule 23(e)(3).

### H.   The Proposed Plan of Allocation Treats Class Members Equitably and Does Not Confer Preferential Treatment

Rule 23(e)(2)(D) asks whether the proposal (here, the Plan of Allocation) treats class members equitably relative to each other.[16]  Drafted with the assistance of Lead Plaintiff's damages expert, the Plan of Allocation is fair, reasonable, and adequate; it does not "'improperly grant'" Lead Plaintiff or any other Class Member "'preferential treatment.'"  *Zynga*, 2015 WL 6471171, at *10; *see also Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014)

---

[16]   Guideline §1(e) states that the "motion for preliminary approval" should discuss the "proposed allocation plan for the settlement fund."

1    ("A settlement in a securities class action case can be reasonable if it 'fairly treats class members by

2    awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass

3    distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members'

4    individual claims and the timing of purchases of the securities at issue.'").  Specifically, the Plan of

5    Allocation provides formulas for calculating the recognized claim of each Class Member, based on

6    each such Person's purchases or acquisitions of Wells Fargo common stock on the open market

7    during the Class Period and if or when they sold.  "'A plan of allocation that reimburses class

8    members based on the extent of their injuries is generally reasonable.'"  *NuVasive*, 2018 WL

9    6421623, at *4.

10          Each Authorized Claimant, including Lead Plaintiff, will receive a *pro rata* distribution

11   pursuant to the Plan of Allocation.  No special formula for distribution will apply to Lead Plaintiff.

12   *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at *18 (D. Or. Mar. 19, 2019) ("The

13   Proposed Settlement does not provide preferential treatment to Plaintiffs or segments of the

14   class. . . . [T]he proposed Plan of Allocation compensates all Class Members and [Plaintiffs] equally

15   in that they will receive a *pro rata* distribution based of [sic] the Settlement Fund based on their net

16   losses.").

17   **I.     The Remaining Ninth Circuit Factors Support Preliminary Approval
            of the Settlement**

18

19          Each of the relevant *Hanlon* factors that are not co-extensive with the Rule 23(e)(2) analysis

20   above (*i.e.*, the third, fifth, and sixth *Hanlon* factors) also support preliminary approval.[17]

21

22

23

---

24   [17]   "Because there is no governmental entity involved in this litigation," the seventh *Hanlon* factor
     ("presence of a governmental participant") is inapplicable.  *Mendoza v. Hyundai Motor Co.*, 2017

25   WL 342059, at *7 (N.D. Cal. Jan. 23, 2017).  Regarding the eighth *Hanlon* factor ("the reaction of
     the class members to the proposed settlement"), the Class's reaction is not yet available for

26   consideration because notice of the Settlement has not yet been provided to the Class.  *See, e.g.*,
     *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (noting "'a full fairness analysis is

27   unnecessary at this stage'" because some factors bearing on the propriety of settlement cannot be
     assessed prior to a final approval hearing).

28

Lead Plaintiff's Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Class
Action Settlement and Memorandum of Points and Authorities in Support Thereof - 3:18-cv-03948-JD    - 18 -
4864-6705-8249.v5

1        **1.      The Extent of Discovery Completed and the Stage of the
                 Proceedings at Which the Settlement Was Achieved Strongly
2                Support Preliminary Approval**

3              The fifth *Hanlon* factor (the extent of discovery completed and the stage of the proceedings

4      at which the settlement was achieved) unquestionably supports preliminary approval of the

5      Settlement.  As the Settlement was reached just before trial was due to start and discovery had long

6      since been completed, the Settling Parties had a thorough understanding of the arguments, evidence,

7      and witnesses that would be presented at trial.  Accordingly, there can be no question that Lead

8      Plaintiff was able to knowledgably evaluate the merits of the Settlement by the time it was reached.

9      As discussed more fully above, Lead Plaintiff's decision to enter into the Settlement was based on its

10     understanding of the strengths and potential weaknesses of its claims and Defendants' defenses.  *See*

11     *In re Charles Schwab Corp. Sec. Litig.*, 2011 WL 1481424, at *5 (N.D. Cal. Apr. 19, 2011) ("[T]he

12     class settlements were reached on the eve of trial when class counsel . . . were thus well aware of the

13     issues and attendant risks involved in going to trial as well as the adequacy of the amount of the class

14     settlement.").

15             **2.      Risks of Maintaining Class Action Status Through Trial**

16             Given the imminence of trial at the time the Settlement was reached, Lead Counsel believes

17     the risk of maintaining class action status through to the end of trial (the third *Hanlon* factor) was

18     minimal.  Nevertheless, because Rule 23(c)(1) provides that a class certification order may be altered

19     or amended at any time prior to a decision on the merits, Defendants still could have moved to

20     decertify the Class or shorten the Class Period up until the time the jury reached a verdict.  *See*

21     *Rodriguez*, 563 F.3d at 966.

22             **3.      Experience and Views of Counsel**

23             The opinion of experienced counsel (the sixth *Hanlon* factor) as to the merit of class

24     settlement after arm's length negotiation is entitled to considerable weight.  *See Hefler*, 2018 WL

25     6619983, at *9 ("That counsel advocate in favor of this Settlement weighs in favor of its approval.").

26     Lead Counsel has significant experience in securities and other complex class action litigation and

27     have negotiated numerous other substantial class action settlements throughout the country.  *See*

28     rgrdlaw.com.   Here, "[t]here is nothing to counter the presumption that . . . Counsel's

Lead Plaintiff's Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Class
Action Settlement and Memorandum of Points and Authorities in Support Thereof - 3:18-cv-03948-JD        - 19 -
4864-6705-8249.v5

recommendation is reasonable." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

Since being appointed by this Court, Lead Counsel largely defeated Defendants' motion to dismiss, obtained class certification, and aggressively pursued discovery critical to the claims asserted.  As a result of this experience and with the assistance of sophisticated experts when appropriate, Lead Counsel had gained a firm understanding of the strengths and weaknesses of the claims by the time the Settlement was reached, with trial only 2 months away.

In sum, each factor identified under Rule 23(e)(2) and by the Ninth Circuit is satisfied.  The Settlement is fair, adequate, and reasonable, and meets each of the applicable factors such that notice of the Settlement should be sent to the Class.

## V.   THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA, AS WELL AS DUE PROCESS REQUIREMENTS

Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances."  The notice must describe "'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Lane*, 696 F.3d at 826 (quoting *Rodriguez*, 563 F.3d at 962).  The PSLRA further requires that "every settlement notice must include a statement explaining a plaintiff's recovery."  *In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 636 (S.D. Cal. 2008); *see also In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007).

Here, Lead Plaintiff proposes to give interested parties notice in two ways.  First, notice will be sent by email, where available, and by postcard where no email is available, or where the email has bounced back.  The email will include a direct link, and the mailed Postcard (Stipulation, Ex. A-4) will include a QR Code, both of which will take the user directly to the case-specific website (www.WellsFargo2018SecuritiesLitigation.com) which contains the long form Notice (Stipulation, Exhibit A-1).  Second, Gilardi will publish the Summary Notice (Stipulation, Exhibit A-3) in *The Wall Street Journal* and transmit it over a national newswire service.  *See* Murray Decl., ¶18.  The proposed methods for providing notice satisfy the requirements of Rule 23, the PSLRA, and due process.  *See, e.g.*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (requiring notice be sent

1   to all class members "whose names and addresses may be ascertained through reasonable effort");

2   *MGM*, 708 F. App'x at 896; *Vataj v. Johnson*, 2021 WL 5161927, at *5 (N.D. Cal. Nov. 5, 2021)

3   (finding notice by mail and published in a newswire with national distribution "provided the best

4   practicable notice to the class members").

5        The form and substance of the notice program are sufficient.  The proposed Notice describes

6   the terms of the Stipulation and the Class's recovery in absolute dollars and, as required by the

7   PSLRA, on an estimated per share basis; the considerations that caused Lead Plaintiff and Lead

8   Counsel to conclude that the Settlement is fair, adequate, and reasonable; the maximum attorneys'

9   fees and expenses and Class Representative award that may be sought; the procedure and deadline

10  for objecting to the Settlement;[18] the procedure and deadline for participating in the Settlement and

11  instructions on how to complete and submit a Proof of Claim to the Claims Administrator (both on

12  paper and electronically); the proposed Plan of Allocation for the settlement proceeds; and the date,

13  time, and place of the Settlement Hearing.  *See Ching v. Siemens Indus., Inc.*, 2013 WL 6200190, at

14  *6 (N.D. Cal. Nov. 27, 2013) ("The Court finds that the Class Notice adequately describes the nature

15  of the action, summarizes the terms of the settlement, identifies the class and provides instruction on

16  how to . . . object, and sets forth the proposed fees and expenses to be paid to Lead Plaintiff's

17  counsel and the settlement administrator in clear, understandable language.").  The Notice also

18  provides contact information for Lead Counsel and Gilardi, the proposed Claims Administrator, as

19  well as information regarding the website created for the case.

20  ───────────────

21  [18]   Class Members were provided with the opportunity to opt out of the Class in response to the Notice of Pendency.  *See* Class Notice Order (requiring that all exclusion requests be received by

22  January 26, 2023).  As such, a second opportunity to request exclusion is not provided here.  *See, e.g.*, *Moorer v. StemGenex Med. Grp., Inc.*, 2021 WL 4993054, at *6 (S.D. Cal. Oct. 26, 2021)

23  ("Ninth Circuit authority supports that no such [second exclusion] option should be permitted . . . [when] the Class Members were previously offered the opportunity in the original class notices

24  to either remain in the case or seek exclusion").  As the Ninth Circuit has explained: "'[There is] no authority of any kind suggesting that due process requires that members of a Rule 23(b)(3) class be

25  given a second chance to opt out.  We think it does not. . . .  [T]o hold that due process requires a second opportunity to opt out after the terms of the settlement have been disclosed to the class would

26  impede the settlement process so favored in the law.'"

27  *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018) (first alteration in original) (quoting *Officers for Justice v. Civil Serv. Comm'n, of City & Cnty. of S.F.*, 688 F.2d 615, 635 (9th Cir.

28  1982)).

## VI.  THE PROPOSED CLAIMS ADMINISTRATOR

Pursuant to Guideline §2, Lead Counsel proposes that the Court appoint Gilardi as the Claims Administrator for the Settlement in order to provide all notices approved by the Court to Class Members, to process Proofs of Claim, and to administer the Settlement.  Gilardi was approved by the Court as the administrator for the previously issued Class Notice, *see* Class Notice Order, and "has implemented successful notice and claims administration programs in more than a thousand securities class actions during our more than three decades as an administrator." *See* Declaration of Peter Crudo Regarding Notice Plan (ECF 213-1), ¶4.

At this time, only a rough estimate of the total Notice and Administration Expenses can be provided as the costs are highly dependent on how many notices are ultimately emailed or mailed, and how many claims are ultimately received and processed.  Gilardi will email or mail (where no email is available) the Postcard Notice to all individuals and entities who received the Notice of Pendency.  It estimates Notice and Administration Expenses for the Litigation and Settlement up through the initial distribution of approximately $6.5 million.  Murray Decl., ¶25.  These costs and expenses, which are necessary in order to fully and properly administer all notice and claims administration, represent approximately 2% of the total value of the Settlement.  All Notice and Administration Expenses will be paid from the Settlement Fund.

## VII.  CONCLUSION

The proposed $300,000,000.00 Settlement is an outstanding result for the Class.  The Class should have its chance to evaluate it.  For the reasons set forth above, Lead Plaintiff respectfully requests that the Court preliminarily approve the proposed Settlement, and enter the Preliminary Approval Order.

1   DATED:  February 7, 2023

2                                                    Respectfully submitted,

                                                     ROBBINS GELLER RUDMAN
3                                                        & DOWD LLP
                                                     SPENCER A. BURKHOLZ
                                                     JASON A. FORGE
4                                                    SCOTT H. SAHAM
                                                     LUCAS F. OLTS
5                                                    ASHLEY M. KELLY
                                                     KEVIN S. SCIARANI
6                                                    ERIKA L. OLIVER

7

8                                                             s/ SCOTT H. SAHAM
                                                             SCOTT H. SAHAM
9
                                                     655 West Broadway, Suite 1900
10                                                   San Diego, CA  92101
                                                     Telephone:  619/231-1058
11                                                   619/231-7423 (fax)

12                                                   ROBBINS GELLER RUDMAN
                                                        & DOWD LLP
13                                                   JASON C. DAVIS
                                                     Post Montgomery Center
14                                                   One Montgomery Street, Suite 1800
                                                     San Francisco, CA  94104
15                                                   Telephone:  415/288-4545
                                                     415/288-4534 (fax)
16
                                                     Attorneys for Lead Plaintiff
17

18

19

20

21

22

23

24

25

26

27

28

Lead Plaintiff's Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Class
Action Settlement and Memorandum of Points and Authorities in Support Thereof - 3:18-cv-03948-JD    - 23 -
4864-6705-8249.v5

# APPENDIX A

## (Compliance with *Procedural Guidance* of Northern District of California)

**A.    Guidance 1: Information about the Settlement**

> **1.    Guidance 1(a):** *Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate.*

As explained in §II.B of the attached supporting memorandum ("Preliminary Approval Memorandum"), the Court certified a class of purchasers of Wells Fargo common stock during the period of November 3, 2016 through August 3, 2017, inclusive, and who were damaged thereby. ECF 211.  The certified Class is identical to that contained in the Settlement.  *See* Preliminary Approval Memorandum, at 5 n.6.

> **2.    Guidance 1(b):** *Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate.*

The claims being released closely track the claims alleged.  The Amended Complaint alleges federal securities law claims based on certain alleged misrepresentations and omissions by Defendants in connection with the purchase or acquisition of Wells Fargo common stock during the Class Period.  The definition of "Released Claims" is properly limited to claims that "both: (i) concern, arise out of, relate to, or are based upon the purchase or acquisition of Wells Fargo common stock during the Class Period; and (ii) were asserted or could have been asserted in this Action by Lead Plaintiff or any other member of the Class against any of the Released Defendant Parties and that arise out of or relate in any way to any of the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint." Stipulation, ¶1.27.  Accordingly, the release is carefully tailored to the claims alleged.

> **3.    Guidance 1(c):** *The class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims.*

The Class will receive $300 million in cash, less approved fees and expenses, through the Settlement.  As set forth in the Preliminary Approval Memorandum (§§I. and IV.C), the Settlement

represents approximately 31%-47% of estimated aggregate damages.  There are many factors that contributed to Lead Plaintiff's acceptance of a discount to that damages value, which are more fully explained in §IV.D of the Preliminary Approval Memorandum.

    **4.**       **Guidance 1(d):** *Any other cases that will be affected by the settlement, an explanation of what claims will be released in those cases if the settlement is approved, the class definitions in those cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the settlement negotiations, a brief history of plaintiffs' counsel's discussions with counsel for plaintiffs in those other cases before and during the settlement negotiations, an explanation of the level of coordination between the two groups of plaintiffs' counsel, and an explanation of the significance of those factors on settlement approval.  If there are no such cases, counsel should so state.*

Counsel believes there are no other cases that will be affected by the Settlement.

    **5.**       **Guidance 1(e):** *The proposed allocation plan for the settlement fund.*

The proposed allocation plan is set forth in detail in the Notice of Proposed Settlement of Class Action ("Notice") (Stipulation, Ex. A-1 at 8-12).

    **6.**       **Guidance 1(f):** *If there is a claim form, an estimate of the expected claim rate in light of the experience of the selected claims administrator and/or counsel based on comparable settlements, the identity of the examples used for the estimate, and the reason for the selection of those examples.*

This is a non-reversionary settlement in which the entire Settlement Fund will be paid out. Stipulation, ¶5.9.  Once the Settlement becomes final, nothing is returned to Defendants.  With respect to the number of class members, as well as their identities, these are unknown in securities cases.  *See Vataj v. Johnson*, 2021 WL 1550478, at *11 (N.D Cal Apr. 20, 2021) ("The Court understands that the majority of class members are likely beneficial purchasers whose securities were purchased by brokerage firms, banks, institutions, and other third-party nominees in the name of the nominee, on behalf of the beneficial purchaser.").  Because the number and identity of class members is unknown, both the number and percentage of class members expected to file claims is unknown.  Indeed, the number of claims varies widely from case to case as does the size of each claim.  In a securities class action settlement, class member participation is determined by the number of damaged shares (shares affected by the inflation caused by the alleged misrepresentations and omissions) represented by the claims submitted.  This more accurately reflects how much of the

Class is seeking to participate in the Settlement.  Consistent with its experience in securities class actions, and based on the effectiveness of the proposed Notice Plan, Lead Counsel anticipates that the vast majority of damaged shares will be represented by the claims submitted in this Action.

> **7.** **Guidance 1(g):** *In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is appropriate.*

The Settlement is non-reversionary; there will be no reversions.  Stipulation, ¶5.9.

**B.** **Guidance 2: Settlement Administration**

> **a.** **Guidance 2(a):** *Identify the proposed settlement administrator, the settlement administrator selection process, how many settlement administrators submitted proposals, what methods of notice and claims payment were proposed, and the lead class counsel's firms' history of engagements with the settlement administrator over the last two years.*

Lead Plaintiff's request to appoint Gilardi to serve as the Settlement Administrator, including the reasons for Lead Counsel's selection of Gilardi, is addressed in §§III and VI of the Preliminary Approval Memorandum.  Gilardi was approved by the Court as the administrator for the previously issued Class Notice.  Class Notice Order, ¶1.  Lead Counsel states that Gilardi and affiliated entities have been appointed as the notice or claims administrator in 41 matters where Robbins Geller was lead or co-lead counsel in the past two years.  Murray Decl., ¶17.  The proposed methods of notice are addressed in §V of the Preliminary Approval Memorandum.

> **b.** **Guidance 2(b):** *Address the settlement administrator's procedures for securely handling class member data (including technical, administrative, and physical controls; retention; destruction; audits; crisis response; etc.), the settlement administrator's acceptance of responsibility and maintenance of insurance in case of errors, the anticipated administrative costs, the reasonableness of those costs in relation to the value of the settlement, and who will pay the costs.*

Gilardi's Information Security Policy Framework is aligned to ISO/IEC 27002:2013 which is reviewed on an annual basis and communicated to all employees through a comprehensive training program.  Murray Decl., ¶27.  Gilardi maintains a number of corporate governance policies that reflect the manner in which it does business, including an employee Code of Conduct that outlines

1   the professional, responsible, and ethical guidelines that govern employee conduct.  These policies

2   are available on Computershare's website.  *Id.*, ¶28.

3       **C.     Guidance 3: The Proposed Notices to the Class Are Adequate**

4           As set forth in §V of the Preliminary Approval Memorandum, Lead Counsel believes that

5   both the form of notice, which incorporates the suggested language from the *Procedural Guidance*

6   (Stipulation, Ex. A-1 at 18-19), and the plan for disseminating the notice, satisfy Rule 23, the

7   PSLRA, and due process.

8       **D.     Guidance 4 and 5: Opt-Outs and Objections**

9           The proposed Notice complies with Rule 23(e)(5) in that it discusses the rights Class

10  Members have concerning the Settlement.  The proposed Notice includes information on a Class

11  Member's right to: (i) object to the Settlement, or any aspect thereof, and the manner for filing an

12  objection; and (ii) participate in the Settlement and instructions on how to complete and submit a

13  Claim Form to the Settlement Administrator.  *See* Stipulation, Ex. A-1 at 14-16.  With respect to

14  exclusion requests, the Class was afforded the opportunity to request exclusion in response to the

15  Notice of Pendency.  As such, a second opportunity to request exclusion is not provided here.  The

16  Notice also provides contact information for Lead Counsel, as well as the postal address for the

17  Court.  Finally, the Notice incorporates the suggested language regarding objections from the

18  *Procedural Guidance*. *Id.* at 17-18.

19      **E.     Guidance 6: Attorneys' Fees and Expenses**

20          Lead Counsel's intended request for attorneys' fees and expenses is set forth in §IV.F of the

21  Preliminary Approval Memorandum.

22      **F.     Guidance 7: Incentive Award**

23          Lead Plaintiff Construction Laborers Pension Trust for Southern California will not seek an

24  "Incentive Award"; however, it may seek an award in an amount not to exceed $15,000.00 pursuant

25  to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class.  Support for this award

26  will be presented in support of Lead Counsel's application for an award of attorneys' fees and

27  expenses and in support of final approval of the Settlement.

28

Lead Plaintiff's Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Class
Action Settlement and Memorandum of Points and Authorities in Support Thereof - 3:18-cv-03948-JD         - 4 -
4864-6705-8249.v5

### G.      Guidance 8: *Cy Pres* Awardees

The Settling Parties have chosen the Investor Protection Trust as the designated recipient for any *de minimis* balance remaining after all reallocations are completed.  *See* Stipulation, ¶5.9; *Fleming v. Impax Laby's, Inc.*, 2022 WL 2789496, at *2 (N.D. Cal. July 15, 2022) (approving Investor Protection Trust as the *cy pres* recipient in securities class action settlement).

### H.      Guidance 9: Proposed Timeline

Lead Plaintiff proposes the following schedule for notice, Settlement Hearing, and related dates:

| Event | Deadline for Compliance |
|---|---|
| Deadline to commence emailing and mailing the Postcard Notice to potential Class Members and posting of the Notice and Proof of Claim (the "Notice Date") | No later than 20 calendar days following entry of the Preliminary Approval Order (Preliminary Approval Order, ¶7) |
| Publication of the Summary Notice | No later than 7 calendar days following the Notice Date (Preliminary Approval Order, ¶8) |
| Deadline for filing papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶17) |
| Deadline for submitting objections | 21 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶15) |
| Deadline for submission of reply papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses | 7 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶17) |
| Proof of Claim submission deadline | 90 calendar days after the Notice Date (Preliminary Approval Order, ¶11.a) |
| Date for the Settlement Hearing | At least 100 days after entry of the Preliminary Approval Order (Preliminary Approval Order, ¶2) |

### I.      Guidance 10: Class Action Fairness Act

Although the CAFA statute is unclear whether notice is required in a securities class action settlement, Defendants are nevertheless coordinating compliance with 28 U.S.C. §1715 at their own cost.

1

## J.    Guidance 11: Comparable Outcomes

2

3

# HCA 11

4

*Karsten Schuh v. HCA Holdings, Inc., et al.*
No. 3:11-cv-01033 (M.D. Tennessee, Nashville Division)

5

6

| | |
|---|---|
| Total Settlement Amount | $215,000,000.00 |
| Total Interest Income | $853,900.48 |
| Notice and Claim Packets Mailed/Remailed | 98,305 |
| Number of Packets Returned | 2,220 |
| Undeliverable/Unable to Forward | 2.273% |
| Total Claims Submitted | 87,071 |
| | 89.147% |
| Total Valid Claims | 31,528 |
| | 36.210% |
| Opt-Outs Received | 4 |
| | 0.004% |
| Objections Received | 1 |
| | 0.001% |
| Mean Recovery per Claimant | $4,728.91 |
| Median Recovery per Claimant | $49.65 |
| Largest Recovery per Claimant | $4,986,673.51 |
| Smallest Recovery per Claimant | $10.05 |
| Method of Notice | Direct Mail; Published in Investor's Business Daily and PR Newswire; DTC Legal Notice System |
| Number of Checks Not Cashed | 3,506 |
| Value of Checks Not Cashed and Included in Supplemental Distribution | $1,173,909.03 |
| Administrative Costs (including taxes, tax prep., etc.) | $684,847.39 |
| Attorney Costs | $2,016,508.52 |
| Expert Fees | $1,159,395.07 |
| Attorney Fees | $64,500,000.00 |
|    % of Settlement Amount | 30% |
|    Multiplier | 4.32 |
| Initial Distribution Date | 04/17/2017 |
| Residual Distribution Dates | 11/08/2017; 12/21/2021 |
| Cy Pres Distribution | $0.00 |
| Charity | N/A |
| Distribution Completed | 08/08/2022 |
| Total Amount Distributed | $148,541,045.97 |
| Percentage of Distribution Factor | 20.299% |
| Number of Payments | 33,746 |
| Method of Payments | Checks and Wires |
| Reverter to Defendants | $0.00 |

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lead Plaintiff's Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Class
Action Settlement and Memorandum of Points and Authorities in Support Thereof - 3:18-cv-03948-JD
4864-6705-8249.v5

1

## CERTIFICATE OF SERVICE

2          I hereby certify under penalty of perjury that on February 7, 2023, I authorized the electronic

3   filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send

4   notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I

5   hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the

6   non-CM/ECF participants indicated on the attached Manual Notice List.

7                                                s/ SCOTT H. SAHAM
                                           SCOTT H. SAHAM
8
                                           ROBBINS GELLER RUDMAN
9                                             & DOWD LLP
                                           655 West Broadway, Suite 1900
10                                         San Diego, CA  92101-8498
                                           Telephone:  619/231-1058
11                                         619/231-7423 (fax)

12                                         Email:  ScottS@rgrdlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4864-6705-8249.v5

# Mailing Information for a Case 3:18-cv-03948-JD Purple Mountain Trust v. Wells Fargo & Company et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Stephanie Albrecht**
  SAlbrecht@GGTrialLaw.com,DVultaggio@GGTrialLaw.com

- **Nora Bojar**
  nbojar@fklaw.com

- **Peretz Bronstein**
  peretz@bgandg.com

- **Walter F. Brown**
  wbrown@paulweiss.com,mao_fednational@paulweiss.com

- **Spencer A. Burkholz**
  SpenceB@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Nanci L. Clarence**
  nclarence@clarencedyer.com,achin@clarencedyer.com

- **Josh Alan Cohen**
  jcohen@clarencedyer.com,achin@clarencedyer.com

- **Brendan P. Cullen**
  cullenb@sullcrom.com,viapianoc@sullcrom.com,s&cmanagingclerk@sullcrom.com,brendan-cullen-5099@ecf.pacerpro.com,raybuckr@sullcrom.com

- **Jason Cassidy Davis**
  jdavis@rgrdlaw.com,e_file_sd@rgrdlaw.com,mkuwashima@rgrdlaw.com

- **Miles F. Ehrlich**
  miles@ramsey-ehrlich.com,sonia@ramsey-ehrlich.com,katharine@ramsey-ehrlich.com,gabrielle@ramsey-ehrlich.com,amy@ramsey-ehrlich.com,lauren@ramsey-ehrlich.com

- **Jordan Eth**
  jeth@mofo.com,dara--pilgrim-4904@ecf.pacerpro.com,jordan-eth-3756@ecf.pacerpro.com,dpilgrim@mofo.com

- **Jason A. Forge**
  jforge@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Dennis J. Herman**
  dennish@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Sverker K. Hogberg**
  hogbergs@sullcrom.com

- **Sverker Kristoffer Hogberg**
  hogbergs@sullcrom.com,sverker-hogberg-5798@ecf.pacerpro.com,carrjo@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Alexis Catherine Holmes**
  holmesa@sullcrom.com,carrjo@sullcrom.com,s&cmanagingclerk@sullcrom.com,alexis-holmes-1935@ecf.pacerpro.com

- **Katharine Ann Kates**
  katharine@ramsey-ehrlich.com

- **Ashley Michelle Kelly**
  akelly@rgrdlaw.com,e_file_sd@rgrdlaw.com,AKellyRGRD@ecf.courtdrive.com,mwaligurski@rgrdlaw.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com

- **Erika Limpin Oliver**
  eoliver@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Lucas F. Olts**
  LOlts@rgrdlaw.com,morgank@ecf.courtdrive.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com,LOlts@ecf.courtdrive.com,mkuwashima@rgrdlaw.com

- **Lesley Frank Portnoy**
  lfportnoy@pomlaw.com

- **Ismail Jomo Ramsey**
  izzy@ramsey-ehrlich.com,sonia@ramsey-ehrlich.com,katharine@ramsey-ehrlich.com,amy@ramsey-ehrlich.com,lauren@ramsey-ehrlich.com

- **Daniel B Rapport**
  drapport@fklaw.com,vgarvey@fklaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com

- **Scott H. Saham**
  scotts@rgrdlaw.com,panderson@rgrdlaw.com,panderson@ecf.courtdrive.com,ScottS@ecf.courtdrive.com,e_file_SD@rgrdlaw.com

- **Kevin Shen Sciarani**
  ksciarani@rgrdlaw.com,KSciarani@ecf.courtdrive.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Adam F. Shearer**
  ashearer@clarencedyer.com,achin@clarencedyer.com

- **Christopher Michael Viapiano**
  viapianoc@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Anna Erickson White**
  awhite@mofo.com,anna-erickson-white-9788@ecf.pacerpro.com,andrea-vickery-5658@ecf.pacerpro.com,avickery@mofo.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)