ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ (147029)
JASON A. FORGE (181542)
SCOTT H. SAHAM (188355)
LUCAS F. OLTS (234843)
ASHLEY M. KELLY (281597)
KEVIN S. SCIARANI (301411)
ERIKA L. OLIVER (306614)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
jforge@rgrdlaw.com
scotts@rgrdlaw.com
lolts@rgrdlaw.com
akelly@rgrdlaw.com
ksciarani@rgrdlaw.com
eoliver@rgrdlaw.com
      – and –
JASON C. DAVIS (253370)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
jdavis@rgrdlaw.com

Attorneys for Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PURPLE MOUNTAIN TRUST, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> WELLS FARGO & COMPANY, et al., <br><br> Defendants. | Case No. 3:18-cv-03948-JD <br><br> CLASS ACTION <br><br> LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF <br><br> DATE:  August 17, 2023 <br> TIME:   10:00 a.m. <br> CTRM: 11, 19th Floor <br> JUDGE: Honorable James Donato |

4893-4148-0037.v1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     PROCEDURAL AND FACTUAL BACKGROUND.........................................................3

III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
        SETTLEMENTS................................................................................................5

        A.      The Settlement Warrants Final Approval ..................................................5

        B.      The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)...................6

                1.      Rule 23(e)(2)(A): Lead Plaintiff and Its Counsel Have Adequately
                        Represented the Class ...............................................................6

                2.      Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at
                        Arm's Length After Mediation with an Experienced Mediator.................7

                3.      Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate
                        Considering the Costs, Risk, and Delay of Trial and Appeal ....................7

                        a.      The Costs and Risks of Trial and Appeal Support Approval
                                of the Settlement ..........................................................8

                        b.      The Proposed Settlement Eliminates the Additional Cost
                                and Delay of Continued Litigation ......................................8

                4.      Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief
                        Is Effective ........................................................................9

                5.      Rule 23(e)(2)(C)(iii): Attorneys' Fees ..........................................9

                6.      Rule 23(e)(2)(C)(iv): Other Agreements ........................................10

                7.      Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Class
                        Members Equitably..................................................................10

        C.      The Remaining Ninth Circuit Factors Are Satisfied...........................................11

                1.      Discovery Completed and Stage of the Proceedings ...........................11

                2.      Counsel Views This Good-Faith Settlement as Fair, Reasonable,
                        and Adequate ......................................................................11

                3.      The Positive Reaction of Class Members to the Settlement....................12

                4.      The Settlement Amount ............................................................12

                5.      The Risk of Maintaining Class Certification ...................................12

IV.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION..........................13

1

2                                                                          **Page**

3

V.      NOTICE TO THE CLASS SATISFIES DUE PROCESS ...............................................13

VI.     CONCLUSION.............................................................................................................14

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

Page

3

**CASES**

4

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ..................................................................5

5

6

*Cheng Jiangchen v. Rentech, Inc.*,
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019).........................................6, 7

7

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ..................................................................6, 8

8

9

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ................................................................13

10

11

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)...................................................................................8

12

*Fleming v. Impax Laby's, Inc.*,
  2022 WL 2789496 (N.D. Cal. July 15, 2022).......................................9, 14

13

14

*Foster v. Adams & Assocs., Inc.*,
  2022 WL 425559 (N.D. Cal. Feb. 11, 2022) ......................................11, 12

15

16

*Hayes v. MagnaChip Semiconductor Corp.*,
  2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) .........................................14

17

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
  *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ...........8

18

19

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2019 WL 2554232 (N.D. Cal. May 3, 2019).............................................6

20

21

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ....................................................................7

22

23

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................10

24

*In re Veritas Software Corp. Sec. Litig.*,
  496 F.3d 962 (9th Cir. 2007) ..................................................................13

25

26

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  895 F.3d 597 (9th Cir. 2018) ....................................................................5

27

28

**Page**

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2020 WL 4212811 (N.D. Cal. July 22, 2020),
    *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022) ...................................................9

*Kastler v. Oh My Green, Inc.*,
    2022 WL 1157491 (N.D. Cal. Apr. 19, 2022) .........................................................5

*Longo v. OSI Sys., Inc.*,
    2022 U.S. Dist. LEXIS 158606 (C.D. Cal. Aug. 31, 2022).................................7, 10

*Mauss v. NuVasive, Inc.*,
    2018 WL 6421623 (S.D. Cal. Dec. 6, 2018)............................................................13

*Mendoza v. Hyundai Motor Co.*,
    2017 WL 342059 (N.D. Cal. Jan. 23, 2017) .............................................................6

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) .................................................................................5, 7

*Redwen v. Sino Clean Energy, Inc.*,
    2013 WL 12303367 (C.D. Cal. July 9, 2013) ...........................................................8

*Rodriguez v. Nike Retail Servs., Inc.*,
    2022 WL 254349 (N.D. Cal. Jan. 27, 2022) ...........................................................11

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...........................................................................7, 11, 13

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ....................................................................................9

*Vataj v. Johnson*,
    2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ........................................................13

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78j(b)....................................................................................................................8

**Page**

Federal Rules of Civil Procedure
Rule 23 ..................................................................................................................14
Rule 23(c)(1) .........................................................................................................12
Rule 23(c)(2)(B) ....................................................................................................13
Rule 23(e) ................................................................................................................5
Rule 23(e)(1)(B) ....................................................................................................13
Rule 23(e)(2) ...................................................................................................5, 6, 8
Rule 23(e)(2)(A) ......................................................................................................6
Rule 23(e)(2)(B) ......................................................................................................7
Rule 23(e)(2)(C) ......................................................................................................7
Rule 23(e)(2)(C)(i) ..................................................................................................7
Rule 23(e)(2)(C)(ii) .................................................................................................9
Rule 23(e)(2)(C)(iii) ................................................................................................9
Rule 23(e)(2)(C)(iv) ..............................................................................................10
Rule 23(e)(2)(D) ....................................................................................................10
Rule 23(e)(3) ............................................................................................................5

**SECONDARY AUTHORITIES**

Janeen McIntosh, Svetlana Starykh, and Edward Flores,
    *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*
    (NERA Jan. 24, 2023)...........................................................................................12

Laarni T. Bulan & Laura E. Simmons,
    *Securities Class Action Settlements: 2022 Review and Analysis*
    (Cornerstone Research 2023).................................................................................12

LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:18-cv-03948-JD
4893-4148-0037.v1

- v -

**NOTICE OF MOTION AND MOTION**

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE THAT at 10:00 a.m. on August 17, 2023, in the courtroom of the Honorable James Donato, at the United States District Court, Northern District of California, Phillip Burton Federal Building & U.S. Courthouse, Courtroom 11, 19th floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Lead Plaintiff Construction Laborers Pension Trust for Southern California ("Lead Plaintiff" or the "Fund") will and hereby does respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of a judgment granting final approval of the proposed Settlement and entry of an order granting approval of the proposed Plan of Allocation.

This Motion is based on the following Memorandum of Points and Authorities, as well as the accompanying Declaration of Scott H. Saham in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses, and Award to Class Representative Pursuant to 15 U.S.C. §78u-4(a)(4) ("Saham Declaration" or "Saham Decl."), with attached exhibits, all prior pleadings and papers in this Action, the arguments of counsel, and such additional information or argument as may be required by the Court.

A proposed Final Judgment and Order of Dismissal with Prejudice and proposed Order granting approval of the proposed Plan of Allocation will be submitted with Lead Plaintiff's reply submission on August 10, 2023, after the July 27, 2023 deadline for Class Members to object to the Settlement or Plan of Allocation has passed.

LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - 3:18-cv-03948-JD
4893-4148-0037.v1

- 1 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court should grant final approval of the Settlement.

2.      Whether the Court should approve the Plan of Allocation.

LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - 3:18-cv-03948-JD
4893-4148-0037.v1

- 1 -

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3    The $300,000,000 all-cash Settlement, achieved approximately ten weeks before trial, after

4    nearly five years of hard-fought litigation, is a tremendous result for the Class.[1]   The Settlement

5    which represents approximately 31%-47% of the estimate of damages recoverable at trial in this

6    case, is many multiples above the median percentage recovery for 2022 securities class action

7    settlements.

8    Moreover, the Settlement was reached only after the proceedings had reached a stage where a

9    careful evaluation of the Action and the propriety of Settlement could be (and was) made.   For

10   example, Lead Plaintiff had, among other things: (i) filed a detailed Consolidated Complaint for

11   Violation of the Federal Securities Laws (ECF 46) (the "Complaint"); (ii) litigated Defendants'

12   motion to dismiss; (iii) completed extensive fact discovery involving the exchange and review of

13   more than 505,000 pages of documents between the Settling Parties, 19 fact depositions, and the

14   production and review of approximately 3.7 million pages of documents in response to over 35

15   subpoenas issued to third-parties; (iv) successfully obtained class certification; (v) disseminated

16   notice of pendency to hundreds of thousands of potential Class Members; (vi) completed expert

17   discovery, involving the exchange of expert reports from six experts and seven expert depositions;

18   (vii) briefed its opposition to Defendants' motion for summary judgment; (viii) briefed oppositions

19   to three *Daubert* motions; and (ix) drafted numerous motions *in limine*; exchanged trial exhibits,

20   drafted jury instructions and a proposed verdict form, and prepared numerous video deposition

21   designations in preparation for the upcoming trial.   There is no question that as a result of these

22   extensive litigation and settlement efforts, Lead Plaintiff and Lead Counsel had a thorough

23   understanding of the relative strengths and weaknesses of the Class's claims and the propriety of

24   settlement.

25   ───────────────

26   [1]    The terms of the Settlement are set forth in the Stipulation of Settlement dated February 6, 2023 (ECF 220-2) (the "Stipulation").   All capitalized terms not defined herein shall have the same

27   meaning set forth in the Stipulation and in Lead Plaintiff's Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Class Action Settlement and Memorandum of Points and

28   Authorities in Support Thereof (ECF 220).

1     While Lead Counsel believes the Class's claims have significant merit, from the outset and

2 throughout the Action Defendants adamantly denied liability and asserted they possessed absolute

3 defenses to the Class's claims.  Indeed, through its Order Re Motion to Dismiss (ECF 74) ("MTD

4 Order"), the Court dismissed all but two of the alleged false statements, highlighting the difficulty in

5 pursuing Lead Plaintiff's claims.  During extensive settlement negotiations, Lead Counsel made it

6 clear that while it was prepared to fairly assess the strengths and weaknesses of this case, it would

7 continue to litigate rather than settle for less than fair value.  Lead Plaintiff and its counsel persisted

8 for 16 months following the initial mediation until Judge Phillips issued a "mediator's proposal" on

9 December 22, 2022, which was accepted by the parties.  The result is an exceptional settlement

10 which Lead Plaintiff and Lead Counsel firmly believe is in the Class's best interest.  *See* Declaration

11 of Robert O. Glaza ("Fund Decl."), attached as Ex. A to the Saham Declaration.

12     Moreover, Lead Plaintiff – the type of institutional investor Congress envisioned serving in

13 that role when passing the Private Securities Litigation Reform Act of 1995 ("PSLRA") – fully

14 supports the Settlement.  The Class's reaction to date similarly reflects approval of the Settlement.

15 Notice was provided to potential Class Members pursuant to the Order Preliminarily Approving

16 Settlement and Providing for Notice, ECF 230 (the "Preliminary Approval Order"), commencing

17 May 22, 2023.  *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication,

18 and Requests for Exclusion Received to Date ("Murray Decl."), ¶¶6-7, attached as Ex. B to the

19 Saham Declaration.  While the July 27, 2023 deadline to object to the Settlement and Plan of

20 Allocation has not yet passed, to date no objections have been received.[2]

21     Lead Plaintiff also requests that the Court approve the proposed Plan of Allocation, which

22 was detailed in the Notice of Proposed Settlement of Class Action ("Notice") provided to Class

23 Members.  The Plan of Allocation governs how claims will be calculated and how Settlement

24 proceeds will be distributed among Authorized Claimants.  The Plan of Allocation is based on the

25 analysis of Lead Plaintiff's damages expert and subjects all Class Members to the same formulas for

26 calculating out-of-pocket damages, *i.e.*, the difference between what Class Members paid for their

27 ─────────────────
[2]     Lead Counsel will address any timely objections in its reply brief, which is due on August

28 10, 2023.

1   Wells Fargo common stock during the Class Period and what they would have paid had the alleged

2   misstatements and omissions not been made.

3   In short, the $300 million Settlement and the Plan of Allocation are fair and reasonable.  The

4   Settlement is an exceptional result for the Class.

5   **II.    PROCEDURAL AND FACTUAL BACKGROUND**

6   On February 14, 2018, a class action complaint was filed in the United States District Court

7   for the Southern District of New York asserting violations of the federal securities laws.  ECF 1.  On

8   June 20, 2018, the New York Court appointed Construction Laborers Pension Trust for Southern

9   California as Lead Plaintiff, and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead

10   Counsel, and simultaneously transferred the action to this Court.  ECF 24.

11   Lead Plaintiff filed the Complaint on August 31, 2018.  ECF 46.  It asserts claims on behalf

12   of all persons who purchased or otherwise acquired Wells Fargo common stock during the Class

13   Period.  On November 2, 2018, Defendants moved to dismiss the Complaint.  ECF 55, 56, 59, 60,

14   61.  On January 10, 2020, after full briefing, the Court granted in part and denied in part Defendants'

15   motion.  ECF 74.

16   Defendants answered the Complaint on February 28, 2020 (ECF 79-80), and the Settling

17   Parties began formal fact discovery.  Discovery was hard-fought: the Settling Parties held extensive

18   discussions regarding the method and form of Defendants' document productions, including the

19   search terms, custodians, and methods that Defendants would employ in responding to Lead

20   Plaintiff's discovery requests, and briefed myriad discovery disputes for decision by the Court.  *See,*

21   *e.g.*, ECF 114-116, 119-122, 139, 141, 143, 145, 147-148, 180, 195, 200.  Ultimately, the Settling

22   Parties' extensive fact discovery included the exchange of more than 88,000 documents

23   (encompassing more than 505,000 pages) from over 40 custodians, 19 fact witness depositions, and

24   the exchange of 152 pages of admissions and sworn interrogatory responses.  Lead Plaintiff also

25   issued subpoenas to approximately 35 third-parties, which produced more than 510,000 additional

26   documents (approximately 3.7 million pages).  Lead Plaintiff produced over 1,300 pages of

27   documents and provided responses to document requests and interrogatories.

28

LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - 3:18-cv-03948-JD
4893-4148-0037.v1

- 3 -

On August 15, 2022, after briefing and argument from the Settling Parties, the Court certified a class of all persons and entities that purchased or otherwise acquired the common stock of Wells Fargo during the period from November 3, 2016, through August 3, 2017, inclusive, and were damaged thereby. *See* ECF 211 (the "Class Certification Order").  The Court appointed Lead Plaintiff as Class Representative and Robbins Geller as Class Counsel. *Id.*  On October 28, 2022, the Court issued its Order Approving Amended Proposal for Dissemination of Notice to the Class (the "Class Notice Order") (ECF 219), which required any persons or entities wishing to exclude themselves from the Class do so by January 26, 2023.  After the Court issued the Class Notice Order, the Court-appointed administrator, Gilardi & Co. LLC ("Gilardi"), began disseminating the Notice of Pendency to potential Class Members, by email and mail (where no email was available).  ECF 220-4.

The Settling Parties also conducted extensive expert discovery on issues, including loss causation, damages, insurance practices, Congressional investigations, and corporate disclosure requirements and processes.  The Settling Parties produced expert reports from six experts, took seven expert depositions, and produced numerous expert-related documents.

On January 14, 2022, Defendants moved for summary judgment on all of Lead Plaintiff's claims.  ECF 162.  Defendants also moved to exclude or strike portions of the testimony of all of Lead Plaintiff's experts. *See* ECF 158-160.  Lead Plaintiff opposed each of these motions, which, if granted, could have proven case dispositive.  ECF 167-171.  The Settling Parties also engaged in extensive meet-and-confer discussions regarding the scope of admissible evidence at trial and began briefing motions *in limine*.  The Settling Parties also exchanged trial exhibits and began preparing deposition designations, proposed jury instructions, and verdict forms.

During the course of the Action, the Settling Parties engaged a neutral third-party mediator, the Honorable Layn R. Phillips (Ret.) of Phillips ADR.  Judge Phillips held direct settlement discussions on multiple occasions, and convened various teleconferences and meetings regarding a potential resolution of the Action.  On December 22, 2022, Judge Phillips issued a "mediator's proposal" which the parties accepted.  On February 7, 2023, Lead Plaintiff moved for preliminary

LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - 3:18-cv-03948-JD
4893-4148-0037.v1

- 4 -

1    approval of the Settlement.  ECF 220.  The Court heard oral argument on March 23, 2023, and

2    granted Lead Plaintiff's motion on May 1, 2023.  ECF 230.

3    **III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS**

4

5         **A.    The Settlement Warrants Final Approval**

6         The Ninth Circuit recognizes a "'strong judicial policy that favors settlements, particularly

7    where complex class action litigation is concerned.'"  *Campbell v. Facebook, Inc.*, 951 F.3d 1106,

8    1121 (9th Cir. 2020). [3]  "Deciding whether a settlement is fair is . . . best left to the district judge."

9    *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 611

10   (9th Cir. 2018).  Courts, however, should not convert settlement approval into an inquiry into the

11   merits, as "'the court's intrusion upon what is otherwise a private consensual agreement negotiated

12   between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment

13   that the agreement is not the product of fraud or overreaching by, or collusion between, the

14   negotiating parties.'"  *Kastler v. Oh My Green, Inc.*, 2022 WL 1157491, at *3 (N.D. Cal. Apr. 19,

15   2022) (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625

16   (9th Cir. 1982)).

17        Federal Rule of Civil Procedure 23(e) requires judicial approval for the settlement of claims

18   brought as a class action and provides "the court may approve [a proposed settlement] only after a

19   hearing and only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  To

20   determine whether a settlement is "fair, reasonable, and adequate," the Court must

21        consider[] whether: (A) the class representatives and class counsel have adequately
          represented the class; (B) the proposal was negotiated at arm's length; (C) the relief
22        provided for the class is adequate, taking into account: (i) the costs, risks, and delay
          of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief
23        to the class, including the method of processing class-member claims; (iii) the terms
          of any proposed award of attorney's fees, including timing of payment; (iv) and any
24        agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats
          class members equitably relative to each other.

25   *Id.*

26

27   ─────────────────────
     [3]        Citations are omitted and emphasis is added throughout unless otherwise indicated.
28

In addition to the Rule 23(e)(2) considerations, courts in the Ninth Circuit consider the following factors when examining whether a proposed settlement is fair, reasonable, and adequate:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.[4]

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

The Court's Preliminary Approval Order considered each of the Rule 23(e)(2) and Ninth Circuit factors when assessing the Settlement and found that it was fair, reasonable, and adequate, subject to further consideration at the Settlement Hearing. *See* ECF 230. The Court's conclusion on preliminary approval is equally true now, as nothing has changed between May 1, 2023 and the present. *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) ("Those conclusions [drawn at preliminary approval] stand and counsel equally in favor of final approval now.").

**B.      The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)**

**1.      Rule 23(e)(2)(A): Lead Plaintiff and Its Counsel Have Adequately Represented the Class**

Lead Plaintiff and Lead Counsel have more than adequately represented the Class as required by Rule 23(e)(2)(A). Lead Counsel is highly qualified and experienced in securities litigation, *see* Saham Decl., ¶57, actively pursued the claims of Wells Fargo investors in this Court, and zealously advocated for the Class's best interests throughout the litigation. *See generally* Fund Decl.; *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding this factor satisfied where lead counsel "has significant experience in securities class action lawsuits"). The Settlement is the result of Lead Counsel's diligent prosecution of this Action for five years up through just ten weeks before trial, including fully briefing summary judgment, opposing motions to exclude each of Lead Plaintiff's proposed experts, and substantial preparations for trial. *See, e.g.*, *id.*

---

[4]      "Because there is no governmental entity involved in this litigation, this [seventh] factor is inapplicable." *Mendoza v. Hyundai Motor Co.*, 2017 WL 342059, at *7 (N.D. Cal. Jan. 23, 2017).

1   (finding this factor satisfied where lead counsel vigorously pursued plaintiff's claims through
2   multiple rounds of motions to dismiss and amended complaints).

3          In addition, Lead Plaintiff and its Counsel have no interests antagonistic to those of other
4   Class Members; rather, their claims "arise from the same alleged conduct: the purchase of [Wells
5   Fargo] stock at inflated prices based on Defendants' alleged . . . misstatements." *Id.* Accordingly,
6   Lead Plaintiff shares the common interest in obtaining the largest possible recovery for Lead
7   Plaintiff and the Class. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir.
8   2019) ("To determine legal adequacy, we resolve two questions: '(1) do the named plaintiffs and
9   their counsel have any conflicts of interest with other class members and (2) will the named
10  plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'").  This factor
11  weighs in favor of final approval.

12                 **2.      Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at
                           Arm's Length After Mediation with an Experienced Mediator**
13
14         Rule 23(e)(2)(B) asks whether "the proposal was negotiated at arm's length." Fed. R. Civ. P.
15  23(e)(2)(B).  "[The Ninth Circuit] put[s] a good deal of stock in the product of an arms-length, non-
16  collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).
17  The parties here reached the Settlement only after multiple mediation sessions, following the Court's
18  decision on Defendants' motion to dismiss and undertaking extensive document discovery, and
19  several weeks of additional negotiations overseen by Judge Phillips.  Ultimately, the case was
20  resolved only after all parties accepted Judge Phillips' "mediators' proposal." *See* Saham Decl., ¶¶8,
21  55.  Given the parties' efforts over the last five years, there can be no question that counsel "'had a
22  sound basis for measuring the terms of the settlement.'" *Longo v. OSI Sys., Inc.*, 2022 U.S. Dist.
23  LEXIS 158606, at *11 (C.D. Cal. Aug. 31, 2022).  These facts demonstrate that the Settlement is the
24  result of arm's-length negotiations and "not the product of fraud or overreaching by, or collusion
25  between, the negotiating parties." *Officers for Just.*, 688 F.2d at 625.

26                 **3.      Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate
                           Considering the Costs, Risk, and Delay of Trial and Appeal**

27         Pursuant to Rule 23(e)(2)(C), the Court considers "the costs, risks, and delay of trial and
28  appeal," and the relevant overlapping Ninth Circuit factors address "the strength of the plaintiffs'

1    case" and "the risk, expense, complexity, and likely duration of further litigation."  Fed. R. Civ. P.

2    23(e)(2); *Churchill*, 361 F.3d at 575.  While Lead Plaintiff believes its claims have merit and that the

3    Class would prevail on Defendants' summary judgment motion, it nevertheless recognizes the

4    numerous risks and uncertainties in proceeding to trial.  In fact, securities class actions "'are highly

5    complex and [litigating] securities class litigation is notably difficult and notoriously uncertain.'"

6    *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom.*

7    *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).  As discussed below, the benefits conferred on

8    Class Members by the Settlement far outweigh the costs, risks, and delay of further litigation, and

9    confirm the adequacy and reasonableness of the Settlement.

**a.      The Costs and Risks of Trial and Appeal Support
Approval of the Settlement**

10
11
12   To prove liability under §10(b) of the Exchange Act, a plaintiff must establish all elements of

13   the claim, including that the defendants were responsible for materially false and misleading

14   statements.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).  Lead Plaintiff would

15   be required to prove each of these elements to prevail, whereas Defendants needed only to succeed

16   on one defense to defeat the entire Action.  *See* Saham Decl., ¶83.  Although Lead Plaintiff is

17   confident in the abilities of Lead Counsel to prove its case, the risk of loss was still real.  *See Redwen*

18   *v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced

19   with securities fraud litigation 'routinely recognize that securities class actions present hurdles to

20   proving liability that are difficult for plaintiffs to clear.'").

21   Defendants advanced several plausible arguments disputing both liability and damages.  Lead

22   Counsel anticipates that Defendants would have continued to make these arguments at trial.

**b.      The Proposed Settlement Eliminates the Additional
Cost and Delay of Continued Litigation**

23
24   Although this case was on the eve of trial, much work remained and even if Lead Plaintiff

25   prevailed at trial it would have taken potentially years to resolve any resulting appeals.  *See, e.g.*,

26   *Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-DOC-SHK, ECF 913 (C.D. Cal. Aug. 3, 2022)

27   (granting final approval of securities class action settlement 2.5 years after a February 4, 2019 jury

28   verdict in plaintiff's favor following trial).

LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - 3:18-cv-03948-JD
4893-4148-0037.v1

- 8 -

"By contrast, the Settlement provides . . . timely and certain recovery." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020), *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022).   The Settlement at this juncture results in an immediate, substantial, and tangible recovery, without "the cost, complexity and time of fully litigating the case" – key factors in evaluating the reasonableness of a settlement. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).   The Settlement is a far better option for the Class.

### 4.      Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief Is Effective

Lead Plaintiff and Lead Counsel have also made substantial efforts to notify the Class about the proposed Settlement under Rule 23(e)(2)(C)(ii).   Pursuant to the Preliminary Approval Order, more than 139,800 Postcard Notices were emailed and over 961,800 Postcard Notices were mailed to potential Class Members and nominees; the Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire*; and the website created for this Action contains key documents, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. *See generally* Murray Decl.

The claims process here is identical to those commonly and effectively used in connection with other securities class action settlements.   The standard claim form requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation.   The Plan of Allocation, discussed further in §IV below, will govern how claims will be calculated and, ultimately, how funds will be distributed to claimants.[5]

### 5.      Rule 23(e)(2)(C)(iii): Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).   As discussed in Lead Counsel's

---

[5]      Once Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses have been paid from the Settlement Fund, the remaining amount will be distributed pursuant to the Plan of Allocation. *See* Stipulation, ¶5.4.   These distributions shall be repeated until the balance remaining in the Settlement Fund is *de minimis*. *Id.*, ¶5.9.   If there are any *de minimis* residual funds that are not feasible or economical to reallocate, Lead Plaintiff proposes that such funds be donated to the Investor Protection Trust, a 501(c)(3) non-profit dedicated to investor education and protection. *See, e.g.*, *Fleming v. Impax Laby's, Inc.*, 2022 WL 2789496, at *2 (N.D. Cal. July 15, 2022) (approving Investor Protection Trust as *cy pres* recipient in securities settlement).

Memorandum of Points and Authorities in Support of an Award of Attorneys' Fees and Expenses, and Award to Class Representative Pursuant to 15 U.S.C. §78u-4(a)(4) ("Fee Memorandum"), submitted herewith, Lead Counsel seeks an award of attorneys' fees of 25% of the Settlement Amount and expenses of $1,965,687.14, plus interest on both amounts.  This fee request was fully disclosed in the Notice (Murray Decl., Ex. B, Notice at ¶5), approved by Lead Plaintiff (Fund Decl., ¶¶8-9), and is consistent with the benchmark for attorneys' fee awards in this Circuit.  *See* Fee Memorandum, §III.B.

### 6. Rule 23(e)(2)(C)(iv): Other Agreements

There are no other agreements.

### 7. Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Class Members Equitably

Pursuant to Rule 23(e)(2)(D), the Plan of Allocation must "treat[] class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  Assessment of the Settlement's Plan of Allocation "'is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate.'"  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008).  The Plan of Allocation details how the Settlement proceeds will be distributed among Authorized Claimants and provides formulas for calculating the recognized claim of each Class Member based on each such Person's purchases or acquisitions of Wells Fargo common stock during the Class Period and if or when they sold.  It is fair, reasonable, and adequate because all eligible Class Members (including Lead Plaintiff) will be subject to the same formulas for distribution of the Settlement and each Authorized Claimant will receive his, her or its *pro rata* share of the distribution.  *See, e.g.*, *Longo*, 2022 U.S. Dist. LEXIS 158606, at *18 ("Specifically, each authorized claimant's share of the net settlement amount will be based on when the claimant acquired and sold the subject securities.  Accordingly, this factor also weighs in favor of final approval.").

LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - 3:18-cv-03948-JD
4893-4148-0037.v1

- 10 -

C.   **The Remaining Ninth Circuit Factors Are Satisfied**

  1.   **Discovery Completed and Stage of the Proceedings**

The parties reached the Settlement at an advanced stage of the Action, after all discovery was complete and just ten weeks before trial was set to commence.  Saham Decl., ¶¶5-6, 8.  That discovery provided significant insight into the strengths and challenges of the case, and the Settling Parties had a thorough understanding of the arguments, evidence, and potential witnesses that would inform the trial.  *See id.*, ¶¶58-63.  There can be no question that Lead Plaintiff and Lead Counsel had sufficient information to evaluate the case and the merits of the Settlement by the time it was reached.  *See Foster v. Adams & Assocs., Inc.*, 2022 WL 425559, at *6 (N.D. Cal. Feb. 11, 2022) (finding "[p]laintiffs were 'armed with sufficient information about the case' to broker a fair settlement" given extensive discovery, years of litigation, and multiple settlement conferences).  This factor strongly weighs in favor of final approval of the Settlement.

  2.   **Counsel Views This Good-Faith Settlement as Fair, Reasonable, and Adequate**

The Ninth Circuit recognizes that parties "'represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'"  *Rodriguez*, 563 F.3d at 967.  Thus, courts accord great weight to the recommendations and opinions of experienced counsel.  *See Rodriguez v. Nike Retail Servs., Inc.*, 2022 WL 254349, at *4 (N.D. Cal. Jan. 27, 2022) (noting "the experience and views of counsel . . . favors approving the settlement" and highlighting counsel's "thorough understanding of the strengths and weaknesses of th[e] case and their extensive experience litigating prior . . . class action cases").

Lead Counsel has extensive experience representing plaintiffs in securities and other complex class action litigation and have negotiated numerous substantial class action settlements across the country.  Saham Decl., ¶57.  As a result of this experience, and with the assistance of sophisticated consultants and experts when appropriate, Lead Counsel possessed a firm understanding of the strengths and weaknesses of the claims by the time the Settlement was reached, and based thereon, Lead Counsel concluded that the Settlement is an outstanding result for the Class.

LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - 3:18-cv-03948-JD
4893-4148-0037.v1

- 11 -

### 3.    The Positive Reaction of Class Members to the Settlement

While the deadline to object to the Settlement is July 27, 2023, to date, no objections have been received.  Lead Plaintiff will address objections by Class Members, if any, in its reply papers.  Further, only 65 Class Members, who collectively represent only 4,104 shares, have opted out of the Class.   The Class's overwhelmingly positive reaction to the Settlement to date supports final approval.  *See Foster*, 2022 WL 425559, at *6 ("[The] Court 'may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it.'").

### 4.    The Settlement Amount

The $300 million Settlement far exceeds the median securities settlement in terms of both dollar amount and as a percentage of estimated damages.  As noted previously, the Settlement represents approximately 31%-47% of the estimate of damages recoverable at trial.  This recovery is many times the median percentage recovery for cases like this one with estimated damages of between $500 and $999 million in 2022 of 1.7%, and far exceeds the median settlement as a percentage of estimated damages in the Ninth Circuit from 2013 through 2022 of 4.6%.  *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2022 Review and Analysis* (Cornerstone Research 2023) ("Cornerstone Report") at 5-6, 19.  The Settlement also far exceeds the median settlement value for securities class actions of $13 million in 2022.  *See* Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, at 15, Fig. 17 (NERA Jan. 24, 2023) ("NERA Report").  Both the Cornerstone Report and the NERA Report are attached as Exs. C and D, respectively, to the Saham Declaration.

### 5.    The Risk of Maintaining Class Certification

Although the Court certified a litigation Class on August 15, 2022 (ECF 211), Defendants may later have moved to decertify the Class or seek to shorten the Class Period.  Rule 23(c)(1) provides that a class certification order may be altered or amended at any time before a decision on the merits.  This factors weighs in favor of approval.

*        *        *

In sum, Lead Counsel attained an excellent result for the Class.  The Court should find that the Settlement is fair, reasonable, and adequate, and should grant final approval.

LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - 3:18-cv-03948-JD
4893-4148-0037.v1

- 12

1    **IV.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION**

2            In addition to seeking final approval of the Settlement, Lead Plaintiff seeks final approval of

3    the Plan of Allocation that the Court preliminarily approved on May 1, 2023.  ECF 230.  The Plan of

4    Allocation is considered separately from the fairness of the Settlement but is nevertheless governed

5    by the same legal standards: the plan must be fair and reasonable.  *See Class Plaintiffs v. City of*

6    *Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *see also Vataj v. Johnson*, 2021 WL 1550478, at *10

7    (N.D. Cal. Apr. 20, 2021) ("'[C]ourts recognize that an allocation formula need only have a

8    reasonable, rational basis, particularly if recommended by experienced and competent counsel.'")

9    (alteration in original).  As noted, the Plan of Allocation here provides an equitable basis to allocate

10   the Net Settlement Fund among all Authorized Claimants (Class Members who submit an acceptable

11   Proof of Claim and who have a recognized loss under the Plan of Allocation).  Individual claimants'

12   recoveries will depend on when they bought Wells Fargo stock during the Class Period and whether

13   and when they sold their shares.  Authorized Claimants will recover their proportional "*pro rata*"

14   amount of the Net Settlement Fund.  This is the traditional and reasonable approach to allocating

15   securities settlements.  *See, e.g.*, *Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *4 (S.D. Cal. Dec.

16   6, 2018) ("'A plan of allocation that reimburses class members based on the extent of their injuries is

17   generally reasonable.'").  To date there has been no objection to the Plan of Allocation.  As a result,

18   the Plan of Allocation is fair and reasonable and should be approved.

19   **V.     NOTICE TO THE CLASS SATISFIES DUE PROCESS**

20           A district court "must direct notice in a reasonable manner to all class members who would

21   be bound by the proposal," Fed. R. Civ. P. 23(e)(1)(B), and "must direct to class members the best

22   notice that is practicable under the circumstances, including individual notice to all members who

23   can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B).  The notice also must

24   describe "'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

25   investigate and to come forward and be heard.'"  *Rodriguez*, 563 F.3d at 962.  The PSLRA further

26   requires that the settlement notice include a statement explaining a plaintiff's recovery "to allow

27   class members to evaluate a proposed settlement."  *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d

28   962, 969 (9th Cir. 2007).

LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - 3:18-cv-03948-JD
4893-4148-0037.v1

- 13 -

1    The substance of the Notice satisfies Rule 23 and due process.  The Claims Administrator has

2    emailed over 139,800 copies of the Court-approved Postcard Notice and mailed over 961,800

3    Postcard Notices to potential Class Members and their nominees who could be identified with

4    reasonable effort.  *See* Murray Decl., ¶12.  In addition, the Court-approved Summary Notice was

5    published in *The Wall Street Journal* and transmitted over *Business Wire*. *Id.*, ¶13.  The Claims

6    Administrator also provided all information regarding the Settlement online through the Settlement

7    website.  *Id.*, ¶15.  The Notice provides the necessary information for Class Members to make an

8    informed decision regarding the proposed Settlement, as required by the PSLRA.  The Notice further

9    explains that the Net Settlement Fund will be distributed to eligible Class Members who submit

10   valid and timely Proofs of Claim under the Plan as described in the Notice.  The notice program here

11   fairly apprises Class Members of their rights with respect to the Settlement, is the best notice

12   practicable under the circumstances, and complies with the Court's Preliminary Approval Order,

13   Rule 23, the PSLRA, and due process.  *See, e.g.*, *Fleming*, 2022 WL 2789496, at *5-*6; *Hayes v.*

14   *MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *4 (N.D. Cal. Nov. 21, 2016).

15   **VI.     CONCLUSION**

16   Lead Plaintiff and Lead Counsel achieved an outstanding settlement for the Class.  Lead

17   Plaintiff therefore respectfully requests that the Court approve the Settlement and Plan of Allocation.

18   DATED:  July 13, 2023                        Respectfully submitted,

19                                                ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
20                                               SPENCER A. BURKHOLZ
                                                 JASON A. FORGE
21                                               SCOTT H. SAHAM
                                                 LUCAS F. OLTS
22                                               ASHLEY M. KELLY
                                                 KEVIN S. SCIARANI
23                                               ERIKA L. OLIVER

24

25                                                      s/ Scott H. Saham
                                                      SCOTT H. SAHAM
26
                                                 655 West Broadway, Suite 1900
27                                               San Diego, CA  92101
                                                 Telephone:  619/231-1058
28                                               619/231-7423 (fax)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS GELLER RUDMAN
 & DOWD LLP
JASON C. DAVIS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

Attorneys for Lead Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on July 13, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

 s/ SCOTT H. SAHAM
SCOTT H. SAHAM

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  ScottS@rgrdlaw.com

# Mailing Information for a Case 3:18-cv-03948-JD Purple Mountain Trust v. Wells Fargo & Company et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Stephanie Albrecht**
  SAlbrecht@GGTrialLaw.com,DVultaggio@GGTrialLaw.com

- **Nora Bojar**
  nbojar@fklaw.com

- **Peretz Bronstein**
  peretz@bgandg.com

- **Walter F. Brown**
  wbrown@paulweiss.com,mao_fednational@paulweiss.com

- **Spencer A. Burkholz**
  SpenceB@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Nanci L. Clarence**
  nclarence@clarencedyer.com,achin@clarencedyer.com

- **Josh Alan Cohen**
  jcohen@clarencedyer.com,achin@clarencedyer.com

- **Brendan P. Cullen**
  cullenb@sullcrom.com,viapianoc@sullcrom.com,s&cmanagingclerk@sullcrom.com,brendan-cullen-5099@ecf.pacerpro.com

- **Jason Cassidy Davis**
  jdavis@rgrdlaw.com,e_file_sd@rgrdlaw.com,mkuwashima@rgrdlaw.com

- **Miles F. Ehrlich**
  miles@ehrlich-craig.com,gabrielle@ehrlich-craig.com,katharine@ehrlich-craig.com,sonia@ehrlich-craig.com,amy@ehrlich-craig.com

- **Jordan Eth**
  jeth@mofo.com,dara--pilgrim-4904@ecf.pacerpro.com,jordan-eth-3756@ecf.pacerpro.com,dpilgrim@mofo.com

- **Jason A. Forge**
  jforge@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Dennis J. Herman**
  dennish@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Sverker K. Hogberg**
  hogbergs@sullcrom.com

- **Sverker Kristoffer Hogberg**
  hogbergs@sullcrom.com,sverker-hogberg-5798@ecf.pacerpro.com,carrjo@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Alexis Catherine Holmes**
  holmesa@sullcrom.com,carrjo@sullcrom.com,s&cmanagingclerk@sullcrom.com,alexis-holmes-1935@ecf.pacerpro.com

- **Katharine Ann Kates**
  katharine@ehrlich-craig.com,gabrielle@ehrlich-craig.com,sonia@ehrlich-craig.com

- **Ashley Michelle Kelly**
  akelly@rgrdlaw.com,e_file_sd@rgrdlaw.com,AKellyRGRD@ecf.courtdrive.com,mwaligurski@rgrdlaw.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com

- **Erika Limpin Oliver**
  eoliver@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Lucas F. Olts**
  Lolts@rgrdlaw.com,morgank@ecf.courtdrive.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com,LOlts@ecf.courtdrive.com,mkuwashima@rgrdlaw.com

- **Lesley Frank Portnoy**
  lfportnoy@pomlaw.com

- **Ismail Jomo Ramsey**
  izzy@ramsey-ehrlich.com,sonia@ramsey-ehrlich.com,katharine@ramsey-ehrlich.com,amy@ramsey-ehrlich.com,lauren@ramsey-ehrlich.com

- **Daniel B Rapport**
  drapport@fklaw.com,vgarvey@fklaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com

- **Scott H. Saham**
  scotts@rgrdlaw.com,panderson@rgrdlaw.com,panderson@ecf.courtdrive.com,ScottS@ecf.courtdrive.com,e_file_SD@rgrdlaw.com

- **Kevin Shen Sciarani**
  ksciarani@rgrdlaw.com,KSciarani@ecf.courtdrive.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Adam F. Shearer**
  ashearer@clarencedyer.com,achin@clarencedyer.com

- **Christopher Michael Viapiano**
  viapianoc@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Anna Erickson White**
  awhite@mofo.com,anna-erickson-white-9788@ecf.pacerpro.com,andrea-vickery-5658@ecf.pacerpro.com,avickery@mofo.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)